IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIA POWELL, as guardian ad litem and on behalf of her son D.P., et al., <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF ILLINOIS, et al., <br><br> Defendants. | No. 18-cv-6675 <br><br> Hon. Joan B. Gottschall |

**DEFENDANTS' MOTION FOR RECONSIDERATION
AND TO DISMISS THIS ACTION AS MOOT**

Defendants have filed this motion to make the Court aware of a change in law created by Illinois' new Firearm Dealer License Certification Act. This Act, which was enacted and became effective after plaintiffs filed this case, imposes requirements on Illinois gun dealers that plaintiffs are asking this Court to impose by injunctive relief. Given that the new License Certification Act and related rules recently proposed by the Illinois State Police materially change the nature of this case or controversy, Defendants respectfully move this Court to reconsider its September 30, 2019 memorandum opinion and order, and dismiss this action as moot.

**Background**

1. On October 3, 2018, plaintiffs filed their class action complaint seeking declaratory and injunctive relief for alleged violations of the Americans with Disabilities Act and Illinois Civil Rights Act. (Dkt. 1.) The essence of their ADA claim is that the State's Firearm Owners Identification Card Act (the FOID Act), 430 ILCS 65/2, is a "program or activity" that violates the ADA by discriminating against Chicago children suffering from post-traumatic

stress disorder because the Illinois State Police, which administers the FOID Act, has allegedly failed to implement regulations on the State's gun dealers that would limit the gun violence to which the children are exposed. (Dkt. 1, Complaint.)

2.     In each count, plaintiffs ask the Court to enter an injunction requiring the State Police "to exercise its authority, under applicable law," to adopt rules and regulations "such as" those contained in paragraph 28 of the complaint. (*Id*. at 26, 27, 28.)

3.     On January 31, 2019, defendants moved to dismiss the complaint on various grounds, including Eleventh Amendment immunity, lack of standing, and failure to state a claim. (Dkt. 24 and 25.)

4.     On September 30, 2019, the Court entered a memorandum opinion and order (Dkt. 37) dismissing the claims asserted on behalf of two plaintiffs (M.R. and J.C.) for lack of standing,[1] but allowing the claims on behalf of plaintiff D.P. to proceed. The Court rejected defendants' Eleventh Amendment defense, and also rejected defendants' motion to dismiss the ADA and Illinois Civil Rights Act claims for failure to state a claim. (*Id*.) The Court accepted plaintiffs' allegation that the FOID Act qualifies as a "program or activity" under the ADA (*id*. at 26), and determined that plaintiffs sufficiently alleged discrimination under the ADA and Illinois Civil Rights Act based on the alleged failure of the Illinois State Police to pass regulations on state gun shops like those proposed by plaintiffs in paragraph 28 of their complaint (*id*. at 2, 8, 18, 34).[2]

---

[1] Defendants do not seek reconsideration of this portion of the Court's ruling.

[2] Defendants intend to directly appeal the Court's Eleventh Amendment ruling under 28 U.S.C. § 1291 and the collateral order doctrine. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993); *Nanda v. Bd. of Trs. of Univ. of Ill.*, 303 F.3d 817, 821 (7th Cir. 2002). Defendants also intend to move under 28 U.S.C. § 1292(b) for the Court to certify an interlocutory appeal of the Court's refusal to dismiss the case on the merits and for lack of standing.

**The Combating Illegal Gun Trafficking Act and Firearm Dealer License Certification Act**

5. On January 18, 2019, new Illinois Governor Pritzker signed Public Act 100-1178, known as the Combating Illegal Gun Trafficking Act, 430 ILCS 68/1, which contains in Article 5 a new Firearm Dealer License Certification Act, 430 ILCS 68/5, *et seq.,* with an effective date of January 19, 2019.[3]

6. The License Certification Act creates new regulatory oversight by the Illinois State Police over firearms dealers in Illinois. 430 ILCS 68/5-1. The Act creates a system by which the State, through the State Police, will (a) regulate the commercial activities of firearms dealers and certify each dealer's firearm's license, and (b) strengthen security at locations that deal in firearms to decrease firearm thefts and break-ins and in turn protect the public. 430 ILCS 68/5-1, 5-15, 5-50, 5-55. As detailed below, the Act imposes a variety of specific measures related to security, training, record keeping, and administrative discipline designed to promote safer gun transactions, like those plaintiffs are seeking in their complaint.

