IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIA POWELL, as guardian ad litem and on behalf of her son D.P., et al., | |
| Plaintiff, | No. 18-cv-6675 |
| v. | Hon. Joan B. Gottschall |
| THE STATE OF ILLINOIS, et al., | |
| Defendants. | |

### MOTION TO CERTIFY INTERLOCUTORY APPEAL
### AND STAY PROCEEDINGS

Pursuant to 28 U.S.C. § 1292(b), defendants State of Illinois, Department of State Police, J.B. Pritzker in his official capacity as Illinois Governor, and Brendan Kelly in his official capacity as Director for the Illinois State Police, respectfully request the Court to certify for interlocutory appeal two controlling and potentially case-dispositive legal questions.

First, defendants request certification on the Article III standing question: whether the injury alleged by the remaining plaintiff—psychological trauma from exposure to third-party gun violence—is fairly traceable to defendants and is likely to be redressed by an order requiring defendants to promulgate regulations on gun dealers.

Second, defendants request certification on the merits question: whether Title II of the Americans with Disabilities Act (ADA) encompasses a student's claim of discrimination in public education and law enforcement based on the Illinois

State Police's alleged failure to promulgate regulations as part of its enforcement authority under the Illinois Firearm Owner's Identification Card Act (FOID Act).

In support of this motion, defendants state as follows:

1. When a district court enters an order that is not otherwise appealable, § 1292(b) permits the court to certify an interlocutory appeal when the order "involves a controlling question of law as to which there is a substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As the Supreme Court has explained, these preconditions "are most likely to be satisfied when a . . . ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009); *accord Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (referencing "the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met"). Because all of the preconditions are satisfied and because this case presents novel legal questions of special consequence, the Court should certify these questions for interlocutory review.

2. To begin, both issues presented here involve controlling questions of law. 28 U.S.C. § 1292(b). It is well established that "[w]hether a party has standing to bring suit is a question of law," *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 800 (7th Cir. 2008), that must be ascertained before addressing other questions presented in the case, *Steel Co. v.*

*Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998). Accordingly, the Article III standing inquiry is a controlling legal question. *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991).

    3.    Similarly, whether a complaint states a claim upon which relief can be granted "is a question of law," and a decision in defendants' favor on the question whether the sole remaining plaintiff stated an ADA claim would be controlling. *Int'l Mktg. Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729 (7th Cir. 1999); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624-25 (7th Cir. 2010) ("It is a *controlling* question, because if the second amended complaint does not state a claim, the case is likely (though, as the district judge said, not certain) to be over . . . ."). If plaintiff, D.P., has not stated an ADA claim, then the Court should no longer exercise supplemental jurisdiction over the remaining state-law claim, and this case should not proceed.

    4.    Indeed, plaintiff's ADA claim raises legal questions that are particularly suitable for interlocutory review because they center on the proper scope of the ADA—an issue that can be addressed "quickly and cleanly." *Ahrenholz*, 219 F.3d at 676. This case does not involve, for example, "hunting through a record" at summary judgment or "immersing [oneself] in a complicated contract." *In re Text Messaging Antitrust Litig.*, 630 F.3d at 625. Instead, it concerns whether the ADA encompasses the novel claims presented in this case and whether this plaintiff has standing to raise them. Discerning the meaning and breadth of a statute fits squarely within the purpose of interlocutory review. *See Ahrenholz*, 219

F.3d at 676 ("We think 'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact.").

  5.  The next element—that there be a substantial ground for difference of opinion on the questions presented—is also met here. 28 U.S.C. § 1292(b). Where a case presents "questions of first impression, the application of . . . statutes to the facts alleged [in the complaint] is certainly contestable." *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1007–08 (7th Cir. 2002). To that end, "courts traditionally will find that a substantial ground for difference of opinion exists where novel and difficult questions of first impression are presented." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (internal quotations and alterations omitted); *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) ("when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent").

  6.  This standard is satisfied here. For starters, the questions presented are novel. Neither the Court nor the parties were able to identify any decisions—controlling or otherwise—that address the specific legal issues raised in the motion to dismiss. *See* Dkts. 25, 31, 37. Without any precedent squarely on point, the Court, as well as the parties in their memoranda, assessed the sufficiency of the

complaint by extrapolating from generally applicable principles. *See* Dkt. 25 at 5-6; Dkt. 31 at 6-10.

