EFILED
7/16/2019 5:07 PM
Paul Palazzolo
7th Judicial Circuit
Sangamon County, IL

## IN THE CIRCUIT COURT FOR THE SEVENTH JUDICIAL DISTRICT
## SANGAMON COUNTY, ILLINOIS

| | |
|---|---|
| BFF FIREARMS, LLC, ) <br> KAP GUNS, INC., R & J FIREARMS, ) <br> QUALITY FIREARMS, ) <br> MIDWESTERN FIREARMS, ) <br> BIRDS N BROOKS ARMY NAVY ) <br> SURPLUS, LTD., LINNEMANN'S ) <br> GUN SHOP, INC., PERSONAL FIREARMS ) <br> SALES & SERVICE, INC., and ) <br> ILLINOIS STATE RIFLE ASSOCIATION, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> KWAME RAOUL, in his Official Capacity ) <br> as Attorney General of the State of Illinois; ) <br> and BRENDAN F. KELLY, in his Official ) <br> Capacity as Director of the Illinois State ) <br> Police, ) <br> ) <br> Defendants. ) | Case No. 2019CH000253 |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, BFF FIREARMS, LLC, KAP GUNS, INC., R & J FIREARMS, QUALITY

FIREARMS, MIDWESTERN FIREARMS, BIRDS N BROOKS ARMY NAVY

SURPLUS, LTD., LINNEMANN'S GUN SHOP, INC., PERSONAL FIREARMS

SALES & SERVICE, INC., and ILLINOIS STATE RIFLE ASSOCIATION, by and

through undersigned counsel, as and for their Complaint against Defendants

KWAME RAOUL, in his Official Capacity as Attorney General of the State of

Illinois; and BRENDAN F. KELLY, in his Official Capacity as Director of the

Illinois State Police, allege as follows:

EXHIBIT A

## INTRODUCTION

1.      This is an action pursuant to Article I, Sections 2 and 22 of the Illinois State Constitution, which seeks equitable, declaratory, and injunctive relief challenging the State of Illinois's drastic and comprehensive licensing scheme for firearms dealers in the State, commonly known as the Firearm Dealer License Certification Act (430 ILCS 68/1, *et seq.*) (hereinafter "the License Act").

2.      Article I, § 2 of the Illinois Constitution guarantees that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

3.      Article I, § 22 of the Illinois Constitution guarantees that "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." The United States Supreme Court has ruled there is an "individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 2797 (2008), which is "fully applicable against the States," *McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010). This was also acknowledged by the Illinois Supreme Court in, *e.g.*, *People v. Aguilar*, 2013 IL 112116 (2013).

4.      However, Section 68/5 of the License Act, as applied by the Defendants, place onerous restrictions on firearms dealers, which increase costs past the breaking point for many, for others at best to pass on to those who would be seeking to exercise their right to keep and bear arms, and place other restrictions that place an undue burden on the Plaintiffs' ability to operate their businesses and

serve their communities. From information supplied by the Illinois State Police, approximately 50% of the firearms dealers in the State of Illinois will not be remaining in business as a result of the License Act.

5.     Certain of the requirements also violate the Administrative Procedure Act (5/100-1, *et seq.*), in that they call for the implementation and enforcement of rules against the Plaintiffs that have not been enacted and/or have been enacted in violation of Illinois law.

6.     Plaintiffs seek declaratory and injunctive relief against the requirements, which violate their and their customers' rights under the Illinois Constitution.

## STATEMENT OF FACTS

7.     BFF FIREARMS, LLC is an Illinois limited liability company with its principal place of business in Danville, Illinois. BFF is in the business of retail firearm sales, and has a Federal Firearms License, which is a license issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that enables individuals at a company to engage in business pertaining to the manufacture, importation, and interstate/intrastate sales of firearms and ammunition. BFF has an Illinois business license for the retail sale of firearms, and is subject to Section 68/5 of the License Act. BFF is harmed by the Defendants in Sangamon County, Illinois.

