

STATE OF ILLINOIS

OFFICE OF THE AUDITOR GENERAL

MANAGEMENT AUDIT OF THE

# DEPARTMENT OF STATE POLICE'S ADMINISTRATION OF THE FIREARM OWNER'S IDENTIFICATION ACT

APRIL 2012

WILLIAM G. HOLLAND

AUDITOR GENERAL

EXHIBIT C

SPRINGFIELD OFFICE:
ILES PARK PLAZA
740 EAST ASH • 62703-3154
PHONE: 217/782-6046
FAX: 217/785-8222 • TTY: 888/261-2887

CHICAGO OFFICE:
MICHAEL A. BILANDIC BLDG. • SUITE S-900
160 NORTH LASALLE • 60601-3103
PHONE: 312/814-4000
FAX: 312/814-4006

OFFICE OF THE AUDITOR GENERAL
WILLIAM G. HOLLAND

*To the Legislative Audit Commission, the Speaker and Minority Leader of the House of Representatives, the President and Minority Leader of the Senate, the members of the General Assembly, and the Governor:*

This is our report of the management audit of the Firearm Owner's Identification (FOID) Card Program.

The audit was conducted pursuant to House Resolution Number 89, which was adopted April 14, 2011. This audit was conducted in accordance with generally accepted government auditing standards and the audit standards promulgated by the Office of the Auditor General at 74 Ill. Adm. Code 420.310.

The audit report is transmitted in conformance with Section 3-14 of the Illinois State Auditing Act.

WILLIAM G. HOLLAND
Auditor General

Springfield, Illinois
April 2012



NATIONAL
UNION
SOVEREIGNTY
STATE
ILLINOIS
1868

STATE OF ILLINOIS
OFFICE OF THE
AUDITOR GENERAL
William G. Holland, Auditor General

## SUMMARY REPORT DIGEST

# ILLINOIS FIREARM OWNER'S IDENTIFICATION (FOID) CARD PROGRAM

**Management Audit**
**Release Date: April 2012**

## SYNOPSIS

House Resolution Number 89 required the Office of the Auditor General to conduct a management audit of the Illinois State Police's (ISP) administration of the Firearm Owners Identification Card (FOID) Act. Our audit concluded that the effectiveness of the FOID card program is limited in promoting and protecting the safety of the public.

There are significant deficiencies in the reporting of individuals with potentially disqualifying mental health conditions to ISP. During 2010, **only 3 of the 102 circuit court clerks (3%) submitted mental health court orders to ISP as required by the Act.** As a result, ISP did not receive the information needed from the circuit court clerks to revoke or deny FOID cards. Due to the lack of reporting by circuit court clerks in Illinois, ISP could not report all individuals adjudicated as a "mental defective" or "intellectually disabled" (terms used by the Act) to the FBI's National Instant Criminal Background Check System (NICS), as required by the Act. Fifty-six of the 121 (46%) orders received from circuit court clerks during 2010 did not contain information determined by ISP to be necessary, including date of birth, gender, or race. We found that 27 of the 121 (22%) orders from the circuit court clerks were not reported to NICS.

Mental health admissions data received by the Department of Human Services from private hospitals and nursing homes did not make the distinction between voluntary and involuntary admission; therefore, ISP could not report any individuals with disqualifying mental health admissions (i.e., adjudicated involuntary admissions) from private hospitals or nursing homes to NICS.

Our audit also found that:

- The Illinois State Police's Firearms Services Bureau did not approve all FOID cards in the required 30 days for the 903,139 applications received during 2008, 2009, and 2010. **Over the three year period, 566,616 of 879,906 (64%) applications were approved within 30 days.** In 2008, 40 percent of cards were approved within 30 days. The processing times improved to 80 percent in 2009 and decreased to 70 percent in 2010.
- ISP did not deny all FOID card applications in the required 30 days. For applications received during 2008, 2009, and 2010, ISP denied 20,152. Over the three year period, 71 percent of the denied FOID cards were denied within the required 30 days.
- During 2008, 2009, and 2010, the ISP recorded 21,212 reasons for revocations of FOID cards for 20,227 cardholders. **ISP officials estimated that only 30 percent of revoked FOID cards are returned to ISP.**
- ISP did not have enough Customer Service Representatives to handle the volume of calls that are received by the Bureau related to the FOID card program. According to call logs provided by ISP, during the last quarter of 2010, **25,131 of 29,420 calls (85%) were not answered by ISP.**
- According to documentation provided by ISP, from July 1, 2009, through June 30, 2011, the State Police spent $526,919 on overtime for FOID card processing.

