**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DEMETRIA POWELL, as guardian *ad litem* and on behalf of her son D.P; TANYA REESE, as guardian *ad litem* and on behalf of her son M.R.; and TYWANNA PATRICK, as guardian *ad litem* and on behalf of her granddaughter J.C., as well as on behalf of a class of similarly situated children,** | ) ) ) ) ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) ) |
| | ) |
| **THE STATE OF ILLINOIS; THE ILLINOIS DEPARTMENT OF STATE POLICE; BRUCE RAUNER, Governor of the State of Illinois; and LEO P. SCHMITZ, Director of the Illinois Department of State Police,** | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

Case No. 18 CV 6675

Judge Joan B. Gottschall

<u>**ORDER**</u>

Plaintiffs filed a three-count complaint on behalf of minor children exposed to gun violence in the City of Chicago. They claim Illinois officials have violated Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12131 et seq., and the Illinois Civil Rights Act, 740 ILCS 23/5. The complaint attributes each child's Post-Traumatic Stress Disorder diagnosis, as well as other significant emotional, psychological, and behavioral challenges, to exposure to gun violence in a high-crime neighborhood. Plaintiffs seek injunctive and declaratory relief as a reasonable accommodation required by the ADA. They want the court to compel defendants to enact regulations, primarily focusing on gun shops, which

they contend would appreciably stem the tide of gun violence in Chicago.[1] *See* Compl. ¶ 28, ECF No. 1.

By memorandum opinion and order dated September 30, 2019 ("the order," ECF No. 37), this court granted in part and denied in part defendants' motion to dismiss the complaint. Only the claims of plaintiff Demetria Powell on behalf of her minor grandson remain pending. Defendants have appealed the portion of the order denying their motion to dismiss under the Eleventh Amendment. Notice Appeal 1, ECF No. 45. Before the court is defendants' motion to certify for immediate appeal two additional questions, one concerning Article III standing and one concerning the merits of the ADA claims they claim were decided in the September 30, 2019, opinion. *See* ECF No. 46 at 1.[2] Defendants also ask this court to stay this case during the pendency of the certified appeal.

To obtain a certificate under 28 U.S.C. § 1292(b), defendants bear the burden to persuade the court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Fisons Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972). The statute requires the court to certify that the non-appealable order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). A § 1292(b) certification does not automatically stay the case. *Id.* The § 1292(b) criteria must all be satisfied; "[t]he federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may

---

[1] The September 30, 2019, opinion sets forth the plaintiffs' allegations in detail. *See* slip op. at 2–10.

[2] The questions are: (1) whether the injury alleged by the remaining plaintiff—psychological trauma from exposure to third-party gun violence—is fairly traceable to defendants and is likely to be redressed by an order requiring defendants to promulgate regulations on gun dealers and (2) whether Title II of the Americans with Disabilities Act (ADA) encompasses a student's claim.

advance the proceedings in the district court." *Ahrenholz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2002) (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991)). For the reasons explained below, defendants have not carried their burden and have not satisfied the criteria for a § 1292(b) certification.

Defendants have not persuaded the court that certification may materially advance this case toward ultimate resolution. To the contrary, staying this case would delay resolution of the mootness issue, discussed below, which defendants claim is dispositive and which they acknowledge would "obviate" the need for an appeal. Mot. to Certify ¶ 24. They submit that certification would somehow allow the two issues to be combined on appeal. *See id.* Defendants do not explain how. *See id.* Defendants do not grapple with the considerable body of law holding that the district court must decide a question before certifying it. 16 *Wright, Miller, et al.*, Federal Practice & Procedure § 3930 & n.2 (Supp. 2019) (collecting authority).

Defendants have raised a mootness question that has not been decided. On October 15, 2019, they filed a motion to reconsider the September 30, 2019, order. ECF No. 39. They argue that the passage of an Illinois statute in January 2019 and proposed regulations, published in the Illinois Register on August 23, 2019, effectively give plaintiffs the relief they are seeking here, mooting the case. *See Id.* ¶¶ 5–30. The court does not understand defendants to be suggesting that this issue was aired, much less decided, in the September 30, 2019, order. *See id.* The motion to reconsider has not been fully briefed, and the court implies nothing about its chances.

Defendants submit that the recent statutory and regulatory changes they contend moot this case also make certification more urgent. Mot. to Certify ¶ 19. The court disagrees. Suppose the Seventh Circuit decides a certified appeal before this court decides the motion to reconsider. If the case is indeed moot, the Seventh Circuit's decision, and any standing analysis,

would be unnecessary. Worse still, if the Seventh Circuit reaches the merits, it would be deciding one or more questions defendants characterize as "novel" (Mot. to Certify ¶ 6) without any record (not even a complaint) about the statutory or regulatory scheme that presently exists. Accordingly, the mootness arguments defendants raised after the issuance of the September 30, 2019, order refute their contentions that the issues they want certified coupled with a stay will best advance the case materially toward termination. *See Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 45 n.5 (1995); *Johnson v. Burken*, 930 F.2d 1202, 1205–06 (7th Cir. 1991); *United States v. Rent-A-Homes Syst. of Ill., Inc.*, 602 F.2d 795, 797 (7th Cir. 1979).

