IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIA POWELL, as guardian ad litem and on behalf of her son D.P., <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF ILLINOIS, et al., <br><br> Defendants. | No. 18-cv-6675 <br><br> Hon. Joan B. Gottschall |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR
RECONSIDERATION AND TO DISMISS THIS ACTION AS MOOT**

Defendants support appropriate and constitutional efforts to reduce gun violence. One such recent effort (in addition to other pending gun legislation) is the new Firearm Dealer License Certification Act and its proposed regulations. The new Act and proposed regulations add requirements on Illinois gun dealers of the kind plaintiff is asking this Court to impose by court order. Defendants contend this case is moot because (a) the new Act and proposed regulations provide the core relief plaintiff is asking this Court to impose through injunctive relief; and (b) a dispute about whether the Act and regulations go far enough to satisfy the remaining plaintiff in this case presents a materially different case or controversy than the one presented in the current complaint.

In response, plaintiff acknowledges that the new Act and proposed regulations provide "some" relief that is "helpful" (Dkt. 51 at 8–10), but plaintiff nevertheless contends the new requirements don't go far enough, will not be implemented soon enough, and may not be implemented at all if a pending constitutional challenge to the new Act succeeds.

None of these arguments alters the conclusion that this case is moot. And plaintiff's concerns about when the regulations will become final and whether the Act will survive a constitutional challenge raise another concern: whether the case is even ripe for adjudication. Finally, to the extent plaintiff is now arguing for relief that would require the State to pass new laws or dictate how the State Police should perform its discretionary functions, that not only materially changes the nature of the case or controversy, but also reignites an Eleventh Amendment issue as to whether such relief exceeds federal court authority.

The proper course is for the Court to dismiss this case without prejudice and allow plaintiff to decide whether to replead in light of the new Act and regulations.

**A.  The Act and Proposed Regulations Provide Sufficient Relief to Moot this Action.**

Plaintiff first questions whether defendants timely raised their mootness challenge (Dkt. 51 at 3–4), then asserts that in any event, the License Certification Act and proposed regulations do not moot plaintiff's ADA and Illinois Civil Rights Act claims because the Act and regulations do not give plaintiff "all the relief" requested (*id.* at 5–14). Neither argument should prevail.

Plaintiff ignores black-letter law holding that mootness is a principle of subject-matter jurisdiction that may be raised at any time (*see* Dkt. 39 ¶ 22), and further ignores that under Rules 12(g)(2) and 12(h)(3), motions challenging subject-matter jurisdiction are not subject to the rule against sequential motions to dismiss. And as defendants already acknowledged, though it is true they could have addressed the passage of the Act when they filed their motion to dismiss on February 6, 2019, it is also true that the Act had just been enacted (on January 18, 2019), but the proposed regulations had not yet been released for public comment. They were not published until August, 2019, after the briefing was complete.

Plaintiff also cites cases noting that reconsideration motions are disfavored (Dkt. 51 at 4)—a point that defendants acknowledged (Dkt. 39 ¶ 21)—but plaintiff disregards that an appropriate basis to seek reconsideration is to advise the court of changes in fact or law that would likely alter the Court's decision (*id*.).

The main thrust of plaintiff's argument is that the new law and regulations do not moot the case because they do not provide plaintiff with "all of the relief" requested on behalf of D.P. (Dkt. 51 at 5–14.) Plaintiff discusses various additional ways she would like to see the State's gun laws strengthened. *Id*. The first flaw in this argument is that it disregards the limited nature of the relief requested in the complaint. The complaint does not ask the Court to order the State Police to enact "all of" the potential rules and regulations listed in the complaint. To the contrary, the complaint limits the requested relief to asking the Court to order the State Police to "exercise its authority, under applicable state law" to adopt regulations "such as" those listed in complaint paragraph 28. (Dkt. 1 at 26, 27 and 29, clause B.) The State and the State Police have done exactly that in enacting the License Certification Act and proposed regulations. Defendants have thus effectively provided "all of" the relief plaintiff requests.

