UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIA POWELL, as guardian *ad litem* and on behalf of her son D.P. et al., | )<br>)<br>) |
| Plaintiffs, | ) No. 18 CV 6675<br>) Judge Joan B. Gottschall<br>) |
| vs. | )<br>) |
| The State of Illinois et al., | )<br>) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW AND FACT IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(2)**

As set forth in plaintiff's motion, Demetria Powell is the guardian of her son D.P. and seeks to represent the proposed class set out in paragraph 7 of the complaint: namely, African American children under age 18 and living in Chicago who have become disabled from exposure to gun violence or who risk becoming disabled. Plaintiff seeks relief under Counts I and II arising under the Americans with Disability Act and Count III arising under the Illinois Civil Rights Act. Because plaintiff seeks only declaratory and injunctive relief as to all three counts, and because the relief sought against the State defendants is not individual in nature but uniform with respect to all the children in the class, plaintiff respectfully seeks certification of this class pursuant to Rule 23(b)(2), F.R.Civ. P. As set forth below, the named plaintiff has shown her commitment—indeed, performed a public service—in bringing this action not just on behalf of her own child but other African American children for whom this case raises life and death issues; and she has further demonstrated her capacity as class representative by retaining not just one but two law firms experienced in class actions.

**Legal Standard**

Under the Federal Rules of Civil Procedure, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). "A class action may be maintained if Rule 23(a) is satisfied and if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P.23(b)(2).

## Plaintiffs satisfy the requirements of Rule 23(a)

This proposed class action satisfies all four criteria enumerated under Fed.R.Civ.P.23(a). The proposed class is sufficiently numerous because it would include all African American children under age 18 who have become disabled or are likely to become disabled because of exposure to gun violence. Thousands fall into this definition. The term "disability" is defined in the Americans with Disabilities Act as follows: "a physical or mental impairment that substantially limited one or more major life activities of such individual…" 42 U.S.C. 12102(1)(A). The term "major life activity" includes cognitive and emotional skills to obtain the full benefits of an education but also to have a normal life that other children have. In this respect, the term "major life activity" includes but is not limited to "sleeping… speaking, breathing, learning, reading, concentrating, thinking, communicating and working." Limitations in these activities from exposure to gun violence already exist—and are continually aggravated by new gun violence every day. They arise from the failure of the State defendants to enforce or have meaningful regulations for a particular program, the Firearm Owners Identification Card

program (FOID). For that reason, the failure of State defendants to change or modify or implement the FOID program—especially to use the specific measures set out in paragraph 28 of the complaint—denies the plaintiff and the proposed class the benefits they were intended to have under that program or activity (Count II). In addition, however, as plaintiff contends in Count I, the failure to modify that program as set out in paragraph 28 denies her child the possibility of realizing the full benefits of another State program or activity, namely, public education. The failure to modify the FOID program becomes a gratuitous barrier to public education—in that children who are left exposed to high levels of violence because of this failure in one program suffer real cognitive loss impeding from the benefits of another program, namely, public education, which is also a State program because it is funded by the State.

Plaintiff Demetria Powell submits that the well documented numbers of shootings and murders and the academic and scholarly literature demonstrates the special impact on young children from exposure to this violence—and the large number of African American children who are the victims of this scourge of violence.

The proposed class also meets the other three requirements of Rule 23(a). All class members share or raise common questions of fact and law with respect to the relief sought from the State defendants. The claims of Demetria Powell in Counts I, II and III are typical of the class as a whole. As stated above, she will adequately represent the interests of the class through the experience class action counsel whom she has retained in this case.

Plaintiff takes up each factor under Rule 23(a) in more detail. First, there is numerosity. While there "is no hard and fast rule as to when the size of a class renders joinder impracticable, [plaintiffs'] allegation that the classes include hundreds of persons, an allegation that is uncontroverted by the defendants, is enough to satisfy this requirement." *Johnson v. Brelje*, 482

F.Supp. 121, 123 (N.D.Ill 1979). Significantly smaller classes, as small as forty, have been found to satisfy numerosity. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). In this case, as set out in the complaint, the proposed class runs into the tens of thousands. Since 2015, over 2,231 people have been killed in Chicago, 90 percent of them by guns, and 7,971 persons have been shot. Complaint, Dkt 1, 4. Guns are being fired every day like a permanent background noise in the neighborhoods where these children live. Roughly 80 percent of the victims of these crimes are African-American, and 20 percent involve teenagers or younger children. *Id.*

