IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMETRIA POWELL, as guardian *ad litem* and on behalf of her son D.P. as well as on behalf of a class of similarly situated children, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No.18-cv-6675 |
| v. | ) ) ) | |
| THE STATE OF ILLINOIS; THE ILLINOIS DEPARTMENT OF STATE POLICE; J.B. PRITZKER, Governor of the State of Illinois; and BRENDAN KELLY, Director of the Illinois Department of State Police, | ) ) ) ) ) ) ) ) | Hon. Judge Joan B. Gottschall |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

As set out expressly in Rule 15(a)(2), F.R.Civ. P. leave to amend is to be freely given when the interests of justice so require. While there is no objection from the State defendants, plaintiff has three important reasons for filling this first amended complaint (FAC). It should be noted that while this case was filed on October 3, 2018, no discovery has occurred to date. In the last year, the parties have engaged in a lengthy mediation – which has not been successful to date. While both parties continue to seek settlement, it is necessary for this case to go forward

As noted in the motion, there are three reasons filing the FAC:

    **1.**    **Joinder of additional plaintiff, D.W.**

First, plaintiff wishes to add a second plaintiff: D.W., an eleven-year-old boy, and his mother Shanice Mathews as guardian *ad litem* on his behalf. Like Demetria Powell's son, D.W.

1

has suffered disabling emotional trauma from exposure to gun violence. On October 18, 2018, D.W.'s cousin – to whom D.W. was very close – was murdered just blocks from where D.W. lives. Following the murder, D.W. began to experience wild emotional swings and angry outbursts; and he often suffered from uncontrollable shaking. He has had problems learning, and he has manifested symptoms of attention deficit hyperactivity disorder (ADHD). D.W.is constantly exposed to gun violence in the Garfield Park neighborhood where he lives. Within four blocks of his home, there have recently been ten shootings where someone was hurt or killed. D.W. and his mother regularly hear gun shots at night, which increases the trauma and related handicaps from which he already suffers.

As set out in the new complaint, D.W. is an individual with a disability within the meaning of 29 U.S.C. § 705(20)(B) of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Like plaintiff D.P., he alleges discrimination by defendants for failure to make a reasonable accommodation to his needs as a disabled person in the administration of their civil programs and activities under the various State laws regulating dealers and gun owners. As set out in the FAC, the defendants have failed to make a reasonable accommodation to the plaintiff class by using their authority under the Firearm Dealer License Certification Act, 430 ILCS 68/5-1 *et seq*. to stop straw purchases – a failure which has exposed the plaintiff class to an extremely high level of gun violence. Defendants have also refused to use their existing authority under the Firearm Owner Identification Card Act (FOID Act) to recover guns from tens of thousands of persons whose FOID cards have been revoked. By such regulatory failures, D.W., a Black child, has also been subject to discrimination because of his race, in violation of Section 5(a)(2) of the Illinois Civil Rights Act of 2003. As set out in the FAC, defendants have used "criteria" or "methods of administration" that favor white gun dealers and owners and have

subjected Black children to violence from a flood of illegal guns and that would not be tolerated if the plaintiff children were White.

### 2. Addition of Section 504 claim in place of ADA Title II

Second, as the principal claim for disability-related discrimination, the FAC substitutes Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794, in place of the claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12132.  Unlike Title II of the ADA, Section 504 does not raise even an arguable issue under the Eleventh Amendment.  An interlocutory appeal limited to the Eleventh Amendment issue is pending in the Seventh Circuit in this case under the caption number 19-3144; no briefing has occurred because the parties have been participating in mediation of the entire case, under the auspices of the Seventh Circuit's mediation program.   If this Court grants leave to file the FAC, that interlocutory appeal in this case becomes moot, as there is no longer an ADA claim in the case.   Plaintiff of course is very confident in defending this Court's decision (DK )(September 30, 2019) that the ADA as applied to the States is constitutional.   The interlocutory appeal is without merit.   Nonetheless, the substitution of Section 504 simplifies the case by mooting the appeal.   Section 504 which applies to federally assisted programs provides a near identical cause of action as Title II of the ADA, 42 U.S.C. § 12132; and because the State has waived sovereignty by accepting federal assistance, there is no Eleventh Amendment defense of any kind, especially to a claim seeking only injunctive relief.  *See Jaros v. IDOC*  684 F.3d 667 (7th Cir. 2012); *Stanley v. Litscher,* 213 F.3d 340, 344 (7th Cir. 2000).