7. Sections 5-10, 5-20, and 5-40 of the License Certification Act detail the process and qualifications required to apply for and obtain a certificate of license as a condition of doing business as a firearms dealer in Illinois. 430 ILCS 68/5-10, 5-20, and 5-40. Section 5-15 of the Act, in turn, makes it unlawful to engage in the business of selling, leasing, or otherwise transferring firearms without a valid certificate of license issued under the Act. *Id*. 68/5-15. *Cf.* Complaint, Dkt. 1, ¶28K.

8. Section 5-10 of the Act requires licensees to file with the State Police a copy of a valid federal firearms license. 430 ILCS 68/5-10. *Cf.* Complaint, Dkt. 1, ¶28I.

---

[3] The Act was passed by the Illinois House on May 29, 2018, and by the Illinois Senate on May 30, 2018, but then held for submission to the new Governor on January 18, 2019.
*http://www.ilga.gov/legislation/billstatus.asp?DocNum=0337&GAID=14&GA=100&DocTypeID=SB&LegID=100277&SessionID=91&SpecSess=*

9. Section 5-40 of the Act requires those seeking certification to submit an affidavit confirming, among other things, (a) the possession of a valid Firearm Owners Identification (FOID) card (which can be obtained only after first submitting to a background check); (b) completion of required training; (c) the name and FOID card number of each employee or agent who sells or transfers firearms for the certified licensee; and (d) that any non-resident owner, employee, or agent has undergone a background check and is not prohibited from owning or possessing firearms. 430 ILCS 68/5-40. *Cf.* Complaint, Dkt. 1, ¶ 28A.

10. Section 5-30 of the Act requires a certified licensee and its employees to "receive at least 2 hours of training annually regarding legal requirements and responsible business practices as applicable to the sale or transfer [of] firearms." 430 ILCS 68/5-30. *Cf.* Complaint, Dkt. 1, ¶ 28E.

11. Section 5-35 of the Act provides for inspections of gun dealers by the State Police and law enforcement authorities. 430 ILCS 68/5-35.

12. Section 5-50 of the Act describes the type of security system a certified licensee must have at each retail location, including a "video security system" that provides "video surveillance of critical areas of the business premises, including but not limited to, all places where firearms in inventory are stored, handled, sold, or transferred, and each entrance and exit." 430 ILCS 68/5-50(a). *Cf.* Dkt. 1, Complaint ¶ 28B.

13. Section 5-50(c) of the Act further requires each certified licensee that maintains an inventory of firearms to "be connected to an alarm monitoring system or service that will notify its local law enforcement agency of an unauthorized intrusion into the premises of the licensee where the firearm inventory is maintained." 430 ILCS 68/5-50(c). *Cf.* Dkt. 1, Complaint ¶ 28G.

14. Section 5-55 of the Act requires certified licensees to maintain a "safe storage plan." 430 ILCS 68/5-55. This section provides that "[i]n addition to adequate locks, exterior lighting, surveillance cameras, alarm systems, and other anti-theft measures and practices, a certified licensee maintaining a retail location shall develop a plan that addresses the safe storage of firearms and ammunition during retail hours and after closing." *Id*. *Cf*. Dkt. 1, Complaint ¶ 28G.

15. Section 5-65 of the Act requires each certified licensee that operates a retail location to "implement an electronic-based record system to keep track of its changing inventory by updating the make, model, caliber or gauge, and serial number of each firearm that is received or sold by the certified licensee." 430 ILCS 68/5-65. *Cf*. Dkt. 1, Complaint ¶ 28J.

16. Section 5-60 of the Act requires the State Police to "develop and implement by rule statewide training standards for assisting certified licensees in recognizing indicators that would lead a reasonable dealer to refuse sale of a firearm, including, but not limited to, indicators of a straw purchase." 430 ILCS 68/5-60. *Cf*. Dkt. 1, Complaint ¶ 28E.

17. Section 5-85(a) of the Act authorizes the State Police to investigate violations of the Act and authorizes the State Police to "refuse to renew or restore, or . . . reprimand, place on probation, suspend, revoke, or take other disciplinary or non-disciplinary action against a licensee, and . . . impose a fine commensurate with the severity of the violation not to exceed $10,000 for each violation." 430 ILCS 68/5-85(a). *Cf*. Dkt. 1, Complaint ¶ 28L.