7. In the Court's Article III standing analysis, for instance, it relied heavily on Supreme Court cases outlining foundational principles of causation and redressability. Dkt. 37 at 16–18 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Bennett v. Spear*, 520 U.S. 154 (1997); *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)). These cases, however, do not address Article III standing under the ADA, nor do they consider a causal chain as attenuated as the one alleged here.

8. Instead, these decisions outline the applicable analytic framework, explaining that the "irreducible constitutional minimum of standing" requires an injury-in-fact and, as relevant here, "a causal connection" that is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61 (internal quotations and alterations omitted). The plaintiff must also demonstrate that it is "likely" that "the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and alterations omitted); *see also Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010) (applying standard to claim for prospective relief). And where "the plaintiff is not himself the object of the government action or inaction he challenges, standing . . . is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (internal quotation marks and alterations omitted).

5

9. Based on these principles, the Court concluded that the complaint adequately alleges an injury "that is fairly traceable to defendants' failure to regulate, and that is redressable through injunctive and declaratory relief." Dkt. 37 at 21–22. But as the Court also acknowledged, defendants' Article III standing arguments—that "the chain of causation is too long and attenuated and that redressability is too uncertain"—are "not without force . . . ." Dkt. 37 at 17. This assessment was correct. There is a substantial ground for difference of opinion on whether D.P.'s alleged psychological trauma is fairly traceable to inaction by any of the defendants, as opposed to myriad other actions and inactions by others that may have resulted in gun violence affecting D.P. Relatedly, a substantial ground for difference of opinion exists on whether D.P.'s alleged injury would be redressed by a favorable decision requiring the State Police to promulgate additional regulations in connection with the FOID licensure regime—a program that D.P. does not participate in. *See, e.g.*, *id.* at 28 ("Of course the children plaintiffs . . . do not want a FOID card, a gun, or ammunition.").

10. As one example of a matter on which reasonable jurists could disagree, in reaching its decision, the Court analogized gun violence to environmental matters. Dkt. 37 at 19. But reasonable jurists could differ as to whether that analogy is sound and how it would apply if it were extended to the allegations here. *See, e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1145 (Ill. 2004) (rejecting environmental analogy); *Brady Campaign to Prevent Gun Violence United*

6

*with the Million Mom March v. Ashcroft*, 339 F. Supp. 2d 68 (D.D.C. 2004) (finding lack of traceability and redressability given attenuated causal chain).

11. Notably, the cases cited by the Court do not involve the ADA or the kind of psychological injury alleged in the complaint. In *NAACP v. Acusport Corp.*, 210 F.R.D. 446 (E.D.N.Y. 2002), for instance, the plaintiff brought suit directly against the distributors of handguns, not the state regulators. *Id.* at 450. Moreover, the court determined that causation was satisfied because the injury was cast as "'widespread access to firearms,'" which was tailored to the distributors, rather than as gun violence perpetrated by a criminal actor. *Id.* at 460. Here, though, the alleged injury to D.P. is the "psychological trauma" caused by witnessing gun violence on a "frequent basis," Dkt. 37 at 12 (internal quotations omitted), a causal connection that would not even satisfy the laxer standard applied by the *Acusport* court.

12. The Court also cites *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1 (D.D.C. 2009), for its reliance on environmental decisions. Dkt. 37 at 19. That case, however, dealt with whether the plaintiff had organizational standing, which is not at issue here. *See Brady*, 612 F. Supp. 2d at 27–28. Furthermore, the facts are dissimilar, as *Brady* involved the federal government's failure to regulate carriage of firearms in national parks. *Id.* at 28–29. The causal chain and likelihood of redressability there—asking the government to prohibit firearms in a national park that the group's membership visits, *id.* at 28—is much less attenuated than the one at issue here: regulating gun dealer

7

transactions differently in the State for the purpose of reducing gun trafficking, which might in turn lessen gun violence in certain Chicago neighborhoods, and which then, in turn, might lessen D.P.'s exposure to violence and also reduce the effects of his psychological trauma so that he can better participate in the State's public education system.