8.     KAP GUNS, INC., is an Illinois corporation with its principal place of business in Love Park, Illinois. KAP is in the business of retail firearm sales, and

- 3 -

has a Federal Firearms License, which is a license issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that enables individuals at a company to engage in business pertaining to the manufacture, importation, and interstate/intrastate sales of firearms and ammunition. KAP has an Illinois business license for the retail sale of firearms, and is subject to Section 68/5 of the License Act. KAP will incur severe financial hardship as a result of the License Act. Also, KAP has also used his existing camera system to assist the BATFE with its investigations. However, KAP will not be able to both comply with the License Act's video surveillance requirements and maintain the equipment that he used to aid BATFE without incurring substantial and severe financial hardship. KAP is harmed by the Defendants in Sangamon County, Illinois.

9.      R & J FIREARMS is an Illinois partnership with its principal place of business in Cullom, Illinois, which is approximately twenty-five miles from any significant town. R & J is in the business of retail firearm sales, and has a Federal Firearms License, which is a license issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that enables individuals at a company to engage in business pertaining to the manufacture, importation, and interstate/intrastate sales of firearms and ammunition. R & J is in its 30th year of business, and is open to the public only a few hours a night, otherwise it is only by appointment. R & J has an Illinois business license for the retail sale of firearms, and is subject to Section 68/5 of the License Act. R & J is harmed by the Defendants in Sangamon County, Illinois.

10.    QUALITY FIREARMS is an Illinois sole proprietorship that is the d/b/a of Walter D. Hughes, and which has its principal place of business in Macon, Illinois.  Quality is in the business of retail firearm sales, and has a Federal Firearms License, which is a license issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that enables individuals at a company to engage in business pertaining to the manufacture, importation, and interstate/intrastate sales of firearms and ammunition.  Quality has an Illinois business license for the retail sale of firearms, and is subject to Section 68/5 of the License Act.  Quality is also active in conservation groups in Illinois that depend on firearms raffles and auctions for fundraising, and which will be severely harmed in its efforts by the License Act.  Quality is harmed by the Defendants in Sangamon County, Illinois.

11.    MIDWESTERN FIREARMS COMPANY is an Illinois corporation with its principal place of business in East Peoria, Illinois.  Midwestern is in the business of retail firearm sales, and has a Federal Firearms License, which is a license issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that enables individuals at a company to engage in business pertaining to the manufacture, importation, and interstate/intrastate sales of firearms and ammunition.  Midwestern has an Illinois business license for the retail sale of firearms, and is subject to Section 68/5 of the License Act.  Midwestern is harmed by the Defendants in Sangamon County, Illinois.

12.    BIRDS N BROOKS ARMY NAVY SURPLUS, LTD. is an Illinois corporation with its principal place of business in Springfield, Illinois.  Birds is in

the business of retail firearm sales, and has a Federal Firearms License, which is a license issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that enables individuals at a company to engage in business pertaining to the manufacture, importation, and interstate/intrastate sales of firearms and ammunition. Birds has an Illinois business license for the retail sale of firearms, and is subject to Section 68/5 of the License Act. As a result of an inability to comply with the requirements of the License Act, Birds is closing its doors after 40-plus years in business. Birds has been harmed by the Defendants in Sangamon County, Illinois.

13.     LINNEMANN'S GUN SHOP, INC., is an Illinois corporation with its principal place of business in Millstadt, Illinois. Linnemann's is in the business of retail firearm sales, and has a Federal Firearms License, which is a license issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that enables individuals at a company to engage in business pertaining to the manufacture, importation, and interstate/intrastate sales of firearms and ammunition. Linnemann's has an Illinois business license for the retail sale of firearms, and is subject to Section 68/5 of the License Act. Linnemann's has been harmed by the Defendants in Sangamon County, Illinois.

14.     PERSONAL FIREARMS SALES & SERVICE, INC. is an Illinois corporation with its principal place of business in Champaign, Illinois. Personal is in the business of retail firearm sales, and has a Federal Firearms License, which is a license issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)

- 6 -

that enables individuals at a company to engage in business pertaining to the manufacture, importation, and interstate/intrastate sales of firearms and ammunition. Personal has an Illinois business license for the retail sale of firearms, and is subject to Section 68/5 of the License Act. Personal has been harmed by the Defendants in Sangamon County, Illinois.

15.    ILLINOIS STATE RIFLE ASSOCIATION is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has more than 26,000 members and supporters in Illinois, and many members outside the State of Illinois. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members,

16.    Members of ISRA are licensed Illinois firearms dealers, and thus are subject to the challenged requirements under the Act. Members of ISRA are also customers of such dealers, and are also affected by the imposing of the challenged requirements under Section 68/5 of the License Act by a significant reduction in the amount of locations to purchase a firearm, and the significantly increased costs that will result from the License Act. ISRA's members are harmed by the Defendants in Sangamon County, Illinois.