Office of the Auditor General, Iles Park Plaza, 740 E. Ash St., Springfield, IL 62703 • Tel: 217-782-6046 or TTY 888-261-2887
*This Report Digest and a Full Report are also available on the internet at www.auditor.illinois.gov*

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

### BACKGROUND

To promote and protect the health, safety, and welfare of the public, Illinois residents are required by the Firearm Owners Identification Card Act (430 ILCS 65) to have a valid FOID card in order to possess or purchase firearms or ammunition. The law originally became effective in 1968. The Firearm Owner's Identification Card (FOID) Program is administered by the Firearms Services Bureau (Bureau) within the Illinois State Police (ISP). Although an individual has a valid FOID card, an additional background check will be conducted on the individual at the time a firearm is purchased from a federally licensed firearm dealer, gun show promoter, or gun show vendor. The background check conducted at the time of purchase is also conducted by the Bureau, which administers the Firearm Transfer Inquiry Program.

**The Illinois State Police's Firearms Services Bureau received 903,139 FOID applications and approved 879,906 during 2008, 2009, and 2010.**

As seen in Digest Exhibit 1, the Illinois State Police's Firearms Services Bureau received 903,139 FOID applications and approved 879,906 during 2008, 2009, and 2010. The Bureau denied 20,152 of the 903,139 applications during the three year period. According to ISP, as of January 2011, there were 1,316,508 individuals with active FOID cards in Illinois. (page 4, 44)

Digest Exhibit 1
**FOID CARD APPLICATIONS RECEIVED, APPROVED, AND DENIED**
For applications received during 2008 - 2010

| | Applications Received | Applications Approved | Applications Denied | Other [1] |
|---|---|---|---|---|
| 2008 | 285,707 | 277,727 | 6,426 | 1,554 |
| 2009 | 327,442 | 319,612 | 6,893 | 937 |
| 2010 | 289,990 | 282,567 | 6,833 | 590 |
| **Totals** | **903,139** | **879,906** | **20,152** | **3,081** |

Note: [1] Includes duplicate applications that were cancelled or applications that were pending receipt of additional information.

Source: ISP data summarized by the OAG.

### OVERALL CONCLUSION

**The effectiveness of the Illinois FOID card program operated by the ISP is limited in promoting and protecting the safety of the public.**

The effectiveness of the Illinois FOID card program operated by the ISP is limited in promoting and protecting the safety of the public. There are significant deficiencies in the reporting of individuals with potentially disqualifying mental health conditions to the Illinois State Police. In addition, because many of these

disqualifying conditions are also required to be reported to the Federal Bureau of Investigation's (FBI) National Instant Criminal Background Check System (NICS), which is used by other states when individuals purchase firearms, the safety of the general public as a whole is at risk. (pages 17, 23)

**MENTAL HEALTH REPORTING TO DHS AND ISP**

**We reviewed all mental health reports ISP reported receiving from Illinois circuit court clerks during 2010 and determined that only 3 of the 102 circuit court clerks (3%) submitted mental health court orders to ISP as required.**

We reviewed all mental health reports ISP reported receiving from Illinois circuit court clerks during 2010 and determined that only 3 of the 102 circuit court clerks (3%) submitted mental health court orders to ISP as required by the Firearm Owners Identification Card Act (Act). Consequently, in most counties, if the court finds individuals to be a "mental defective" or "intellectually disabled" (terms used by the Act), ISP is not receiving the information needed from the circuit court clerks to revoke or deny FOID cards for individuals from those counties. Unless reported by another source (such as a State-operated mental health facility, hospital, etc.), individuals from those counties could receive or continue to hold a valid FOID card and could use it to purchase firearms and ammunition. Due to the lack of reporting by circuit court clerks in Illinois, ISP could not report all individuals adjudicated as a "mental defective" or "intellectually disabled" to the FBI's NICS, as required by the Act. (page 25)

**Due to the lack of reporting by circuit court clerks in Illinois, ISP could not report all individuals adjudicated as a "mental defective" or "intellectually disabled" to the FBI's NICS, as required by the Act.**