Defendants also worry that this court might interfere, presumably through a preliminary or final injunction, with the process of promulgating regulations. See Mot. to Certify ¶ 20. This concern, however, can be adequately addressed by looking to the familiar factors that must be weighed when issuing an injunction. If a threshold showing is made, the public and private harms of issuing an injunction must be balanced. *See, e.g.*, *Stuller, Inc. v. Steak N Shake Enter., Inc.*, 695 F.3d 676, 679 (7th Cir. 2012); *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). Any impact on pending state regulations would of course be an important consideration. Additionally, defendants have not demonstrated that the questions they want certified are "pure questions of law rather than merely . . . issue[s] that might be free from a factual contest." *Ahrenholz*, 219 F.3d at 677.

Normally, decisions on motions to dismiss are inappropriate for interlocutory review. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010). In contrast to this case, in *In re Text Messaging*, the Seventh Circuit viewed the case as involving no contested factual issues, and the likelihood of subsequent amendments was slim to nil. *See id.* at 624–25.

4

Here, complex factual allegations formed the backbone of the court's analysis of the standing and redressability issues defendants want certified. For instance, the complaint summarizes statistics on crime guns in Chicago, statistics about gun sales and gun crimes, and academic articles studying the potential impact of various regulations. *See* Compl. ¶¶ 16–19, 24–29. The court cannot know what plaintiffs would plead if the complaint were dismissed, but the complaint skims the surface of the statistics and academic articles. *See id.* In short, plaintiffs would likely have more to say in an amended complaint, and the interlocutory appeal would by no means be certain to end the matter even if defendants prevailed.[3] So certification may very well stall this case at the pleading stage for another year or more. On balance, the court considers beginning discovery to explore the causation and redressability issues raised by the complaint to be more likely to advance this case toward a speedy conclusion.[4]

Finally, defendants express some confusion about the definition of the relevant "program" for purposes of plaintiffs' ADA claims. *See* Mot. to Certify ¶¶ 15–16; *see also Powell*, slip op. at 26. The September 30, 2019, opinion noted the parties' failure to develop adequately many arguments pertinent to the merits of the ADA claims and withheld judgment on them. *See* slip op. at 29. Those inadequacies counsel against, not for, certification because waiver issues may frustrate the Seventh Circuit's ability to provide guidance. *See, e.g., Modern*

---

[3] Considered on their merits, defendants' arguments are strained. In the first place, defendants do not explain what specifically makes the ADA unique for Article III standing purposes. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 1549–50 (2016) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979)); *see also id.* at 1549–50. Furthermore, there is nothing untoward about looking to cases articulating rules at a higher level of generality when more precisely applicable authority cannot be found. Courts typically reason in this fashion. *E.g., Woodbridge Place Apartments v. Wash. Square Capital, Inc.,* 965 F.2d 1429, 1434 (7th Cir. 1992) (declining to certify issue to state supreme court in part because "general principles of contractual construction provide enough guidance"). Hence even questions of first impression need not be automatically certified for interlocutory appeal. 16 *Wright, Miller, et al.*, Federal Practice & Procedure § 3930 & n.2 (Supp. 2019) (collecting authority).

[4] To expedite this case, the court is inclined to sequence discovery in a way that puts these issues, and potentially expert discovery, first, though the parties remain free to argue for another discovery plan. *See generally* Fed. R. Civ. P. 16(a); 26(f).

*Drop Forge Co. v. Rapid Techs., Inc.*, 1996 WL 453235, at *1–5 (7th Cir. Aug. 8, 1996) (unpublished table decision) (discussing waiver of issues not adequately preserved in district court). To the degree there is any confusion about how plaintiffs define the relevant "program" for ADA purposes, the issue should of course be clarified to guide discovery.[5] However, the parties have a range of options (e.g., a stipulation, an agreed discovery order, or amending the complaint) that would be far less likely than an interlocutory appeal to introduce needless delay.

For the reasons stated, defendant's motion to certify this case for an interlocutory appeal is denied.


Dated: November 5, 2019 _____/s/_____

Joan B. Gottschall
United States District Judge

---

[5] This is another reason not to certify. The second question defendants wish to certify presupposes their definition of the applicable program or service. If plaintiffs define the program or service more broadly, answering question two would not be likely to dispose of the case in its entirety.