When the Supreme Court held that Congress intended for Title II of the ADA to require States to take reasonable measures to accommodate people with disabilities, the Court expressly stated that "Title II does not require States to employ *any and all means* to make . . . services available to persons with disabilities. . . ." *Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004) (emphasis added). Thus, even if the new Act and regulations do not impose every single rule plaintiff proposes in the precise form proposed, the Act and regulations do provide the "core" relief by making "reasonable accommodations" like those requested in the complaint.

3

As we previously noted (Dkt. 39 ¶ 25), the situation here is much like that in *Moustakas v. Margolis*, 154 F. Supp. 3d 719, 724 (N.D. Ill. 2016), a case that plaintiff does not address. The plaintiffs there alleged constitutional inadequacies in the State's Firearm Concealed Carry Act because the administrative rules did not provide applicants notice and a right to object. *Id*. at 725, 727. The court considered whether changes in the rules rendered the case moot. *Id*. at 727–28. The plaintiffs in *Moustakas*, like plaintiff here, contended the case was not moot because the new rules, in their view, provided "some remedy but ultimately an inadequate one." *Id*. at 728. The court rejected that argument, holding that the case was moot because the new rules provided notice and an opportunity to be heard, which "formed the core" of the plaintiffs' due process claim. *Id*.

Here, the "core" of plaintiff's requested relief is for the State Police to enact new regulations, primarily on gun dealers, which it has now done. Plaintiff concedes that the Act and proposed regulations, among other things, address *licensing*, as plaintiff requests in paragraph 28A; *security*, as plaintiff requests in paragraph 28B, G, and H; *record keeping*, as plaintiff requests in paragraph 28I and J; and *enforcement* through site inspections, as plaintiff requests in paragraph 28K and J. (Dkt. 51 at 8–9.) But despite these and several other "meaningful" provisions in the Act and proposed regulations (*see* Dkt. 39 at 10–14), plaintiff still insists the case is not moot because the Act and regulations allegedly do not go far enough to "address the most important sources of 'crime guns' on the streets of Chicago": namely, those related to "straw purchasers" (even though the new Act, 430 ILCS 68/5-60, requires training to identify straw purchasers); recovery of guns from those whose FOID cards have been revoked (even though under state law, 430 ILCS 65/9.5, the recovery of FOID cards and guns is mainly the job of local law enforcement); and "other important issues," such as imposing a ban on gun purchases by individuals under circumstances where a gun they purchased is identified as a crime gun, but the

individual did not report the gun as lost, stolen, or properly transferred (even though that may require new legislation as opposed to rulemaking under existing law). (Dkt. 51 at 9–13.)

Plaintiff's shift in focus away from the complaint's limited request for the State Police to exercise its authority under existing "applicable law" to enact regulations "such as" those listed in the complaint (*see* Dkt. 1 at 26, 27 and 29, clause B), to now seeking to require the State and State Police to enact additional laws and regulations, raises a serious Eleventh Amendment problem, discussed below, and also raises a case or controversy that is materially different from that raised in the pending complaint. To the extent a case or controversy remains about what reasonable accommodations are required to comply with the ADA programs alleged in this case, the nature of that case or controversy has now materially changed as a result of the "accommodations" now provided by the State's passage of the License Certification Act and the State Police's promulgation of new proposed regulations.

As defendants showed in their motion (Dkt. 39 ¶ 26), even if the new Act and regulations do not provide "all of" the regulations in precisely the form plaintiff would like to see adopted, the case is still moot because the state of the law is now "sufficiently altered" and "the changes [in law or regulation] are so substantial as to make it unwise for the . . . court to consider the new policy." *Smith v. Exec. Dir. of Ind. War Mem'ls. Comm'n*, 742 F.3d 282, 288 (7th Cir. 2014); *see also Northeastern Fla. Ch. of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 671 (2013) (O'Connor, J., dissenting). Plaintiff does not address this rule, or these cases, at all.