A recent study by the Erikson Institute determined that 54,529 Chicago children under 5 years of age, lived in a community that experienced over 10 homicides in 2018, and 12,248 such children lived in a community that experienced over 30 homicides in 2018. Erikson Institute, "New homicide data analysis reveals most of Chicago's young children live in communities with high violence," July 8, 2019 (available at https://www.erikson.edu/wp-content/uploads/2019/07/7.22.19-Homicide-press-release.pdf). With respect to the number of children who are disabled within the meaning of the ADA, trauma related disabilities are a frequent or even invariable result when children in high crime neighborhoods in this city are exposed to repeated violence, at a high level that is due in part to the State's failure to use its authority under the FOID program.

This Court is familiar with these allegations which are recited in part in this Court's memorandum opinion of September 30, 2019 denying the motion of the State defendants to dismiss this action. No one seriously doubts the exposure of tens of thousands of African American children in Chicago to high levels of violence, and in any case the facts describing the

scope of the violence as set forth in part above are matters of public record, and not likely to be disputed by the State defendants.

The complaint also cites the many studies that show children directly or even indirectly exposed to violence, including gun violence, develop acute or post traumatic stress disorder. Demetria Powell's child has been diagnosed with PTSD. Paragraphs 32 through 36 of the complaint state the link between gun violence and cognitive related disability. Paragraphs 34, 35 and 36 state:

> 34. In Chicago, there have been many studies linking exposure to gun violence directly to deficits in academic performance by African-American children. In 2010, Dr. Patrick Sharkey used Chicago homicide data and cognitive assessment data on hundreds of children aged 5 to 17 from the Project on Human Development in Chicago Neighborhoods to assess the effect of a single homicide incident located near a student's home on that student's vocabulary and reading skills, using sub-tests of the Wechsler Intelligence Scale for Children and the Wide Range Achievement Test. For African-American children, a homicide located on their block within one week of cognitive assessment testing showed (on average) a reduction in performance of 0.5 standard deviations relative to other African-American children living in the same neighborhood who had not been exposed to a homicide. The children lost .65 standard deviations in their reading scores when tested within four days of a homicide occurring on their block (whether the child saw the homicide or not). A separate study of Chicago data referenced by Dr. Sharkey, and used for comparison, found that a homicide within a child's census tract occurring within four days of cognitive assessment found loss of a full 1.0 in standard deviation on a letter-word test, as compared with other children from the same neighborhood. Sharkey, "The Acute Effect of Local Homicides on Children's Cognitive Performance", Proceedings of the National Academy of Sciences, Vol. 107(26): 11733-38 (2010). Dr. Sharkey has demonstrated the same causal effect between exposure to gun violence and deficits in standardized test scores administered in the schools of New York City (using time and location), see Sharkey, et al., "High Stakes in the Classroom, High Stakes on the Street: The Effects of Community Violence on Students' Standardized Test Performance", Sociological Science, Vol. 1(3): 199-220 (2014); see also, Lacoe, et al., "Too Scared to Learn? The Academic Consequences of Feeling Unsafe in the Classroom", Urban Education, https://doi.org/10.1177/0042085916674059 (October, 2016), (tracking 340,000 New York city public school students over successive academic

5

years to find that in years when students reported feeling unsafe, their standardized test scores declined significantly).

35. Dr. Dana Charles McCoy and colleagues studied 602 Chicago children from high-crime Chicago neighborhoods in 2004 and 2005, and then followed up with them in 2010 and 2011 to study the relationship between their exposure to violent crime (taking place within a half mile of their home (which they may or may not have witnessed) and within seven days of testing) and their performance on a neuropsychological assessment which measured their cognitive performance and selective attention. These researchers found a direct relationship between exposure to violence and a deficit in neuropsychological functioning, as a result of the children's exposure to gun violence. McCoy, et al., "Children's Cognitive Performance and Selective Attention Following Recent Community Violence", Journal of Health and Social Behavior, Vol. 56(1): 19-36 (2015).

36. Gun violence affects everyone in school, even those not exposed. This was demonstrated by Dr. Julia Burdick-Will, who took five cohorts of Chicago Public School students (from 2002 to 2010) and examined the relationship between performance on standardized tests and the level of violence experienced in the school (as determined by Chicago police locational crime data and survey tools). Many students did not experience gun violence, but the whole school felt less safe. One standard deviation increase in classmates' exposure to neighborhood violence was related to a 0.3 standard deviation decline in both reading and math scores—which represents 10% of normal student annual growth. Burdick-Will, "Neighborhood Violence, Peer Effects, and Academic Achievement in Chicago", Sociology of Education, Vol. 91(3): 205-223 (2018).