### 3. Failure to Enforce Firearm Dealer License Certification Act

Since the filing of this action in October 3, 2018, the General Assembly has enacted an important new law - the Firearm Dealer License Certification Act, 430 ILCS 68/5-1 *et seq*., which took effect on January 18, 2019.  For the relief sought here, this law provides additional

legal authority – which defendants still fail or refuse to use. Under the Firearm Dealer License Certification Act, the defendant Illinois State Police trains dealers to follow responsible business practices that would stop or reduce straw purchases – a principal source for the illegal guns pouring into Chicago. The ISP also has authority to discipline dealers who show incompetence or incapacity to practice under this act which is intended to stop straw purchases.

Yet notwithstanding the very purpose of the Dealer License Certification Act, the ISP refuses to require dealers to follow responsible business practices, or document that the dealers are doing so, or refuse what are straw sales. All the ISP will do is to tell them in a "training" video that they should not do it. Furthermore, the "training" requires no more than watching a video.

The practices which dealers should follow are set out in the publication, "Don't Lie for the Other Guy," jointly produced by the AFT and the gun industry's trade associations, the National Shooting Sports Foundation. The Brady Center to Prevent Gun Violence – which is counsel in this case – has also developed a checklist for carrying out such protocols, as well as a "Gun Dealer Code of Conduct." These are the practices which the State defendants refuse to require dealers to follow, or to document they are following them, or to discipline them if they do not.

Nor has ISP used other authority to stop straw purchasing. The ISP has yet to issue even a single report detailing straw purchase patterns as required by state law – namely, the Gun Trafficking Information Act 5 ILCS 830/10-5. The ISP not only fails to use its full authority but disregards even direct statutory obligations to identify straw purchasing patterns.

Every gun used by a minor or illegal user or felon was initially purchased "legitimately" through a dealer – and many of them by Illinois dealers now regulated by ISP. While the Dealer

License Certification Act was intended to address this problem, no meaningful enforcement has occurred.

Recently, the General Assembly passed House Bill 562 – the so called "Fix the FOID Act" – which the Governor is likely to sign. House Bill 562 may result in a fund to allow local law enforcement authorities, instead of ISP, to recover guns held by persons whose FOID cards have been revoked. But given the ISP's lack of enthusiasm for stopping illegal gun trafficking, or enforcing the FOID Act up to now, it is unclear when or even if a meaningful program will be place. The ISP already has authority to collect guns from illegal users – it just refuses to do so.

Illinois has progressive gun laws – but unfortunately, ISP seeks to do the bare minimum, or even less. Most of the public is unaware how little is being done. As a result, the proposed class of Black children are exposed to violence on a scale unknown in any other major U.S. city and for which the State defendants are at least partly responsible.

## Conclusion

For all the above reasons, plaintiff respectfully seeks leave to file the First Amended Complaint attached as Exhibit A.

Respectfully submitted,

*/s/ Thomas H. Geoghegan*
Thomas H. Geoghegan
Michael P. Persoon
Willem W. Bloom
**Despres Schwartz & Geoghegan Ltd.**
77 W Washington St., Ste. 711
Chicago, IL 60602
admin@dsgchicago.com

Jonathan Lowy
Christa Nicols
Kelly Sampson
**Brady Center to Prevent Gun Violence**
840 First Street, Suite 400
Washington D.C. 20002

5

        jlowy@bradyunited.org
        cnicols@bradyunited.org
        ksampson@bradyunited.org


        Attorneys for the Plaintiff