18. The Illinois State Police has drafted and caused to be published proposed administrative rules implementing the Act.[4] Those rules, published in the Illinois Register on August 23, 2019, are now subject to public comment, with an initial public hearing scheduled for

---

[4]*https://www.cyberdriveillinois.com/departments/index/register/volume43/register_volume43_issue34.pdf* (page 9084, pdf pages 125–157).

October 24, 2019. See *http://www.isp.state.il.us/media/pressdetails.cfm?ID=1051*. The rules provide additional details related to the Act's requirements, such as those related to the application procedure for certification; inspections; security and alarm monitoring systems; safe storage of firearms; training; compliance standards; electronic-based recordkeeping; fees, fines, and other sanctions; record retention; complaints, investigations, and hearings; and mandatory signage. *Id.*[5]

19. On July 16, 2019, a group of Illinois gun dealers filed a complaint in Illinois state court alleging that the License Certification Act violates the Illinois Constitution's right-to-bear-arms clause and the Illinois Administrative Procedure Act. (*BFF Firearms, LLC, et al. v. Kwame Raoul, et al.*, Case No. 2019 CH 253, Circuit Court for the Seventh Judicial Circuit, Sangamon County, Illinois.) The Illinois Attorney General has moved to dismiss the complaint. That case is set for a status conference on November 18, 2019.

**Argument**

20. Whether the Court treats this motion as one for reconsideration or for dismissal based on mootness, the outcome should be the same. If the case is not dismissed with prejudice, it should at least be dismissed without prejudice to allow plaintiffs to determine whether to replead in light of the new License Certification Act and its proposed regulations.

21. Because the Court's memorandum opinion and order is interlocutory, the Court may reconsider it at any time before the Court enters a final judgment. *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018). And while we recognize that motions to reconsider are usually disfavored, they are appropriately used to bring to the Court's attention changes in fact or law

---

[5] The Joint Committee on Administrative Rules (JCAR) conducts a review program for proposed rulemaking. These proposed rules are subject to the JCAR process. *See* 5 ILCS 100/5-100; *see also http://www.ilga.gov/commission/jcar/ILRulemakingProcess.pdf*.

that would probably alter the Court's decision. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013) (citing *Envtl. Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598, 608 (7th Cir. 2008)); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006). Although no doubt the Court would have preferred the parties to have alerted the Court to the passage of the License Certification Act before the Court issued its memorandum opinion and order, defendants have new lead counsel who is raising the issue promptly after filing an appearance, and while the proposed rules under the License Certification Act are subject to public comment.

22. Mootness, like standing, is a principle of subject-matter jurisdiction that may be raised at any time by the parties or the court. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007); Fed. R. Civ. P. 12(h)(3). A case becomes moot when "a party with standing at the inception of the litigation loses it due to intervening events." *Pavarti Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010) (citing *Friends of the Earth, Inc. v Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

23. The passage of new regulations that provide the core of the requested relief generally moots the plaintiffs' claim. For example, in *Burbank v. Twomey*, 520 F.2d 744, 747 (7th Cir. 1975), prisoners challenged procedures used to impose in-prison discipline, and particularly the failure to timely articulate the reason for the discipline. *Id*. at 745–46. While the case was pending, the Department of Corrections changed its procedure to provide prisoners with a statement of the reasons for the punishment before the punishment was imposed. *Id*. at 746–47. The district court dismissed the case as moot and the Seventh Circuit affirmed, noting that the "change in policy in the present case has been codified into a formal, published administrative regulation" and therefore, "the possibility that the challenged practice will be resurrected is purely a 'speculative contingency.'" *Id*. at 748.

24. Similarly, in *Sannon v. United States*, 631 F.2d 1247 (5th Cir. 1980), refugees sued to allow their claims for political asylum to be presented to an immigration judge. *Id*. at 1249. While the case was pending, new INS regulations became effective to provide the requested hearings. *Id*. The district court dismissed the case as moot, and the Court of Appeals affirmed because there no longer existed a "viable controversy," stating: "That newly promulgated regulations immediately applicable to litigants in a given case can have the effect of mooting what was once a viable case is without doubt." *Id*. at 1250; *see also Rose v. Wayne County Airport Auth.*, 210 F. Supp. 3d 870, 892 (E.D. Mich. Sept. 29, 2016) ("Although the reasonable modification claim, as originally pleaded [under the ADA], was viable, that sole viable claim now is moot, because the plaintiffs achieved all of the relief that they sought when the Airport granted their request for a reasonable modification by enacting new regulations.").