13. The highly specific (and attenuated) nature of the causal chain is significant to both the traceability and redressability elements of Article III standing. This case is unique in that the causal chain involves several state and local programs and, additionally, includes the intervening actions and inactions by a wide variety of third parties, such as local regulators, city officials, federal ATF regulators, local public school officials, gun traffickers, gun dealers, and the perpetrators of the violence itself. Although the Court here concluded that the allegations were sufficient to establish traceability, other courts have concluded causal chains this attenuated are insufficient. *See, e.g.*, *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013) ("where the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the causal chain is too weak to support standing") (internal quotations omitted); *Quinones v. City of Evanston,* 58 F.3d 275, 277 (7th Cir. 1995) ("A person aggrieved by the application of a legal rule does not sue the rule *maker* . . . . He sues the person whose acts hurt him."); *Brady Campaign to Prevent Gun Violence United with the Million Mom March*, 339 F. Supp. 2d at 68 (lack of standing on claim against ATF where third parties, such as manufacturers

8

and criminals, were primary contributors to increased risk of injury). All told, reasonable jurists could disagree on whether plaintiff's complaint sufficiently alleges causation and redressability.

14. There is also the potential for a substantial difference of opinion on the merits question. As with the Article III standing issue, the parties and the Court have not identified any controlling case examining whether a plaintiff may bring a claim seeking to remedy discrimination in public education and law enforcement by requiring the State Police to promulgate regulations. *See* Dkt. 37 at 25 (relying on "high level 'basic principles'"). Although the absence of settled law does not by itself preclude a plaintiff from stating a claim, it does provide a basis to certify an interlocutory appeal. *See Boim*, 291 F.3d at 1007–08.

15. A threshold dispute on the merits question—about which there is a substantial difference of opinion—is the identification of the relevant program supposedly subject to the ADA. In its memorandum opinion and order, the Court defined the program for purposes of the ADA analysis as "the FOID firearms identification program." Dkt. 37 at 26. But the complaint puts it differently, alleging in Count I that D.P. is impeded "from participating in the State's *program of public education*," Dkt. 1 ¶ 58 (emphasis added), and alleging in Count II that "the defendants are failing to make a reasonable accommodation to the special needs of the plaintiff children in the conduct of the federally *assisted law enforcement programs*," *id.* ¶ 60 (emphasis added); *see also* Dkt. 31 at 4–5.

9

16. The definition of the program is a significant threshold question about which there is an apparent difference in opinion. If, as the complaint alleges, the programs are defined as public education and law enforcement, the question presented by this case is whether the ADA can require defendants to remedy discrimination in those programs by promulgating regulations through an entirely different "program"—here, the FOID licensing scheme. If, however, the program is defined as the FOID licensing scheme, then the Court must decide whether D.P., as a nonparticipant in the program, can seek a reasonable accommodation under it. These questions, which turn on the proper identification of the program in this context, should be resolved before proceeding to discovery.

17. In addition to this threshold question, reasonable jurists may differ on the fundamental question whether it is appropriate to expand the ADA to fit the allegations here. For example, in *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557 (7th Cir. 2003), the Seventh Circuit declined to extend the ADA doctrine in a case where a housing complex for developmentally disabled adults alleged that the city failed "to provide a reasonable accommodation" when it did not reconsider its decision to shut off the water supply to the lot where the housing complex was situated. *Id.* at 561. The court rejected the ADA theory in part because requiring a city to change its rules to create an exemption to generally applicable laws was not an outcome "intended by the statutes." *Id.*

18. On the contrary, extending the doctrine would have allowed the ADA and other federal statutes to "override[ ] all local regulation of home construction,"

10

which "could lead to all sorts of unintended results, for example handicapped people in the name of reasonable accommodation, could claim a real estate tax rebate." *Id.* (internal quotations omitted). The court recognized that "'[t]o support so radical a result, something more than a spinning out of the logical implications of 'reasonable accommodation' is necessary.'" *Id.* (quoting *Hemisphere Bldg. Co., Inc. v. Vill. of Richton Park*, 171 F.3d 437, 441 (7th Cir. 1999)); *see also Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012) (explaining that "the scope of Title II is not limitless") (internal quotations omitted); *Bacon v. City of Richmond*, 475 F.3d 633 (4th Cir 2007) (rejecting Title II claim that "would stretch the law of remedies beyond limit"). There is a reasonable likelihood that a court may similarly conclude here that plaintiff's novel theory spins well outside the logical limits of the ADA.