17.    The owners of the named Plaintiffs are also ISRA members.

## DEFENDANTS

- 7 -

18.     Defendant Attorney General KWAME RAOUL is sued in his official capacity as the Attorney General of the State of Illinois, responsible for executing and administering the laws of the State of Illinois, including Section 68/5 of the License Act.  Defendant Attorney General Raoul has enforced the challenged laws, customs and practices against Plaintiffs and is in fact presently enforcing the challenged laws, customs and practices against Plaintiffs.

19.     Defendant BRENDAN F. KELLY is the Director of the Illinois State Police, and is the person ultimately responsible for executing and administering the laws of the State of Illinois, including Section 68/5 of the License Act.  He is sued in his official capacity.

## CONSTITUTIONAL PROVISIONS

20.     Article I, § 2 of the Illinois Constitution guarantees that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

21.     Article I, § 22 of the Illinois Constitution guarantees that "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed."

## STATE LAW

22.     430 ILCS 68/5-15 provides in pertinent part:

> Section 5-15. Certification requirement.
> (a) Beginning 180 days after the effective date of this
> Act, it is unlawful for a person or entity to engage in the
> business of selling, leasing, or otherwise transferring
> firearms without a valid certificate of license issued under

- 8 -

this Act. In the event that a person or entity maintains multiple licenses to engage in different lines of business requiring different licenses at one location, then the licenses shall be deemed one license for purposes of certification. In the event that a person or entity maintains multiple licenses to engage in business at multiple locations, under the same business name on the license or a different business name on the license, then each license and location must receive its own certification.

. . .

(d) A person who violates any provision of this Section is guilty of a Class A misdemeanor for a first violation, and a Class 4 felony for a second or subsequent violation.

. . .

(e) In addition to any other penalty provided by law, any person or entity who violates any provision of this Section shall pay a civil penalty to the Department in an amount not to exceed $10,000 for each offense, as determined by the Department. The civil penalty shall be assessed by the Department after a hearing is held in accordance with Sections 5-95 and 5-100.

23.    430 ILCS 68/5-50 provides in pertinent part:

Section 5-50. Security system.

(a) On or before January 2, 2021, each certified licensee operating a retail location in this State must maintain a video security system and shall maintain video surveillance of critical areas of the business premises, including, but not limited to, all places where firearms in inventory are stored, handled, sold, or transferred, and each entrance and exit. A video surveillance system of the certified licensee's retail location may not be installed in a bathroom and may not monitor inside the bathrooms located in the retail location. If a video security system is deemed inadequate by the Department, the licensee shall have 30 days to correct the inadequacy. The Department shall submit to the licensee a written statement describing the specific inadequacies.

. . .

- 9 -

(c) On or before January 2, 2020, each certified licensee maintaining an inventory of firearms for sale or transfer must be connected to an alarm monitoring system or service that will notify its local law enforcement agency of an unauthorized intrusion into the premises of the licensee where the firearm inventory is maintained.

24.     430 ILCS 68/5-55 provides in pertinent part:

Safe storage by certified licensees. In addition to adequate locks, exterior lighting, surveillance cameras, alarm systems, and other anti-theft measures and practices, a certified licensee maintaining a retail location shall develop a plan that addresses the safe storage of firearms and ammunition during retail hours and after closing. The certified licensee shall submit its safe storage plan to the Department and the plan shall be deemed approved unless it is rejected by the Department. The Department may reject the plan if it is inadequate, along with a written statement describing the specific inadequacies. The certified licensee shall submit a corrected plan to the Department within 60 days of notice of an inadequate plan. In the event there are still problems with the corrected plan, the Department shall note the specific inadequacies in writing and the certified licensee shall have 60 days from each notice of an inadequate plan to submit a corrected plan. The Department may reject the corrected plan if it is inadequate. A certified licensee may operate at all times that a plan is on file with the Department, and during times permitted by this Section to prepare and submit corrected plans. That any certified licensee has operated without an approved safe storage plan for more than 60 days shall be grounds for revocation of a certificate of license. The Department shall adopt rules regarding the adequacy of a safe storage plan. The rules shall take into account the various types and sizes of the entities involved, and shall comply with all relevant State and federal laws. Safe storage plans required under this Section are not subject to disclosure by the Department under the Freedom of Information Act.