Furthermore, the information submitted by the three circuit court clerks to ISP was missing critical information needed for the FOID card eligibility determination process. Fifty-six of the 121 (46%) orders received from circuit court clerks during 2010 did not contain information determined by ISP to be necessary, including date of birth, gender, or race. We found that 27 of the 121 (22%) orders from the circuit court clerks were not reported to NICS. Of those 27, 18 of the orders received did not contain the necessary information needed to report to NICS. (page 26)

There are also issues related to the reporting of mental health data by the Department of Human Services (DHS) to the State Police. Mental health admissions data received by the DHS from private hospitals and nursing homes does not make the distinction between voluntary and involuntary admission. Since State law considers both voluntary and involuntary admissions as firearm prohibitors, the lack of distinguishing between type of admission does not impact ISP's FOID card eligibility determination process. However, under federal law, only individuals **adjudicated** as a "mental defective" (i.e., involuntarily admitted) are considered to have a firearm prohibitor and can be reported to NICS. Since there is no distinction between voluntary and involuntary admissions within the DHS data, ISP could not report any individuals with disqualifying mental health admissions from private hospitals or nursing homes to the NICS database.

**Since there is no distinction between voluntary and involuntary admissions within the DHS data, ISP could not report any individuals with disqualifying mental health admissions from private hospitals or nursing homes to the FBI's NICS database.**

Hospitals and nursing homes did not report mental health admissions to DHS within seven days from admission as required by 740 ILCS 110/12(b). During calendar year 2010, only 13 of

105 private hospitals and nursing homes reported admissions to DHS within an average of 7 days. (pages 29-31)

**MENTAL HEALTH REPORTING TO NICS BY ISP**

Although the Illinois State Police were required by Illinois law to report mental health prohibitors to NICS effective June 1, 2008, the first mental health events reported to NICS by ISP were in December 2010. In December 2010, ISP reported 5,154 events. As of August 31, 2011, Illinois had reported 6,732 prohibited mental health events, which is far fewer than states such as California, Texas, New York, Virginia, Michigan, and Washington.

In December 2010, ISP reported 5,154 events. The average time it took ISP to report these events from the time the information was entered by DHS was 469 days. ISP has been reporting regularly since April 2011. According to information provided by ISP, since April 2011, the average days to report events are 56.

The data submitted to NICS by ISP, with some exceptions, contains the following: Patient ID; Event Date; Last Name; First Name; Gender; Date of Birth; and Social Security Number. The data did not include the physical description as required by the Act.

Our review of the information submitted by ISP to NICS identified issues with the accuracy of the information submitted. Our review of the 6,932 mental health events reported to NICS by ISP as of September 26, 2011, determined that the 6,932 events were for 3,729 individuals. We compared the entries and determined that individuals who were entered into the system more than once had incorrect information. We identified 63 NICS entries from Illinois with incorrectly spelled names, 53 with incorrect dates of birth, and 52 with incorrect social security numbers. (pages 31-34)

**FOID CARD PROGRAM ISSUES AT ISP**

We conducted reviews of the FOID eligibility process and identified significant management control problems with ISP's administration of the program that impact program effectiveness. The Firearms Services Bureau did not have up-to-date policies and procedures, up-to-date administrative rules, and did not provide formal training to the Bureau staff related to the process for determining FOID card eligibility. (pages 18-19)

**The Firearms Services Bureau did not have up-to-date policies and procedures, up-to-date administrative rules, and did not provide formal training to the Bureau staff related to the process for determining FOID card eligibility.**

During our review of the FOID card process, we observed thousands of FOID cards were not being delivered to the applicants. State Police officials noted FOID cards are often returned by the post office as undeliverable. We estimated as of September 14, 2011, there were more than 6,200 returned FOID cards at ISP that were not being worked. (page 36-37)

ISP did not have enough Customer Service Representatives to handle the volume of calls that are received by the Bureau related to the FOID card program. As seen in Digest Exhibit 2, call logs provided by ISP showed that during the last quarter of 2010, 25,131 of 29,420 calls (85%) were not answered by ISP. (page 37)

Digest Exhibit 2
**ISP FOID HOTLINE CALLS**
4th Quarter Calendar Year 2010

| | Calls Received | Calls Answered | Calls Abandoned |
|---|---|---|---|
| Oct. 2010 | 10,257 | 1,119 | 9,138 |
| Nov. 2010 | 9,757 | 1,299 | 8,458 |
| Dec. 2010 | 9,406 | 1,871 | 7,535 |
| **Totals** | **29,420** | **4,289** | **25,131** |

Source: Call log provided by ISP.