Plaintiff instead cites inapposite cases involving situations where the government has ceased challenged conduct (such as by repealing a challenged law or ordinance), but still poses a threat to "return to its old ways once it is not under threat of suit." (Dkt. 51 at 14.) Plaintiff cites

5

no evidence of any threat of backsliding, and also ignores that "when the defendants are public officials . . . [courts] place greater stock in their acts of self-correction, so long as they appear genuine." *Fed'n of Advert. Indus. Reps., Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003).

The State and the State Police have shown a genuine commitment to reduce gun violence. Significantly, state officials have exercised their authority to pass a substantial new gun dealer licensing law with substantial new proposed regulations of the kind requested in the complaint. The State Police has also publicly announced additional actions under other applicable laws to strengthen its enforcement processes with respect to revoked FOID cards, including through additional training, enhanced quality assurance processes, and enhanced information sharing, such as by providing lists of individuals with revoked FOID cards to every State Police district and zone commander; instructing those personnel to deliver the lists to local sheriffs, police chiefs, and state's attorneys; sharing the revocation data with the Statewide Terrorism and Intelligence Center; building a web portal to make the FOID card revocation list accessible to all Illinois law enforcement personnel on a 24/7 basis; working with federal partners to incorporate information such as fingerprint records; and working with other state entities like the Illinois Criminal Information Authority (ICJIA) to determine if funding to law enforcement agencies and courts can be tied to substantial compliance with criminal record submission requirements.[1]

Efforts to combat gun violence are not limited to the new Act and the State Police's actions discussed above. There are also ongoing legislative efforts to enhance the State's gun laws, including through pending Senate Bill 1966, as amended by House Amendments one,[2]

---

[1] March 6, 2019 press release, https://www.isp.state.il.us/media/pressdetails.cfm?ID=1021.

[2] http://ilga.gov/legislation/101/SB/PDF/10100SB1966ham001.pdf

two,[3] and three,[4] known as the "Fix the FOID Act."[5] The proposed legislation contains three key gun safety reforms geared to prevent dangerous persons from accessing firearms: *First*, the bill closes the so-called "private sale loophole" by requiring that all firearm transfers are conducted through a federally licensed federal firearms dealer (with certain exceptions for transfers to immediate family members through a gift or inheritance). (Senate Bill 1966, House Amendment 1 at 21–30; House Amendment 2 at 1–2.) The bill also imposes a three-day waiting period for transactions to be completed. (*Id*.) *Second*, the bill requires applicants to submit a full set of fingerprints with each application for a FOID card or renewal. (Senate Bill 1966, House Amendment 1 at 40–41; House Amendment 3 at 2–3.)[6] *Third*, the bill requires the State Police to create a "prohibited persons portal." (Senate Bill 1966, House Amendment 1 at 8–9.) The portal is a database that will contain information about individuals whose FOID cards have been revoked or suspended, including the reasons why the person is no longer eligible for a FOID card. Federal, state, and local law enforcement entities, including the Office of the Attorney General, will have access to the portal to assist with law enforcement activities. This portal will help law enforcement agencies identify individuals who are no longer eligible to possess a FOID

---

[3] http://ilga.gov/legislation/101/SB/PDF/10100SB1966ham002.pdf

[4] http://ilga.gov/legislation/101/SB/PDF/10100SB1966ham003.pdf

[5] The House successfully passed the amended bill on May 29, 2019 with a majority vote of 62 members in favor. The Fix the FOID Act is currently pending before the Senate. The Senate did not take action on the bill before the General Assembly adjourned the regular spring session on May 31 or during the first week of the fall veto session, which convened October 28–30. It is unknown whether the Senate will hold hearings and vote on the bill during the second week of the fall veto session, scheduled for November 12–14.