Based on these studies, of which the Court can take judicial notice, the Court can find with confidence that in this city of Chicago there exists a sufficiently numerous class of African American children who suffer serious trauma from exposure to gun violence.

The proposed class of African American children share in common the specific issues of fact and law set out in this complaint—that is, exposure to violence, trauma, limitation on major life activities, from the failure of the State defendants to modify the FOID program in the manner set out in paragraph 28. A "common nucleus of operative fact is usually enough" to satisfy commonality. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Here, all class members share,

at center, the harrowing experience of living under the threat of gun violence posed by lax gun regulations, resulting from the failure of the State defendants to take reasonable action to establish such regulation. Courts readily find that where a plaintiff seek certification of a class of seeking injunctive relief pursuant to Rule 23(b)(2), there is inevitably a common question of law. *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001); *see also* 7A Wright & Miller, § 1763, at 201 (1986) ("Injunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)").

      This class satisfies the typicality requirement, which is closely related to commonality. *See Keele*, 149 F.3d at 594. A claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *Rosario v. Livaditis*, 963. F.2d 1013, 1018 (7th Cir. 1992). As stated above, the claim of Demetria Powell rests on the same legal premise as the claims of all other putative class members, as plaintiffs are seeking injunctive relief to enforce a duty owned to all class members. Her child D.P. is eight years old, lives in Austin with his mother and grandmother and has struggled with nightmares and sleeplessness since the killing of his father. He struggles in school, where his behavior has deteriorated. He has difficulties sleeping, speaking, learning, reading, concentrating, thinking and communicating in school. See paragraph 43. This is exactly the kind of injury that other children now suffer and the suit seeks to redress. While D.P. has suffered the harm in question, and the class covers both those harmed and those at risk of harm, plaintiff's claim is still typical. As with commonality, "typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *DG v. Devaughn*, 594 F.3d 1188, 1201 (10th. Cir 2010); *see also Connor B v. Patrick*, 272 FRD 288, 295 (D. Mass. 2011).

This class satisfies the adequacy requirement. Plaintiff Powell, on behalf of her son D.P., has already demonstrated her commitment and even courage in bringing this case against the State defendants. She is pursuing this case not only for the sake of her child, but for the sake of many other African American children.

In service of this commitment, she has retained counsel that can adequately represent the class.

The firm of Despres, Schwartz, and Geoghegan Ltd. ("DSG") is experienced in class litigation. In another case, a court in this district stated of the firm that "it had no doubt that plaintiffs' attorneys will be able to litigate the case fairly and adequately on behalf of the proposed class." *Healy v. IBEW, Local Union No. 134*, 296 F.R.D. 587, 593 (N.D.Ill. 2013). In addition to *Healy*, in which the firm negotiated a settlement including reinstatement and $1.8 million in back pay, the firm has served as class counsel in numerous other class actions. The firm recovered $19 million in total for plaintiffs and other employees in the related cases *Lumpkin, et al. v. International Harvester Co.*, No. 81 C 6674 (N.D. Ill.) and *Lumpkin, et al. v. Envirodyne Industries, Ltd.*, 933 F.2d 449 (7th Cir. 1991), which were concerned in part with a breach of fiduciary duty by an employer under ERISA. In *Lumpkin et al. v. Envirodyne,* the firm of JJSGD—co counsel here—also served as co counsel. In *Baker, et al. v. Kingsley*, 387 F.3d 649 (7th Cir. 2004), the firm achieved a settlement of $5 million to the class. The firm has also obtained large settlements for employee class members in *Phason, et al. v. Meridian Rail Corp.*, 479 F.3d 527 (7th Cir. 2007), *Hughes v. Merit Lincoln Park LLC*, No. 08-cv-6191 (N.D. Ill.), and *Local 1239, Int'l Brotherhood of Boilermakers v. Allsteel, Inc.*, 955 F. Supp. 78 (N.D. Ill. 1996). In *Cristiani, et al. v. Advocate Health Care Network*, the firm obtained a settlement for uninsured class members who should have been entitled to charity care. For a more complete listing of the firm's work, see https://dsgchicago.com/classactions/.