25. Judge Zagel's decision in *Moustakas v. Margolis*, 154 F. Supp. 3d 719 (N.D. Ill. 2016), which the Seventh Circuit affirmed, also illustrates the point. The plaintiff there challenged Illinois' Firearm Concealed Carry Act because the administrative rules then in place did not provide for denied applicants to receive notice of an objection to an application. *Id.* at 725, 727. After the plaintiff's application was denied, but before he filed suit, the State Police adopted new rules to provide notice of any objections. *Id.* at 724. Noting that the new rules provided "specific correctives" for the challenged defects, the court dismissed the plaintiff's due process claim as moot. *Id.* (citing *Burbank*, 520 F.2d at 748). The court rejected the plaintiff's contention that the new rules provided "some remedy but ultimately an inadequate one," holding that "[b]ecause the new rule explicitly provides for notice and the opportunity to be heard, *the absence of which formed the core* [of plaintiff's due process claim], I conclude that Count I is moot." *Id.* at 728 (emphasis added). The Seventh Circuit affirmed the dismissal, stating that it

8

would be "premature" to consider objections to the new regulation. *Berron v. Ill. Concealed Carry Licensing Review Bd.*, 825 F.3d 843, 846–47 (7th Cir. 2016); *see also Diffenderfel v. Central Baptist Church of Miami, Inc.*, 404 U.S. 412, 415 (1972) (instructing that where the law has substantially changed but might retain some continuing force against the plaintiff, the better practice is to vacate the case but give plaintiffs leave to amend their pleadings if they wish to address the new law).

26. If the law is "sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided . . . [the Court has] typically treated the case as moot." *Northeastern Fla. Ch. of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 671 (2013) (O'Connor, J. dissenting). In *Smith v. Exec. Dir. of Ind. War Mem'ls. Comm'n*, 742 F.3d 282 (7th Cir. 2014), the Seventh Circuit instructed that courts must exercise judgment to assess whether "the changes [in law or regulation] are so substantial as to make it unwise for the . . . court to consider the new policy." *Id*. at 288. In that case, the plaintiff filed a First Amendment claim after he was expelled from protesting at a public monument without a permit. *Id*. at 284. After the district court issued its ruling, based on an unwritten permit policy, the policy was put in writing and changed in such a way that the plaintiff would not need a permit for certain kinds of protests he wanted to organize. *Id*. at 287. Despite those changes, the Seventh Circuit decided the case was not moot because the new policy could still apply to certain planned protests, and still retained features that were subject to the First Amendment challenge. *Id*. at 288. The court found the case akin to those where the new law retains enough of the challenged infirmities so that the challenged conduct continues. *Id*.

27. Here, plaintiffs' case is premised on the alleged failure by the State and the State Police to pass "reasonable" and "meaningful" regulations on firearms dealers "such as" those

contained in paragraph 28 of their complaint. (Dkt. 1, Complaint ¶¶ 1, 28, 57.) That is precisely what the State has done in passing and now implementing the License Certification Act.

28. As noted, paragraph 28 of plaintiffs' complaint provides a list of the kinds of regulations they would like to see adopted, "such as" the following:

a. *Background checks on gun store owners and employees*. Section 5-40 of the License Certification Act accomplishes this by requiring those seeking certification to submit an affidavit confirming, among other things, (a) the possession of a valid Firearm Owners Identification (FOID) card, which in turn can be obtained only after first submitting to a background check. 430 ILCS 65/3(a-5) and 3.1; *see also* 43 Ill. Reg. 9091 (proposed 20 Ill. Admin. Code § 1232.20(d)).

b. *Installation of video recording systems*. Section 5-50(a) of the License Certification Act requires gun dealers to install a "video security system" that provides "video surveillance of critical areas of the business premises, including but not limited to, all places where firearms in inventory are stored, handled, sold, or transferred, and each entrance and exit." 430 ILCS 68/5-50(a); *see also* 43 Ill. Reg. 9093-9095 (proposed 20 Ill. Admin. Code § 1232.60). Section 5-50(c) of the Act further requires each certified licensee that maintains an inventory of firearms to "be connected to an alarm monitoring system or service that will notify its local law enforcement agency of an unauthorized intrusion into the premises of the licensee where the firearm inventory is maintained." *Id*. 68/5-50(c); *see also* 43 Ill. Reg. 9095-9097 (proposed 20 Ill. Admin. Code § 1232.70).

c. *Prohibitions on sales or transfers to those other than the purchaser*. Section 5-15 of the Act makes it unlawful for any person or entity to engage in the business of selling, leasing, or otherwise transferring firearms without a valid certificate of license issued under the Act. 430