19. This element for interlocutory review is further satisfied for the independent reason that the Court's ruling involves an issue "of special consequence." *Mohawk Indus., Inc.*, 558 U.S. at 111. This case involves whether the State Police must promulgate additional regulations over gun dealers in order to reduce crime in certain Chicago neighborhoods—an issue that has been rigorously debated for years. This issue is now of particular consequence because the State recently enacted the Combating Illegal Gun Trafficking Act, 430 ILCS 68/1, which contains the Firearm Dealer License Certification Act, 430 ILCS 68/5, *et seq.* The License Certification Act, as explained in defendants' pending motion to reconsider, contains numerous provisions that mirror those requested in the

11

complaint. *See* Dkt. 39 at 9–14. In addition to those statutory provisions, the State Police has proposed administrative rules implementing the License Certification Act, which also address many of the concerns raised in the complaint. *Id.* at 5, 9–14.

20. Without interlocutory review, it is possible that the Court could order defendants to promulgate regulations before the threshold questions of standing and the scope of the ADA are finally resolved, and while the State and State Police are in the midst of implementing new statutory and regulatory provisions "such as" those suggested in paragraph 28 of the complaint.

21. Finally, certifying an immediate appeal would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because if the Seventh Circuit were to agree with defendants on their Article III standing or failure to state a claim arguments, it would result in dismissal of the action. Indeed, if D.P. lacks standing or does not state an ADA claim, then the Court should no longer exercise supplemental jurisdiction over the state-law claim.

22. Defendants respectfully submit that the above-cited authority justifies certification under § 1292(b). Whether plaintiff has Article III standing and whether plaintiff has stated a claim within the proper scope of the ADA are both controlling issues of law, about which there is a substantial difference of opinion, and a ruling in defendants' favor on either question would likely end this litigation.

23. Defendants note that while an appeal on these questions requires certification under § 1292(b), an appeal of the Court's refusal to dismiss the

complaint on Eleventh Amendment grounds is directly appealable under 28 U.S.C. § 1291 pursuant to the collateral order doctrine. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993); *Nanda v. Bd. of Trs. of Univ. of Ill.*, 303 F.3d 817, 821 (7th Cir. 2002). Defendants are appealing that issue as of right.

24. Defendants have also filed a motion for reconsideration and to dismiss this action as moot. This Court's reconsideration could obviate the need for an interlocutory appeal on the issues presented in this motion. But if the Court opts not to revisit its decision, granting this § 1292(b) motion would allow all issues to be combined into one appeal.

25. Because a successful appeal by defendants of either issue would end or substantially curtail this litigation, defendants respectfully request the Court to exercise its discretion under § 1292(b) and the Federal Rules of Civil Procedure to stay further proceedings in this case pending a ruling by the Seventh Circuit on the disposition of any appeal. A stay is particularly appropriate given that defendants' appeal on the issue of Eleventh Amendment immunity divests the Court of jurisdiction over those aspects of the case. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Apostol v. Gallion*, 870 F.2d 1335, 1337 (7th Cir. 1989). Because the Eleventh Amendment, Article III standing, and failure to state a claim affect whether any part of this case can move forward, a stay of proceedings is justified pending resolution by the Seventh Circuit.

## Conclusion

For each of these reasons, defendants respectfully request the Court to enter an order (a) granting its motion for interlocutory appeal, and stating in writing that the appeal of its order "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation"; and (b) staying further proceedings pending a ruling by the Seventh Circuit on the disposition of any appeal.

October 28, 2019

Respectfully submitted,

Defendants THE STATE OF ILLINOIS;
THE DEPARTMENT OF STATE POLICE;
J. B. PRITZKER, in his official capacity as
Illinois Governor; and BRENDAN KELLY,
in his official capacity as Director of the
Illinois State Police

By: KWAME RAOUL,
 Illinois Attorney General

R. Douglas Rees
Deputy Attorney General,
Civil Litigation
Office of the Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel. 312-814-3498
*drees@atg.state.il.us*

/s/ *Michael Dierkes*
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel. 312-814-3672
*mdierkes@atg.state.il.us*

## PROOF OF FILING AND SERVICE

    The undersigned attorney certifies that on October 28, 2019, he caused Defendants' **MOTION TO CERTIFY INTERLOCUTORY APPEAL AND STAY PROCEEDINGS** to be filed and served electronically using the Court's CM/ECF system.

                                    /s/ *Michael Dierkes*
                                    One of the attorneys for Defendant