25.     430 ILCS 68/5-65 provides in relevant part:

- 10 -

> Electronic-based recordkeeping. On or before January 2, 2020, each certified licensee operating a retail location shall implement an electronic-based record system to keep track of its changing inventory by updating the make, model, caliber or gauge, and serial number of each firearm that is received or sold by the certified licensee. Retail sales and purchases shall be recorded within 24 hours of the transaction. Shipments of firearms from manufacturers or wholesalers shall be recorded upon the earlier of five business days or with 24 hours of the shipment being unpacked and the firearm placed in inventory.

26. 430 ILCS 68/5-70 provides in relevant part:

> Section 5-70. Fees and fines deposited in the Firearm Dealer License Certification Fund. The Department shall set and collect a fee for each licensee certifying under this Act. The fee may not exceed $300 for a certified licensee operating without a retail location. The fee may not exceed $1,500 for any certified licensee operating with a retail location.

This is in addition to the original fee to BATFE for an FFL, which is $300.00 for new dealers, and then $90.00/year thereafter.

27. Many of the named Plaintiffs are small retail locations, many in rural areas, and will have fees higher than the minimum, which will be an undue hardship given the FFL fees and the attendant costs of running a small business. Further, the costs of purchasing, installing, and implementing the alarm, security, and computer recordkeeping measures required in the License Act are prohibitive, and will cripple the Plaintiffs' ability to remain in business.

28. Per 430 ILCS 68/5-85, violations of the above can lead to disciplinary action against a dealer's license, including revocation or refusal to renew, and can result in a fine of up to $10,000.00 for each violation.

29.     Further, 430 ICLS 68/5-100(e) states in relevant part:

> Upon the suspension or revocation of a certificate of license, the licensee shall surrender the certificate to the Department and, upon failure to do so, the Department shall seize the same. However, when the certification of a certified licensee is suspended, the certified licensee shall not operate as a certified licensee during the period in which the certificate is suspended and, if operating during that period, shall be operating in violation of subsection (a) of Section 5-15 of this Act. A person who violates this Section is guilty of a Class A misdemeanor for a first violation, and a Class 4 felony for a second or subsequent violation. In addition to any other penalty provided by law, any person or entity who violates this Section shall pay a civil penalty to the Department in an amount not to exceed $2,500 for the first violation, and a fine not to exceed $5,000 for a second or subsequent violation.

## IRREPARABLE HARM AND INADEQUATE REMEDY AT LAW

30.     Plaintiffs will suffer irreparable harm if the offending sections of Section 68/5 of the License Act are enforced. Unless relief is granted herein, Plaintiffs will incur irreparable harm in that they will incur prohibitive costs and be subject to unduly burdensome requirements in order to have their FFL appropriately certified, and as such will suffer an undue hardship in operating their business at all. This is in addition to the civil and criminal penalties, and monetary fines, that are possible as a result of non-compliance.

31.     The Plaintiffs will have no adequate remedy at law, there being no forum to recover damages, the Defendants and State most likely being immune from liability for tortious conduct and resulting losses.

32.     While care should be used in granting injunctions to avoid prospective injuries, there is no requirement that the court must wait until the injury occurs

before granting relief, and Plaintiffs have demonstrated both irreparable harm is imminent, and their remedy at law would be inadequate.

33.    Pursuant to 430 ILCS 68/5-15, the License Act is effective on July 17, 2019, which is also the date dealers must comply with the License Act. If this is not done, Plaintiffs risk fines and the denial of a business license, and damages resulting from enforcement of the License Act are likely and not merely possible. Upon information and belief, those dealers who must pay for their FFL certification by July 17, 2019 will have to repay the same fee again when they renew their FFLs, no matter how soon after July, 2019 that happens to be.

## COUNT I - VIOLATION OF RIGHT TO KEEP AND BEAR FIREARMS (ILL. CONST. ART. I, § 22)

34.    Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35.    The firearms dealer licensing requirements contained in 430 ILCS 68/5-1, *et seq.*, which puts undue burdens on the ownership and operation of firearms retailers in the State of Illinois, and the rapid timing with which such requirements must be implemented, are arbitrary and unreasonable, and violate the named Plaintiffs' right to sell, and their customers' rights to purchases and possess, as well as ISRA's members right to sell and purchase, firearms for self-defense as secured by Article I, Section 22 of the Illinois Constitution.