**The Firearms Services Bureau lacks effective controls to ensure timely processing of FOID card applications.**

The Firearms Services Bureau lacks effective controls to ensure timely processing of FOID card applications. We found that the November 15, 2011, Jeopardy Report (which identifies pending applications that are older than 30 days) contained 2,284 applications of which 2,043 were from October 11, 12, or 13. It appears that these were never processed to be manually worked by eligibility staff. (pages 39-40)

The Illinois State Police could not produce complete procurement documentation for the contracts related to the FOID card process. Some information was provided, which included bid proposals for the remittance, keying, and scanning. We could not find any decision documents such as evaluation or scoring sheets within the information provided by ISP. (pages 40-41)

**FOID CARD PROCESSING STATISTICS**

**The Bureau did not approve all FOID cards in the required 30 days during 2008, 2009, and 2010.**

As seen in Digest Exhibit 3, the Bureau did not approve all FOID cards in the required 30 days during 2008, 2009, and 2010. ISP's timeliness of the FOID card approval process improved since 2008. In 2008, only 40 percent of cards were approved within the required 30 days. The processing times improved to 80 percent in 2009 and decreased to 70 percent in 2010. Over the three year period, 566,616 of 879,906 (64%) applications were approved within 30 days. (page 45)



Digest Exhibit 3
**TIMELINESS OF THE FOID CARD APPLICATIONS APPROVED**
For applications received during 2008 - 2010

Source: ISP data summarized by the OAG.

**During 2008, 2009, and 2010, the Bureau did not deny all FOID card applications in the required 30 days.**

During 2008, 2009, and 2010, the Bureau did not deny all FOID card applications in the required 30 days. In 2008, 67 percent of FOID cards were denied within 30 days. The percentage increased to 78 percent in 2009 and decreased to 67 percent in 2010. Over the three year period, 71 percent of the denied FOID cards were denied within the required 30 days. During 2008, 2009, and 2010, the Firearms Services Bureau received 903,139 FOID applications, approved 879,906 and denied 20,152. (page 44, 46)

During 2008, 2009, and 2010, the ISP recorded 21,212 reasons for revocations of FOID cards for 20,227 cardholders. ISP officials estimated that only 30 percent of revoked FOID cards are returned to ISP. While an individual who retained a revoked FOID card would be unable to purchase a firearm from a licensed firearm dealer (since the ISP matches should identify that the card was revoked), the individual would still be able to present the FOID card and purchase ammunition (since the purchaser is only required to show his FOID card -- no background check is run when ammunition is sold). Furthermore, when a firearm is privately sold, the seller is required only to record the FOID card number of the buyer. Since no background check is done, the seller would have no knowledge that the FOID card the buyer is presenting had been revoked. (page 48)

**The Firearms Services Bureau spent hundreds of thousands of dollars on overtime for its employees to process FOID card applications.**

The Firearms Services Bureau spent hundreds of thousands of dollars on overtime for its employees to process FOID card applications. According to documentation provided by ISP, from July 1, 2009, through June 30, 2011, the State Police spent $526,919 on overtime for FOID card processing. Three employees accounted for $239,156 of the $526,919 (45%). We looked at the FY10 salaries for the four individuals with the most overtime and determined that the four received $84,451 in

overtime pay in addition to the $279,090 earned in annual salary. (pages 52-53)

The audit resolution asked whether the ISP has denied any applications because the applicant provided false information and, if so, whether the ISP made any referrals for criminal prosecution for providing false information. ISP officials noted that it's difficult to determine whether the information was false or whether it was a mistake. According to ISP, ISP did not refer these cases for prosecution. (page 53)

**RECOMMENDATIONS**

The audit contains 12 recommendations. Eleven of the recommendations were specifically directed to the Illinois State Police. One recommendation was directed to both the Illinois State Police and the Illinois Department of Human Services. The State Police and the Department of Human Services agreed with all 12 recommendations. Appendix F to the report contains the agency responses.

WILLIAM G. HOLLAND
Auditor General

WGH:SAW

AUDITORS ASSIGNED: This Management Audit was performed by the Office of the Auditor General's staff.