[6] Although fingerprints are not currently required to obtain a FOID card or a concealed carry license, the current concealed carry statute, 430 ILCS 66/30(8), incentivizes concealed carry license applicants to submit fingerprints with their application to receive a shorter application processing time.

card and individuals who have failed to surrender their FOID card or firearms to law enforcement in violation of the FOID Act.

A key concern in this case is to help D.P. address his post-traumatic stress disorder related to gun violence. The State provides support for victims like D.P. through the State's Crime Victims Compensation Act, which allows victims to apply for and obtain compensation for "psychological treatment of a mental or emotional condition caused or aggravated" by a crime. *See* 740 ILCS 45/2(c) and (d), and 6.1(a).

These and other "meaningful" measures refute any notion that defendants threaten to "return to their old ways" once they are no longer under threat of suit. Plaintiff's argument is speculative, as was the same argument by the plaintiffs in *Moustakas*, 154 F. Supp. 3d at 728. ("Plaintiff's argument that Illinois will revert back to the old licensing procedure is speculative and cannot overcome a mootness challenge.") And if the case is dismissed without prejudice, as defendants have suggested (Dkt. 39 ¶ 30), they would remain subject to suit through an amended complaint.

**B. An Order to Compel Discretionary Acts Would Violate the Eleventh Amendment.**

Although defendants do not wish to revisit the Eleventh Amendment here, to the extent plaintiff is now suggesting that the Court should compel the State or the State Police to adopt the particular laws or regulations described in plaintiff's response brief (*e.g.*, Dkt. 51 at 7, 9–13), plaintiff is inviting another potentially complicated Eleventh Amendment problem, which the Court can and should avoid by declaring the current complaint moot.

Although the *Ex parte Young* exception to state sovereign immunity generally allows federal courts to enter injunctive relief to prevent violations of federal law, it generally does not extend to allowing courts to direct state officials how to perform their discretionary functions. *Ex*

*parte Young,* 209 U.S. 123, 158 (1908) ("There is no doubt that the court cannot control the exercise of the discretion of an officer."); *Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1028–29 (11th Cir. 1994) ("The *Ex parte Young* doctrine cannot compel discretionary acts."), *aff'd sub nom. Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996). In *Youakim v. Miller*, 562 F.2d 483, 491 (7th Cir. 1977), the Seventh Circuit reviewed a district court's order that required the Illinois Department of Children and Family Services to formulate regulations "consistent with the demands of federal statutory law." In approving the order, the court did not expressly discuss the "discretionary function" exception to *Ex parte Young*, but it did expressly note that the order did "not direct DCFS to adopt any particular rule or regulation" and did not require that any "specific items be included in a promulgated regulation." *Id*.

Plaintiff now appears to want the Court to flout this limitation by requiring the State Police to pass specific additional restrictions to (a) prevent the possession of guns by persons who have not been screened and do not have a FOID card; (b) prevent guns from being sold unlawfully at federally licensed gun shops and on the secondary market; and (c) prevent guns from being lost or stolen from gun dealers or private citizens, including by imposing a "NO BUY" list for any FOID card holder who purchased a gun that is later found in a crime but who did not report the gun lost or stolen or properly transferred. (Dkt. 51 at 7, 10.)

These proposals may very well go beyond the State Police's authority under existing "applicable law." (*See* Complaint, Dkt. 1 at 26, 27, and 29, clause B.) And even if the State Police has discretion under existing law to enact some of plaintiff's preferred regulations, other proposed restrictions may require the State to pass new legislation, which a federal court cannot order a State to do. *See New Orleans Water Works Co. v. City of New Orleans*, 164 U.S. 471, 480–82 (1896) (holding that a court may declare legislation, including a municipal ordinance,

9

invalid after it is passed, but may not enjoin the passage of legislation); *see also Am. Council of Blind v. Paulson*, 463 F. Supp. 2d 51, 62 (D.D.C. 2006) (holding that court "has neither the expertise, nor, I believe, the *power*, to choose among the feasible alternatives" for achieving ADA compliance) (emphasis added), *aff'd and remanded*, 525 F.3d 1256 (D.C. Cir. 2008). However laudable plaintiff's ideas for gun reform may be, selecting the best approach among many different options is the job for the ongoing state legislative and regulatory process, not a federal court order.