The firm of Johnson Jones Snelling Gilbert and Davis, P.C. (JJSGD) also is well familiar with and skilled in class action litigation. As just noted the firm was co counsel with the DSG firm in *Lumpkin v. Envirodyne Industries Inc.* 922 F.2d 449 (7th Cir. 1991). JJSGD was also class counsel in other cases, including *DuPuy v McEwen*, 648 F.Supp.2d 1007 (ND Ill 2009) and *Baker v. Runyon,* 1997 U.S. Dist. LEXIS 6107 9(ND Ill 1997). Mr. Johnson, from the JJSGD law firm, has served as class counsel in various class actions, including *Quern v Jordan, 440 U.S. 332, 47 USLW 4241 (1979); Benson v. Blaser* 80 C 2346; and various public welfare cases, e.g. *Southeast Concerned Welfare Recipients Organization v. Miller,* No 82 C 6454 (ND Ill)(enjoying Department of Public Aid for inadequate notice of termination of benefits); and *Carey v. Quern,* 588 F2d 230 (7th Cir 1978)(requiring Public Aid to provide clothing benefits). Mr. Johnson has also served as defense counsel in connection with large class litigation, including the longstanding *Gautreaux v CHA, 66 C 1459 and 1460* litigation in the Northern District. He has immense litigation experience generally in addition to these selected cases involving class actions. See, http://www.jjsgd.com/thomas-johnson-resume, for a full listing of his experience.

**Plaintiffs satisfy the requirements of Rule 23(b)(2)**

This class for declaratory and injunctive relief is especially well suited to certification under Rule 23(b)(2), because plaintiff is challenging a common failure of the State defendants to use their regulatory authority as set out in paragraph 28. No individual relief is sought, and no relief that requires in any way the individual participation of a class member, every one of whom is equally denied a reasonable accommodation for participation in a State program and every one of who suffers a racial stigma from the failure of the State defendants to act "A class action may be maintained if Rule 23(a) is satisfied and if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P.23(b)(2).

Defendants' refusal to act apply generally to the class, which includes those who have already been harmed and those who are at risk of being harmed. "All the members of the class need not be aggrieved by or desire to challenge the defendant[s'] conduct in order for one or more of them to seek relief under rule 23(b)(2)," just that defendants' conduct applied to the entire class. *Edmondson v. Simon*, 86 F.R.D. 375, 383 (N.D.Ill 1980); *see also* 5 *Moore's Federal Practice, Civil* §23.43(2)(a). Even where members of the proposed class have not yet been harmed by the treatment common to the class, that common treatment is sufficient. "[A] class will often include persons who have not been injured by the defendant's conduct…[s]uch a possibility or indeed inevitability does not preclude class certification." *Kohen v. Pacific Investment Management Co. & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009); *see also DG*, 594 F.3d at 1201 (10th. Cir 2010) ("That a class possibly or even likely includes persons unharmed by a defendant's conduct should not preclude certification."). Here, the named plaintiff, who has already suffered as a result of Defendants' absence of action, represent a class that has been either put at risk of harm or already harmed by Defendants' failure to act with respect to regulation that would protect the class generally. This satisfies the requirement of general application.

This action also satisfies the requirement that the remedy being sought is final declaratory or injunctive relief appropriate to the whole class. Here, Plaintiffs do not seek monetary damages, only classwide declaratory judgment with respect to whether Defendants' failure to reasonably accommodate them violated the law and a final injunction ordering Defendants to enact such reasonable accommodations that would apply to the class as a whole. This is precisely the kind of case that Rule 23(b)(2) was written for, "to assist litigants seeking institutional change in the form of injunctive relief." *Nicholson*, 205 F.R.D. at 99.

10

## Conclusion

For the above reasons, plaintiff respectfully request that this Court certify this action as a class action on behalf of all African-American children under the age of eighteen who live or lived in the City of Chicago and are 1) disabled under the terms of the ADA on account of their exposure to gun violence or 2) at risk of becoming disabled by their exposure to gun violence.

                                                Respectfully submitted,

Dated: November 21, 2019                                By: /s/ Thomas H. Geoghegan
                                                                                 One of Plaintiff's Attorneys

Thomas H. Geoghegan
Michael P. Persoon
Will Bloom
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511

Thomas E. Johnson
Johnson, Jones, Snelling, Gilbert & Davis. P.C.
36 S. Wabash Ave., Suite 1310
Chicago, IL 60603
(312) 578-8100
Attorneys for the Plaintiff