ILCS 68/5-15; *see also* 43 Ill. Reg. 9090-9092 (proposed 20 Ill. Admin. Code § 1232.20), 9103-9106 (proposed 20 Ill. Admin. Code § 1232.150). In addition, under the FOID Card Act, any person who is not a federally licensed firearm dealer must seek approval from the State Police before selling or transferring a firearm. 430 ILCS 65/3(a-10).

   d. *Maintenance of crime-gun logs*. The State Police inputs and tracks Illinois crime gun incident data through the federal eTrace system operated by the ATF. See [https://www.atf.gov/resource-center/fact-sheet/fact-sheet-etrace-internet-based-firearms-tracing-and-analysis](https://www.atf.gov/resource-center/fact-sheet/fact-sheet-etrace-internet-based-firearms-tracing-and-analysis). The State Police also participates in the National Integrated Ballistic Information Network operated by the ATF, which enables law enforcement to rapidly determine if a piece of recovered ballistic evidence came from a firearm that was previously used in a crime. Further, the State Police tracks lost or stolen guns statewide via its Law Enforcement Agencies Data System (LEADS). 720 ILCS 5/24-4.1.[6]

   e. *Training gun shop employees to identify "straw" purchasers*. Section 5-60 of the Act requires the State Police to "develop and implement by rule statewide training standards for assisting certified licensees in recognizing indicators that would lead a reasonable dealer to refuse sale of a firearm, including, but not limited to, indicators of a straw purchase." 430 ILCS 68/5-60; *see also* 43 Ill. Reg. 9090 (proposed definition of "Straw Purchase"), 9099-9100 (proposed 20 Ill. Admin. Code § 1232.90).

   f. *Taking possession of suspended or revoked FOID cards*. Section 5-85(a) of the Act authorizes the State Police to investigate violations of the Act and authorizes the State Police to "refuse to renew or restore, or . . . reprimand, place on probation, suspend, revoke, or take

---

[6] In addition, the City of Chicago Police Department maintains a crime-gun log. See *https://www.chicago.gov/content/dam/city/depts/mayor/Press%20Room/Press%20Releases/2017/October/GTR2017.pdf*.

other disciplinary or non-disciplinary action against a licensee, and . . . impose a fine commensurate with the severity of the violation not to exceed $10,000 for each violation." 430 ILCS 68/5-85(a); *see also* 43 Ill. Reg. 9102 (proposed 20 Ill. Admin. Code § 1232.110(c)). Moreover, the revocation of FOID cards is governed by the FOID Card Act, which requires a person who receives a revocation notice to surrender his or her FOID card to the local law enforcement agency where the person resides within 48 hours. 430 ILCS 65/9.5(a)(1). The local law enforcement agency shall transmit the FOID Card to the State Police. *Id.*

   g. *Implementation of a "safety plan" to prevent theft and loss of guns*. Section 5-55 of the Act requires certified licensees to maintain a "safe storage plan," and mandates that "[i]n addition to adequate locks, exterior lighting, surveillance cameras, alarm systems, and other anti-theft measures and practices, a certified licensee maintaining a retail location shall develop a plan that addresses the safe storage of firearms and ammunition during retail hours and after closing." 430 ILCS 68/5-55; *see also* 43 Ill. Reg. 9097-9099 (proposed 20 Ill. Admin. Code § 1232.80).

   h. *Regular audits of store inventory*. Section 5-65 of the Act requires every certified licensee in Illinois that operates a retail location to "implement an electronic-based record system to keep track of its changing inventory by updating the make, model, caliber or gauge, and serial number of each firearm that is received or sold by the certified licensee." 430 ILCS 68/5-65; *see also* 43 Ill. Reg. 9100-9101 (proposed 20 Ill. Admin. Code § 1232.100).

   i. *Prohibition on "off-the-book" sales that are not supported by paperwork showing compliance with ATF rules*. Section 5-10 of the Act requires each licensee to file with the State Police a copy of a valid federal firearms license. 430 ILCS 68/5-10; *see also* 43 Ill. Reg. 9090-9091 (proposed 20 Ill. Admin. Code § 1232.20(c)). As plaintiffs note, federal law already

requires gun buyers or transferees to submit a Firearms Transaction Record (Form 4473). [https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download](https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download). And under the FOID Card Act, any person who is not a federally licensed firearm dealer must seek approval from the State Police before selling or transferring a firearm. 430 ILCS 65/3(a-10).