WHEREFORE, the Plaintiffs, BFF FIREARMS, LLC, KAP GUNS, INC., R & J FIREARMS, QUALITY FIREARMS, MIDWESTERN FIREARMS, BIRDS N

BROOKS ARMY NAVY SURPLUS, LTD., LINNEMANN'S GUN SHOP, INC.,

PERSONAL FIREARMS SALES & SERVICE, INC., and ILLINOIS STATE RIFLE

ASSOCIATION, request this honorable court to enter judgment in their favor and

against the Defendants, and to grant Plaintiffs the following relief:

1.     Enter a declaratory judgment that the Firearm Dealer License

Certification Act violates Plaintiffs' state constitutional right to bear arms and are

unenforceable, with regard to the following provisions:

> a.     The requirement of prohibitively expensive security and alarm systems, as described in Section 430 ILCS 68/5-50;
>
> b.     The requirement of purchasing and implementing an electronic recordkeeping system within the next six months, as described in 430 ILCS 68/5-65;
>
> c.     The certification fee structure, as described in 430 ILCS 68/5-70.

2.     Issue a permanent injunction, without bond required of the Plaintiffs,

enjoining the Defendant from enforcing the challenged provisions of 430 ILCS 68/5;

3.     Grant Plaintiffs a recoupment of the costs expended prosecuting this

action and

4.     Grant Plaintiffs any and all further relief as this court deems just and

proper.

## COUNT II - VIOLATION OF DUE PROCESS
## (ILL. CONST. ART. I, § 2)

36.     Paragraphs 1 through 35 are realleged and incorporated herein by

reference.

37.     The firearms dealer licensing requirements contained in 430 ILCS
68/5-1, *et seq.*, which puts undue burdens on the ownership and operation of
firearms retailers in the State of Illinois, and the rapid timing with which such
requirements must be implemented, are arbitrary and unreasonable, and violate
the right to due process of the law secured by the Due Process Clause of Article I,
Section 2 of the Illinois Constitution, facially and as applied to the named Plaintiffs
in this action, as well as ISRA's members, and has caused injury to the Plaintiffs.

38.     Further, the requirements under 430 ILCS 68/5-50(a) that video
security systems be "adequate" to the Illinois State Police is not defined, leaves
unreasonable latitude to the Illinois State Police to determine adequacy, leaves
dealers unable to determine what is required under the statute, and thus requires
them to expend large sums in an effort to comply with a standard that is completely
at the Illinois State Police's discretion.

39.     Further, the requirements under 430 ILCS 68/5-55 that there be
"adequate locks, exterior lighting, surveillance cameras, alarm systems, and other
anti-theft measures and practices" is not defined, leaves unreasonable latitude to
the Illinois State Police to determine adequacy, leaves dealers unable to determine
what is required under the statute, and thus requires them to expend large sums in
an effort to comply with a standard that is completely at the Illinois State Police's
discretion.

40.     Further, the requirements under 430 ILCS 68/5-55 that safe storage
plans be "adequate" to the Illinois State Police is not defined, leaves unreasonable

- 15 -

latitude to the Illinois State Police to determine adequacy, leaves dealers unable to determine what is required under the statute, and thus requires them to expend large sums in an effort to comply with a standard that is completely at the Illinois State Police's discretion.

41.     Further, the requirements under 430 ILCS 68/5-85(a)(2), which allows the Illinois State Police to refuse to renew, or revoke, or otherwise discipline a dealer, including a fine up to $10,000.00 per violation, for "[a] pattern of practice or other behavior which demonstrates incapacity or incompetency to practice under this Act." is not defined, leaves unreasonable latitude to the Illinois State Police to determine adequacy, and leaves dealers unable to determine what is required under the statute, and thus leaves their licenses at the mercy of a standard that is completely at the Illinois State Police's discretion.

42.     The License Act's inclusion of the above-described terms, due to their vagueness, means that the law fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits so that one may act accordingly; and (2)

43.     The License Act's inclusion of the above-described terms, due to their vagueness, means that the law fails to provide reasonable standards to law enforcement to ensure against authorizing or even encouraging arbitrary and discriminatory enforcement.  In fact, the usage of the above-described terms in the License Act guarantees arbitrary and discriminatory enforcement.