### C. Questions about the Final Form and Timing of the Proposed Regulations and the Constitutionality of the License Certification Act are not Ripe.

Plaintiff also argues the case is not moot because the proposed regulations are currently subject to review by the Joint Committee on Administrative Rules (JCAR), and therefore might change (Dkt. 51 at 2, 14), and because a group of gun dealers in the *BFF Firearms* case has filed a constitutional challenge to the License Certification Act in Illinois state court that has not yet been resolved (*id*. at 3, 14).

*First*, as a practical matter, the need to implement regulations through the JCAR process (and the need for any new law to pass constitutional muster) would exist even if this Court were to enter the requested relief by ordering the State Police to pass some form of additional regulations under applicable law. (*See* Complaint, Dkt. 1 at 26, 27, and 29, clause B.)

*Second*, if the currently proposed regulations are materially changed, or if the License Certification Act is declared unconstitutional, the particular issues for this Court to address could change again significantly, which weighs against exercising jurisdiction now.

*Third*, plaintiff's concern about the final form and timing of the pending regulations, as well as the potential outcome of the constitutional challenge pending in Sangamon County, suggests the case may not even be ripe for judicial review. The basic rationale of ripeness is to

"prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967). Applying this rule in *Conlon v. Sebelius*, 923 F. Supp. 2d 1126, 1132 (N.D. Ill. 2013), the court determined that a challenge to an interim administrative rule was not ripe because "it is possible that the forthcoming amendments [to the administrative rules] will eliminate the need for judicial review or, at the very least, impact the scope of [the plaintiffs'] claims." Although plaintiff here is not challenging how the proposed regulations under the License Certification Act will apply to D.P., a dispute as to whether the regulations are sufficient to address plaintiff's ADA claims should be deferred at least until the regulations are "formalized and [their] effects felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148–49. Likewise, although defendants fully expect the License Certification Act to survive the constitutional challenge pending in Sangamon County, given the Act's substantial effect on the relief requested in this case, further proceedings also should be deferred at least until resolution of defendants' pending motion to dismiss the *BFF Firearms* complaint.

### D.  Status of Appeal.

Finally, with respect to the appeal of this Court's order, defendants filed a direct appeal of the Court's Eleventh Amendment ruling within the 30-day timeframe (Dkt. 45) to avoid any question of waiver, and on the same day filed their § 1292(b) motion (Dkt. 46) (now denied, Dkt. 53), to ensure the request was made within a "reasonable time." *Ahrenholz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). Defendants noted in their § 1292(b) motion that a dismissal on mootness grounds could obviate the need for an interlocutory appeal (Dkt. 46 ¶ 24),

which this Court also recognized (Dkt. 53 at 3–4). If the case is dismissed as moot, defendants would dismiss their pending direct appeal.

## Conclusion

For these reasons, and those discussed more fully in Defendants' Motion for Reconsideration and to Dismiss this Action as Moot (Dkt. 39), defendants request the Court to dismiss this case as moot.

November 8, 2019

Respectfully submitted,

Defendants THE STATE OF ILLINOIS; THE ILLINOIS STATE POLICE; J. B. PRITZKER, in his official capacity as Illinois Governor; and BRENDAN KELLY, in his official capacity as Acting Director of the Illinois State Police

By: KWAME RAOUL,
   Illinois Attorney General

/s/ *R. Douglas Rees*

Michael T. Dierkes
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel. 312-814-3672
*mdierkes@atg.state.il.us*

Deputy Attorney General, Civil Litigation
Office of the Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel. 312-814-3498
*drees@atg.state.il.us*