      j. *Required registration to track lawful firearm transfers*. To assist in tracking gun transfers, the License Certification Act now requires gun dealers to "implement an electronic-based record system to keep track of its changing inventory by updating the make, model, caliber or gauge, and serial number of each firearm that is received or sold by the certified licensee." 430 ILCS 68/5-65; *see also* 43 Ill. Reg. 9100-9101 (proposed 20 Ill. Admin. Code § 1232.100).

      k. *Compliance as a condition to continue in business*. Sections 5-10, 5-20, and 5-40 of the License Certification Act detail the process and qualifications required to apply for and obtain a certificate of license as a condition of doing business in Illinois, 430 ILCS 68/5-10, 5-20, and 5-40, while section 5-15 of the Act makes it unlawful to sell, lease, or otherwise transfer firearms without a valid certificate of license issued under the Act. 430 ILCS 68/5-15; *see also* 43 Ill. Reg. 9090-9092 (proposed 20 Ill. Admin. Code § 1232.20), 9103-9106 (proposed 20 Ill. Admin. Code § 1232.150).

      l. *Prohibition on new dealerships by those whose license to operate has been revoked or for failure to follow state or federal law*. Section 5-40 of the Act requires those seeking certification to submit an affidavit confirming, among other things, (a) the possession of a valid Firearm Owners Identification (FOID) card (which can be obtained only after first submitting to a background check); (b) completion of required training; (c) the name and FOID card number of each employee or agent who sells or transfers firearms for the certified licensee;

and (d) that any non-resident owner, employee, or agent has undergone a background check and is not prohibited from owning or possessing firearms. 430 ILCS 68/5-40; *see also* 43 Ill. Reg. 9091 (proposed 20 Ill. Admin. Reg. § 1232.20(d)). In addition, Section 5-15(h) of the Act provides that "it shall be a violation of this Act for [a] revoked licensee to seek certification of a license held under a different business name, or to re-open as a certified licensee under another business name using the same license or as the same person or entity doing business under a different business name." 430 ILCS 68/5-15(h); *see also* 43 Ill. Reg. 9103 (proposed 20 Ill. Admin. Code § 1232.140).

29. The discussion above shows that, in passing the License Certification Act and in implementing new rules under that Act, the State and the State Police have adopted precisely the kinds of rules plaintiffs are asking the Court to order through injunctive relief. There is no longer any need for the Court to exercise its jurisdiction to order the State to adopt rules and regulations "such as" those listed in paragraph 28, because the State and Illinois State Police have now done so. Because plaintiffs have now received "the core" of their requested relief, their claims should be dismissed as moot.

30. There also is no basis for the Court to exercise its jurisdiction to address what may be an entirely different case or controversy that is not now before the Court; namely, whether the License Certification Act and its new proposed rules are sufficient to cure the discrimination alleged in the complaint. This is now a case where the law is "sufficiently altered so as to present a substantially different controversy from the one" initially brought before this Court, *City of Jacksonville*, 508 U.S. at 671, and where "the changes [in law] are so substantial as to make it unwise for the . . . court to consider the new policy." *Smith*, 742 F.3d at 288. If the Court does not dismiss the case with prejudice, it should at least vacate its memorandum opinion

and order on the merits, dismiss the case without prejudice, and give plaintiffs leave to amend their pleadings to consider whether to file a new claim or seek new relief in light of the License Certification Act.

## Conclusion

For each of these reasons, defendants respectfully request the Court to reconsider and vacate its memorandum opinion and order in light of the requirements imposed by Illinois' Firearm Dealer License Certification Act, and dismiss this action as moot.

October 15, 2019

Respectfully submitted,

Defendants THE STATE OF ILLINOIS; THE ILLINOIS STATE POLICE; J. B. PRITZKER, in his official capacity as Illinois Governor; and BRENDAN KELLY, in his official capacity as Acting Director of the Illinois State Police[7]

By: KWAME RAOUL,
    Illinois Attorney General

/s/ *Michael T. Dierkes*

R. Douglas Rees
Deputy Attorney General,
Civil Litigation
Office of the Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel. 312-814-3498
*drees@atg.state.il.us*

Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel. 312-814-3672
*mdierkes@atg.state.il.us*

---

[7] Because the Governor and Director of the Illinois State Police are sued in their official capacities, their successors are automatically substituted as named parties under Fed. R. Civ. P. 25(d).