WHEREFORE, the Plaintiffs, BFF FIREARMS, LLC, KAP GUNS, INC., R & J FIREARMS, QUALITY FIREARMS, MIDWESTERN FIREARMS, BIRDS N BROOKS ARMY NAVY SURPLUS, LTD., LINNEMANN'S GUN SHOP, INC., PERSONAL FIREARMS SALES & SERVICE, INC., and ILLINOIS STATE RIFLE ASSOCIATION, request this honorable court to enter judgment in their favor and against the Defendants, and to grant Plaintiffs the following relief:

1.    Enter a declaratory judgment that the Firearm Dealer License Certification Act violates Plaintiffs' state constitutional right to due process and are unenforceable, with regard to the following provisions:

        a.    The requirement of prohibitively expensive security and alarm systems, as described in Section 430 ILCS 68/5-50;

        b.    The requirement of purchasing and implementing an electronic recordkeeping system within the next six months, as described in 430 ILCS 68/5-65;

        c.    The certification fee structure, as described in 430 ILCS 68/5-70.

        d.    The void-for-vagueness video security requirements of 430 ILCS 68/5-50(a);

        e.    The void-for-vagueness general security requirements of 430 ILCS 68/5-55;

        f.    The void-for-vagueness safe storage requirements of 430 ILCS 68/5-55;

        g.    The void-for-vagueness disciplinary standards of 430 ILCS 68/5-85(a)(2);

2.    Issue a permanent injunction, without bond required of the Plaintiffs, enjoining the Defendant from enforcing the challenged provisions of 430 ILCS 68/5;

3.      Grant Plaintiffs a recoupment of the costs expended prosecuting this action and

4.      Grant Plaintiffs any and all further relief as this court deems just and proper.

## COUNT III - VIOLATION OF ILLINOIS ADMINISTRATIVE PROCEDURE ACT (5 ILCS 100/1, *et seq.*)

44.     Paragraphs 1 through 43 are realleged and incorporated herein by reference.

45.     The Plaintiffs are small businesses, as that term is defined in Section 30 of the Administrative Procedure Act (5 ILCS 100/1, *et seq.*) ("APA").

46.     The safe storage requirements contained in 430 ILCS 68/5-55, and the training standards contained in 430 ILCS 68/5-30 and 68/5-60, have been implemented without complying with the requirements of the APA.

47.     All rulemaking authority in the State of Illinois is conditioned on:

> the rules being adopted in accordance with all provisions of this Act and all rules and procedures of the Joint Committee on Administrative Rules (JCAR); any purported rule not so adopted, for whatever reason, including without limitation a decision of a court of competent jurisdiction holding any part of this [Administrative Procedure] Act or the rules or procedures of JCAR invalid, is unauthorized.  5 ILCS 100/5-6.

48.     "No agency rule is valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been made available for public inspection and filed with the Secretary of State as required by this [Administrative Procedure] Act."  5 ILCS 100/5-10(c).

49.     To date, no rules have been adopted by the Illinois State Police, in accordance with Section 100/5-40 of the APA, or JCAR, regarding the safe storage requirements of Section 68/5-55 of the License Act, notwithstanding the fact that the Illinois State Police has already circulated safe storage requirements with which dealers must comply.

50.     Further, to date, no rules have been adopted by the Illinois State Police, in accordance with Section 100/5-40 of the APA, or JCAR, regarding the training requirements of Sections 68/5-30 and 68/5-60 of the License Act, notwithstanding the fact that said training will be mandatory once the License Act takes effect.

51.     The failure of the Defendant to comply with the APA renders the implementation of the safe storage and training requirements of the License Act unauthorized and void. Specifically, there has been no public notice of any rules in the Illinois Register, and no notice of the time, place, and manner by which interested persons, including the Plaintiffs, could have expressed views and comments as to these issues.

52.     As Plaintiffs (and many of the firearms dealers affected by the License Act) are small businesses, it is required and essential that the Defendants comply with the requirements of 5 ILCS 100/30(a) and (b), especially as small businesses have not been given an opportunity to participate in any rule-making process per 5 ILCS 100/30(b). This is probably because there has been no rule-making process, but even if there has been, the lack of small business participation renders the

- 19 -

implementation of these requirements of the License Act a violation of the APA and JCAR.

WHEREFORE, the Plaintiffs, BFF FIREARMS, LLC, KAP GUNS, INC., R & J FIREARMS, QUALITY FIREARMS, MIDWESTERN FIREARMS, BIRDS N BROOKS ARMY NAVY SURPLUS, LTD., LINNEMANN'S GUN SHOP, INC., PERSONAL FIREARMS SALES & SERVICE, INC., and ILLINOIS STATE RIFLE ASSOCIATION, request this honorable court to enter judgment in their favor and against the Defendants, and to grant Plaintiffs the following relief:

1.      Enter a declaratory judgment that the Firearm Dealer License Certification Act violates the Administrative Procedure Act, and is unenforceable against Plaintiffs, with regard to the following provisions:

      a.      The safe storage requirements of Section 68/5-55 of the License Act;

      b.      The training requirements of Sections 68/5-30 and 68/5-60 of the License Act.

2.      Issue a permanent injunction, without bond required of the Plaintiffs, enjoining the Defendant from enforcing the challenged provisions of 430 ILCS 68/5 that violate the Administrative Procedure Act;

3.      Grant Plaintiffs a recoupment of the costs expended prosecuting this action and

4.      Grant Plaintiffs any and all further relief as this court deems just and proper.

## FOR ALL COUNTS

53.     Paragraphs 1 through 52 are realleged and incorporated herein by reference.

54.     A controversy exists, per 735 ILCS 5/2-701, as to whether the requirements contained in 430 ILCS 68/5 are unconstitutional and/or legally unenforceable.

55.     A declaration from this Court would settle this issue.

56.     A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

57.     The Plaintiffs seek a declaration that the challenged requirements in the License Act, 430 ILCS 68/5, *et seq.*, facially and as applied to Plaintiffs, are unconstitutional.

58.     The Plaintiffs also seek a declaration that the challenged requirements in the License Act, 430 ILCS 68/5, *et seq.*, have been effected and implemented in violation of the Administrative Procedure Act, and are unenforceable against Plaintiffs.

59.     In the absence of an injunction, the License Act requirements of 430 ILCS 68/5 would continue to be enforced and would subject the named Plaintiffs, and therefore ISRA's members who wish to sell and purchase a firearm, to prohibitive costs and expenses, in an unduly restrictive timeframe, which would severely impact their ability to continue their businesses.

60.     The Plaintiffs would continue to suffer irreparable injury if the Court does not issue an injunction.

61.     There is no adequate remedy at law because only a declaration and injunction, as opposed to monetary damages, would allow the named Plaintiffs the opportunity to operate their small retail firearms establishments, and thus ISRA's members who wish to obtain a firearm for self-defense to be able to do so, without unduly burdensome costs, expenses, and time-intensive requirements.

WHEREFORE, the Plaintiffs, BFF FIREARMS, LLC, KAP GUNS, INC., R & J FIREARMS, QUALITY FIREARMS, MIDWESTERN FIREARMS, BIRDS N BROOKS ARMY NAVY SURPLUS, LTD., LINNEMANN'S GUN SHOP, INC., PERSONAL FIREARMS SALES & SERVICE, INC., and ILLINOIS STATE RIFLE ASSOCIATION, request this honorable court to enter judgment in their favor and against the Defendants, and to grant Plaintiffs the following relief:

1.     Enter a declaratory judgment that the Firearm Dealer License Certification Act violates Plaintiffs' state constitutional rights and are unenforceable, with regard to the following provisions:

        a.     The requirement of prohibitively expensive security and alarm systems, as described in Section 430 ILCS 68/5-50;

        b.     The requirement of purchasing and implementing an electronic recordkeeping system within the next six months, as described in 430 ILCS 68/5-65;

        c.     The certification fee structure, as described in 430 ILCS 68/5-70.

      2.      Issue a permanent injunction, without bond required of the Plaintiffs,

enjoining the Defendant from enforcing the challenged provisions of 430 ILCS 68/5;

      3.      Grant Plaintiffs a recoupment of the costs expended prosecuting this

action and

      4.      Grant Plaintiffs any and all further relief as this court deems just and

proper.

Date:  July 16, 2019                /s/ David G. Sigale
                                     Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

Attorney for Plaintiffs