**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DEMETRIA POWELL, as guardian *ad litem* and on behalf of her son D.P. et al., )
)
)
Plaintiffs, )
)          Case No. 18-cv-6675
v. )
)          The Honorable
The State of Illinois et al., )          Judge Joan B. Gottschall
)
Defendants. )

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Dated: January 7, 2022

Thomas H. Geoghegan
Michael P. Persoon
Willem Bloom
**Despres, Schwartz & Geoghegan, Ltd.**
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511
admin@dsgchicago.com

Jonathan Lowy
Christa Nicols
Kelly Sampson
**Brady Center for Gun Violence**
840 First Street, Suite 400
Washington D.C. 20002
jlowy@bradyunited.org
cnicols@bradyunited.org
ksampson@bradyunited.org

Attorneys for the Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND TO THE SECOND AMENDED COMPLAINT ........................... 2

I.     PLAINTIFFS HAVE STANDING TO BRING THESE CLAIMS UNDER SECTION 504 OF THE REHABILITATION ACT AND UNDER THE ILLINOIS CIVIL RIGHTS ACT.................................................................................................................. 5

II.    IN COUNT I, PLAINTIFFS HAVE STATED A CLAIM UNDER SECTION 504 OF THE REHABILITATION ACT ...................................................................... 9

     A.    In failing to reasonably carry out the Dealer Licensing Act and the FOID Act, the defendants have refused a reasonable accommodation to the needs of the plaintiff children, and the limited use of defendants' authority has had a severe and disparate impact on children with PTSD symptoms............................................... 10

     B.    Plaintiffs do not seek a "fundamental" change in any program or activity of defendants. ....................................................................................... 12

     C.    Plaintiffs sufficiently allege discrimination "solely" by virtue of being disabled. 14

     D.    Plaintiffs do not seek a takeover by this Court of defendant ISP's operations..... 14

     E.    The relevant program or activity under Section 504(b) is the program or activity of regulating under the Dealer Licensing Act, the Gun Trafficking Act, and the FOID Act. ....................................................................................... 14

III.    PLAINTIFFS HAVE ALSO STATED A CLAIM OF A RACIALLY DISPARATE IMPACT UNDER THE ILLINOIS CIVIL RIGHTS ACT, 740 ILCS 23/5(a)(2). .......... 15

CONCLUSION......................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                                       Page(s)

*A.H. by Holzmueller v. Ill. High Sch. Ass'n.,*
    881 F.3d 587, 592 (7th Cir. 2018) ........................................................2, 10, 11

*Alexander v. Choate,*
    469 U.S. 287 (1985) ...............................................................................13

*Amundsen ex Amundsen v. Wis. Dept. of Health Servs.,*
    721 F.3 871, 874 (7th Cir. 2013) ...............................................................11

*Brady Campaign to Prevent Gun Violence United with the Million Mom March v. Ashcroft,*
    339 F. Supp. 2d 68 (DDC 2004) ................................................................9

*Central Austin Neighborhood Association v. City of Chicago,*
    2013 Ill. App. (1st) 123041, 1 N.E., 3d 976 (Ill. App. Ct. 1st Dist. 2013............. 15, 16, 17

*Conners v. Wilkie,*
    984 F.3d 1255, 1260 (7th Cir 2021) ...........................................................11

*Davis v. Echo Valley Condo,*
    945 F.3d 483 (9th Cir.) ..........................................................................13

*Goldhammer v. Nagode,*
    621 F.3d 581 (7th Cir. 2010) .....................................................................9

*Good Shepherd Manor Found Inc. v. City of Momence,*
    323 F.3d 557 (7th Cir. 2003) ....................................................................11

*Haney v. Pritzker,*
    No. 20 C 3653, i2012 U.S. Dist. LEXIS 184301,
    at *38 (N.D. IL Sep. 27, 2021) ........................................................ 10, 12, 14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 560 (1992) ..........................................................................5

*Massachusetts v. EPA,*
    549 U.S. 497, 521-26 (2007) ...................................................................8, 9

*Powell et al. v. Illinois,*
    2019 U.S. Dist. LEXIS 168209 (N.D. Ill Sept 30, 2019) .........................................*passim*

*School Board v. Nassau County,*
    480 U.S. 273 (1987) ...............................................................................13

*Wis. Cmty. Servs v. City of Milwaukee,*
    465 F.3d 737, 753 (7th Cir.) ........................................................ 10, 11, 12, 14

**Statutes and Regulations**

29 U.S.C. § 794 ..............................................................................................*passim*

42 U.S.C. § 12102(1)(A)..................................................................................*passim*

Firearm Dealer License Certification Act, 430 ILCS
    65.......................................................................................................*passim*
    68/5-1 ......................................................................................................2
    68/5-30 ...............................................................................................3, 13
    68/5-60 .....................................................................................................3
    68/5-85 ...............................................................................................3, 13

Gun Trafficking Information Act, 5 ILCS 830/10-5 .....................................1, 4, 15, 16

Illinois Civil Rights Act of 2003, 740 ILCS 23/5 ................................................2, 15

**Other Authorities**

City of Chicago Office of Inspector General, *The Chicago Police Department's Use of
    Shotspotter Technology*, 2 (Aug. 24, 2021), https://igchicago.org/wp-
    content/uploads/2021/08/Chicago-Police-Departments-Use-of-ShotSpotter-
    Technology.pdf).....................................................................................6

Press Release, Governor Pritzker Signs FOID Modernization Bill (Aug. 2, 2021),
    https://www.illinois.gov/news/press-release.23654.html ...................................7

## INTRODUCTION

Illinois has excellent gun laws, but they are not enforced. Paragraphs 54 through 79 of the Second Amended Complaint ("Complaint") describe the specific failures of the defendants to carry out the Dealer Firearm Licensing Act, the Firearm Owner Identification Card Act, and the Gun Trafficking Information Act. They have chosen to certify gun dealers to operate within Illinois without also requiring those dealers to use responsible business practices to stop straw purchasing, which has led to a flood of crime guns into the neighborhoods where the plaintiff children live. The failure to use the full regulatory authority under the Firearm Dealer Licensing Act laws has a harsh and disparate impact on the plaintiffs and the plaintiff class of Black children. They suffer post-traumatic syndrome (PTSD), stemming from gun violence. The defendants could make a "reasonable accommodation" to these children by using the authority they have to carry out the gun laws to bring down gun trafficking and the level of violence—or indeed, just of the firing of illegal guns in the neighborhoods where these children live. The day-to-day gunfire and violence to which these children are exposed—both directly and indirectly—is causing long term neurological damage and other limitations on their ability to learn, read, and concentrate.

Plaintiffs will present expert testimony as to this long-term damage from continued exposure—both direct and indirect—to the violence happening on the blocks on which they live or just a few blocks away. Plaintiffs will also present expert testimony—and case studies—that the use of the full regulatory authority will bring down the level of violence: not eliminate it altogether but reduce its horrific current level.

This motion to dismiss is out of order, as it raises the same claims that defendants made originally and which this Court denied in its order and opinion of September 30, 2019. *Powell et*

*al. v. Illinois* 2019 U.S. Dist. LEXIS 168209 (N.D. Ill Sept 30, 2019). There is no change in this Second Amended Complaint, except that a cause of action under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, for the cause of action under the Americans with Disabilities Act. But the *same* analysis applies to the ADA and Section 504 Rehabilitation Act claims. See *A.H. by Holzmueller v. Ill. High Sch. Ass'n.,* 881 F.3d 587, 592 (7th Cir. 2018) (noting that courts construe and apply both statutes in a consistent manner because their relevant provisions and implementing regulations are "materially identical").

Except for that change, defendants motion raises arguments that this Court has rejected as to (1) standing, (2) failure to state a claim under ADA and now under Section 504, (3) the failure to allege a relevant program or activity to which the claims apply, and (4) the failure to state a claim under the Illinois Civil Rights Act, 740 ILCS 23/5. Nor does the motion even deal with the Court's reasoning.

While plaintiffs turn to these arguments—again—the best authority for rejecting them is this Court's own opinion.

**FACTUAL BACKGROUND TO THE SECOND AMENDED COMPLAINT**

This Court is well familiar with the original complaint, which is described in detail in this Court's Powell opinion. Apart from substituting the claim under Section 504, which is materially the same as the ADA, the Second Amended Complaint now before this Court is different in several respects. Since the filing of this action on October 3, 2018, the General Assembly enacted an important new law—the Firearm Dealer License Certification Act, 430 ILCS 68/5-1, et seq. ("Dealer Licensing Act"). This law did require dealers to meet certain standards of safe gun storage and inventory management. The Second Amended Complaint seeks no relief with respect to these

measures. Plaintiffs instead address the failure of the Illinois State Police ("ISP") to use the authority granted to ISP in the Dealer Licensing Act to stop Illinois dealers from engaging in straw purchases, which cause a flood of illegal guns into Chicago. The Second Amended Complaint sets out in detail how the ISP fails to use its authority under the Dealer Licensing Act to stop straw purchasing, the most important source of crime guns. See Second Amended Complaint, paragraphs 59-70. Under the Dealer Licensing Act, the ISP is supposed to train dealers to follow responsible business practices that "would lead a reasonable dealer to refuse sale of a firearm, including, but not limited to, indicators of a straw purchase." 430 ILCS 68/5-60. See also 430 ILCS 68/5-30. The ISP also can hold accountable dealers who show "incapacity or incompetency to practice under this Act." 430 ILCS 68/5-85. See Second Amended Complaint, paragraphs 60-61. Yet the ISP continues to refuse to exercise that authority. The ISP does not require dealers to follow responsible business practices. Nor does it even ask dealers to document that they are using any practices, and ISP take will take no action to discipline or hold them accountable. Nor is ISP interested in determining if crime guns are being traced back to these dealers. All the ISP is willing to do is to tell dealers in a "training video" that they should follow such practices. Furthermore, this "training" requires no more than the dealer verifying that in some way it saw or looked at the video.

The responsible business practices under the Act as robust as those set out in the publication, "Don't Lie for the Other Guy," jointly produced by the U.S. Bureau of Alcohol, Firearms, and Tobacco (AFT) and the National Shooting Sports Foundation. Second Amended Complaint, paragraph 63. The Brady Center for Gun Violence—which is counsel for plaintiffs in this case—has also developed a checklist of responsible business practices, which is attached as Exhibit B to the Second Amended Complaint.

3

Nor does the ISP seek to determine patterns of straw purchasing that might implicate dealers. The Second Amended Complaint also alleges a failure to comply with the Gun Trafficking Information Act, 5 ILCS 830/10-5. Second Amended Complaint, paragraphs 67-68, 71. The ISP has yet to issue even a single one of the reports required by law to detail patterns of illegal straw purchasing. *Id.* There is still no single or central gun trace data base. Second Amended Complaint, par. 68.

The General Assembly also enacted this past summer the so called "Fix the FOID Act," which needed "fixing" because the ISP had refused for years to carry it out. The Governor recently signed HB 562 (2021), which they describe as measures to "modernize and support the FOID system." Def. Memorandum of Law in Support of Motion to Dismiss, page 4. The Second Amended Complaint describes in detail ISP's failure to require revocations and require owners to complete a Firearm Owner Disposition Record. In 2018, the year the complaint was filed, 10,818 FOID cards of gun owners were revoked, but only 2,626 Firearm Disposition Records were received, and only 3,469 FOID cards were returned. Second Amended Complaint, paragraph 74. Nor has the ISP taken other measures to enforce the FOID Act, including a requirement of presenting FOID cards to dealers for purchase of ammunition.

This case is now over three years old, and there has been no meaningful enforcement of the gun laws of the State, including the Dealer Licensing Act, the FOID Act, and the Gun Trafficking Information Act.

Plaintiffs have also added a new plaintiff, D.W. an 11-year-old boy living in the Lawndale neighborhood of Chicago.

## I.     PLAINTIFFS HAVE STANDING TO BRING THESE CLAIMS UNDER SECTION 504 OF THE REHABILITATION ACT AND UNDER THE ILLINOIS CIVIL RIGHTS ACT.

This Court has previously ruled that plaintiffs have standing to bring materially identical claims under the ADA. *Powell v. State of Illinois, et al., supra,* \*14-23. As this Court has already found, plaintiffs meet all three elements for standing as set out in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

**Injury in fact.** The plaintiff children already have documented PTSD or PTSD symptoms, which is a form of trauma-induced mental impairment that limits their ability to sleep, speak, learn read, concentrate, think, communicate, and participate fully in school. See Complaint par. 84, 86, 98, 111. They are disabled within the meaning of Section 504(a) of the Rehabilitation Act, which incorporates the definition of disability set out in 42 U.S.C. § 12102(1)(A). As set out in the complaint, the past and continued exposure to gun violence "threatens to make [their] condition more severe." Complaint, par 99. Defendants could reduce that exposure by enforcing the Firearm Dealer Licensing Act, the FOID Act, and the Gun Trafficking Information Act in the manner described in the complaint. "Many studies have concluded that meaningful regulation of the primary and secondary gun markets, as set forth in the above paragraphs, will reduce the number of guns available in cities like Chicago, and thereby reduce the number of Black children killed or shot, and most importantly reduce the debilitating level of gun violence that has led to the disability of the plaintiff children and similarly situated children." Complaint, paragraph 80. Plaintiffs cite three such studies in paragraph 80 and anticipate presenting expert witnesses with respect to that allegation. Plaintiffs explain specifically in paragraphs 52, 55, 56, 57, 58, 61, 63, 64, 65, 68, 69, 72, 74, and in other paragraphs of the Complaint what defendants could do but have failed to do

5

to bring down the number of crime guns under current programs and activities to enforce Illinois civil laws. There are clear and specific steps set out in the complaint as to how the defendants can bring down the level of gun violence to which the children are exposed.

Defendants argue that the plaintiff children lack standing because they are not likely to "personally encounter" violence. It is unclear what defendants mean by "personally encounter." In any case, it is well known that PTSD arises from direct and indirect exposure to violence in the neighborhoods. It comes not just from being personally attacked but from living through the violent death of a parent, sibling, schoolmate, or neighbor as well as daily exposure to the sound of gunshots. The neighborhoods where the children live Austin, Lawndale, Englewood, New City and Green Crossing—are war zones. As stated in the complaint: "Fatalities are only one aspect of a broader public health emergency that plaintiffs and the other members of the class are experiencing… The plaintiff children hear gunfire most nights, while in their homes and walking the streets, and these numerous firings can recreate or lead the children to experience prior traumatic exposures to gun violence, from loss of a family member, parent, sister, brother, cousin or schoolmate." See paragraph 32. This Court can take judicial notice of 50,176 confirmed gunshots in Chicago from January 1, 2020, to May 31, 2021, according to a report by the Office of the Inspector General. This averages out to more than 97 confirmed gunshots per day. Office of Inspector General Report, *The Chicago Police Department's Use of Shotspotter Technology,* 2 (Aug. 24, 2021). There is a vast medical literature cited in the complaint—and to which this Court has referred—that describes the traumatizing of these children, over and over, from unending gun violence. See paragraphs 81-90 of the complaint. These studies like the 2015 study done by Dr. McCoy and his colleague focus specifically on children in Chicago. Complaint, paragraph 89.

6

"Many studies have found that children directly or indirectly exposed to community violence, most often gun violence, develop acute or post-traumatic stress disorder, including disrupted sleep, anxiety, and fear, as well as reduced awareness and difficulty with concentration, thinking and memory, all of which impair cognitive functioning. Exposure to gun violence floods a child's body with stress hormones (adrenaline and cortisol) which independently undermines cognitive performance by compromising the function of the prefrontal cortex of the brain (the area of the brain that is most rapidly developing in adolescence)."

Complaint, paragraph 86.

Significantly, even the defendants acknowledge in their last brief that the daily gun violence to which these children are exposed has created a "public health crisis." Def. Memorandum of Law in Support of Motion to Dismiss, page 5. Indeed, Governor Pritzker himself has declared such exposure to be a "public health crisis." Press Release, *Governor Pritzker Declares Gun Violence a Public Health Crisis, Pledges $250 Million Investment for Hardest Hit Communities* (Nov. 1, 2021). Defendants, of course, have no answer or ability to rebut the allegations individual harm, as set out paragraphs 86, 87, 88, 89, and 90 of the Complaint, and do not come close to rebutting the injury found by this Court in *Powell, supra.*

**Causation and redressability**. In denying causation and redressability, which are factual issues, defendants effectively argue the following: that nothing they do as the State or the Department of Illinois State Police (ISP) affects the level of violence to which the children are exposed. To be sure, there are many causes of the exceptionally high level of gun violence in Chicago—but two of the cause specific to Chicago are the failure of ISP to require Illinois firearm

dealers to act responsibly to stop straw purchasing of guns used in crimes or hold them accountable in any way; and the astonishing failure of ISP for years to have any serious program to retrieve guns of those whose FOID cards have been revoked. At paragraph 80 of the Complaint, plaintiffs cite the studies of experts that demonstrate how measures similar to those plaintiffs seek here can bring down the level of gun violence.

In denying causation, or redressability, defendants are effectively arguing that nothing they do—nothing—will have any effect on the level of gun violence in Chicago. Presumably, that is their explanation for not taking seriously their obligation to enforce the Dealer Licensing Act or the FOID Act. But contrary to what defendants effectively argue, they can make a difference, and the expert studies and testimony will more that sufficiently demonstrate how failure to enforce Illinois law is adding to the level of violence in Chicago. This Court noted that it is possible plaintiffs may not prove causation, or at least proximate cause, or redressability. But plaintiffs have alleged sufficient facts to demonstrate causation and redressability. *Powell, supra,* at 23. But, since this Court's opinion, the Illinois General Assembly has given even more authority to the defendants to curb straw purchasing. Under the Dealer Licensing Act, the ISP now has specific authority to train dealers in responsible business practices and hold them accountable if they do not. Here again, as with FOID, the ISP with the approval of the other defendants has simply chosen not to enforce a law, at least in a meaningful way, to bring down the crime guns that are gushing from these stores into the plaintiffs' neighborhoods. There is an even stronger case that defendants could make a difference by taking their obligations seriously. See Complaint 61-66, describing the failure of the ISP to enforce the new Dealer Licensing Act.

As this Court also noted, in citing *Massachusetts v. EPA,* 549 U.S. 497, 521-26 (2007), the plaintiffs do not have to show that the defendants could prevent *all* the violence. *Powell, supra,* at.

*25. In that case, the Court rejected a claim that a reduction of emissions in the United States is not enough to eliminate global warming altogether; and it found some good effect would be enough. Quoting *Massachusetts v. EPA,* this Court stated: "As with the problem of global warming, the plaintiffs here 'need not show that a favorable decision will relieve [their] *every* injury… [b]ecause of the enormity of the potential consequences associated with' gun violence." *Powell, supra,* at *28.

**Actual or imminent threat of injury.** This Court has also rejected the argument that there is no actual or imminent threat of injury, so long as the children continue to live in these neighborhoods. *Powell, supra,* at *21. This is hardly a case like *Goldhammer v. Nagode,* 621 F.3d 581 (7th Cir. 2010), cited by defendants. In *Goldhammer,* after a disorderly conduct incident, there was no likelihood that there would be criminal prosecution for such an act again. The plaintiff children are exposed to continuing gun violence—a certainty in these neighborhoods, not a unicorn event.

Nor is this case analogous to *Brady Campaign to Prevent Gun Violence United with the Million Mom March v. Ashcroft,* 339 F. Supp. 2d 68 (DDC 2004). In that case, the claim was that a particular member of "the March" might be the direct victim one day of an assault weapon. It is unreasonable to compare the chance of any specific citizen at random being attacked anywhere in the U.S. with a high-power assault weapon and the harm these children face year after year from continuing direct and indirect exposure to gun violence in neighborhoods like Austin.

## II.    IN COUNT I, PLAINTIFFS HAVE STATED A CLAIM UNDER SECTION 504 OF THE REHABILITATION ACT

A.    **In failing to reasonably carry out the Dealer Licensing Act and the FOID Act, the defendants have refused a reasonable accommodation to the needs of the plaintiff children, and the limited use of defendants' authority has had a severe and disparate impact on children with PTSD symptoms**

This Court already rejected the defendants' motion for failure to state a claim under the ADA. *See Powell, supra,* at *37. As this Circuit under both the ADA and Section 504, plaintiffs can state a claim by plausibly alleging any of the following: "[defendants] intentionally acted on the basis of the disability, (2) [defendants] refused to provide a reasonable modification, or (3) [defendants'] rule disproportionally impacts disabled people." *A.H by Holzmueller v. Ill High Sch. Ass'n* 881 F.3d 587, 592-23(7t Cir 2018); *Wis. Cmty. Servs v. City of Milwaukee,* 465 F.3d 737, 753 (7th Cir.); *Haney v. Pritzker,* No. 20 C 3653, i2012 U.S. Dist. LEXIS 184301, at *38 (N.D. IL Sep. 27, 2021). Using that standard, this Court has denied the defendants' previous motion to dismiss. *Powell, supra,* at *37. This Court has already found an allegation of a severe and disparate impact on plaintiff children from the manner in which defendants enforce or *fail* to enforce the FOID Act. The same holds true for the failure to hold dealers accountable for straw purchasing under the Dealer Licensing Act, which was passed after this action was originally filed.

In addition, in Count I, plaintiffs allege that the failure to modify these actions is an unlawful denial of a reasonable accommodation to the needs of thousands of Black children with PTSD symptoms. Count I states: "By failing to use the ISP's full regulatory power to restrict illegal gun racketeering under the Dealer Licensing Act and the FOID Act, and in violation of Section 504, the defendants have unlawfully refused a reasonable accommodation…" Paragraph 115 states that this refusal is inflicting a "special injury upon them by virtue of their disability…" Plaintiffs continue to allege a severe and disparate impact on the plaintiff class, because the conduct of

defendants will aggravate the PTSD symptoms and impose increasing limits on the ability of plaintiffs to engage in major life activities. See paragraphs 116-117.

Neither of these two bases of liability require proof of discriminatory intent or disparate treatment. See *Wis. Cmty. v. City of Milwaukee,* 465 F.3d 737, 753 (7th Cir. 2006) (*en banc*). This Circuit has repeatedly made that point. In *Good Shepherd Manor Found Inc. v. City of Momence,* 323 F.3d 557 (7th Cir. 2003), this Court stated that if there was a disparate impact, for example, then "the plaintiffs would be under no obligation to prove that the rule was motivated by an animus toward handicapped people." *Id.* at 562. This is also true of a failure to provide a reasonable accommodation. As pointed out by the *en banc* decision in *Wis. Cmty.,* the refusal of a reasonable accommodation by itself is an *independent* basis of liability, without regard to the alternative bases of liability, namely, (1) intent or (2) disparate impact. *Wis. Cmty. v. City of Milwaukee, supra,* 4654 F.3d at 757; *Amundsen ex Amundsen v. Wis. Dept. of Health Servs.,* 721 F.3 871, 874 (7th Cir. 2013). This Court itself in *Powell* denied the previous motion to dismiss under that standard. *See Powell, supra,* at *37.

Nor was any change in the law made by *Conners v. Wilkie,* 984 F.3d 1255, 1260 (7th Cir 2021), which stated in dictum that causation is "stricter" under Section 504 because of the use of the word "solely." The Court in *Conners* found a violation of Section 504, so the remark remains a dictum. *Conners* did not purport to change the law of this Circuit, as set out in the leading *en banc* decision of *Wis. Cmty. Servs., supra.* There are still the same three independent bases of liability under both Section 504 and the ADA. Refusal of a reasonable accommodation states a claim of a violation of Section 504 without regard to intent *or* disparate treatment. Likewise, a severe or disparate impact states a claim without regard to either intent *or* disparate treatment. *See Wis. Cmty. Servs. v. City of Milwaukee,* 465 F.3d at 753; *A.H. by Holzmueller v. Ill. High School*

11

*Ass'n,* 881 F.3d 587, 593 (7th Cir. 2018); *Haney v. Pritzker, supra* at 51-52; *Powell, supra,* at *37. The refusal of a reasonable accommodation at least indicates an intent to take a reasonable action in light of the known hazards to the plaintiff class. It may be noting that on the facts here plaintiffs have alleged a denial of something more than just a "reasonable" accommodation. There may be a difference between a reasonable accommodation that is "necessary" and one that is simply reasonable, or possible. *Wis. Cmty. Servs., supra,* at 747. In any event, plaintiffs have alleged something more—the denial of a *necessary* accommodation in view of the severe risks known to these children. This case involves much more than an accommodation such as a change in a narrow doorway or flight of stairs. Without suggesting these examples are less worthy, the plaintiffs are alleging an accommodation both reasonable and necessary—to carry out the laws on the books to avert catastrophic lifelong damage to thousands of children with PTSD symptoms. The long-term effect is neurological, and even physical, in affecting the development of the brain. The accommodation sought here is nothing more than carrying out the law to stop the furthers limitations the plaintiff children will have with respect to major life activities within the meaning of federal law—limitations in communicating, caring for themselves, learning, and other major life activities; and the consequences will affect them the rest of their lives. 42 U.S.C 12102(2)(A). Plaintiffs have amply demonstrated a claim of a denial of a reasonable accommodation and of a severe and disparate impact at this pleading stage.

**B.      Plaintiffs do not seek a "fundamental" change in any program or activity of defendants.**

Defendants do not say how the relief here would be a "fundamental change" in what they are supposed to do. They would be hard pressed to do so. Under the Dealer Licensing Act, for example, the Illinois State Police (ISP) is required to train dealers in responsible business practices,

including practices to deter straw purchasing and illegal gun trafficking. See, e.g., 430 ILCS 68/5-30. The ISP is also obligated to hold dealers accountable for conduct that shows incapacity or incompetency to practice under the Dealer Licensing Act. 430 ILCS 68/5-85(a)(2). It is hardly a "fundamental" change in a program or activity to do what defendants are supposed to do. Likewise, under FOID, the ISP is supposed to revoke FOID licenses and collect crime guns. Not even defendants deny they are supposed to do that much— and have failed to do so, despite promises to reform. Likewise, under the Illinois Gun Trafficking Act, the ISP is supposed to determine patterns of straw purchasing in order to stop it. But defendants have neglected this duty for years, failed to issue required reports, or create a comprehensive data base to track crime guns.

This is not even close to the cases where courts have found there really is a fundamental change. In *Alexander v. Choate,* 469 U.S. 287 (1985), the Court found a "fundamental" change when there was a claim for an entirely new cash medical benefit from the State of Tennessee. This was an altogether *new* activity, or *new* program, not the modification of an existing one. Just as far off point is the citation to *Davis v. Echo Valley Condo*, 945 F.3d 483 (9th Cir.). In that case a condominium owner wanted to "modify" the association's "pet friendly" policy—by banning pets altogether. The court held that throwing out the whole "pet friendly" policy was not a "reasonable accommodation." Also far afield is the Supreme Court's decision in *School Board v. Nassau County,* 480 U.S. 273 (1987). In that case, the Court said that a school board should accommodate a teacher who had tuberculosis, unless she was so contagious it would be impossible to have her near students. It is not "impossible" for ISP to use its existing regulatory authority which—as plaintiffs will show—will bring down or reduce the level of violence from illegal gun use. Every claim under the ADA or Section 504 seeks a change in a government activity or program; plaintiffs

13

seek only a modification of the existing programs under the Dealer Licensing Act, FOID, and the Gun Trafficking Act.

**C.  Plaintiffs sufficiently allege discrimination "solely" by virtue of being disabled.**

Plaintiffs have already discussed this argument above. As pointed out there, apart from the remark being dictum, there was no suggestion that there was any change in existing law, including the *en banc* decision in *Wis. Cmty. Servs. v. City of Milwaukee.* In the recent decision of *Haney v. Pritzker,* while the district court took note of the word "only" in Section 504, the District Court used three methods of establishing a violation. For now, plaintiffs have alleged enough at the pleading stage and are confident they can meet any required standard of proof at trial.

**D.  Plaintiffs do not seek a takeover by this Court of defendant ISP's operations.**

While plaintiffs reserve the right to seek appropriate enforcement of the Court's judgment, this is not a matter for the pleading stage. There is nothing in the complaint beyond a prayer for injunctive relief. If oversight is necessary, plaintiffs would prefer to establish oversight by an ombudsman within the government, or such other person agreeable to the parties. At any rate, this is not a matter to raise on a motion to dismiss, and appropriate relief can be considered at the remedial stage.

**E.  The relevant program or activity under Section 504(b) is the program or activity of regulating under the Dealer Licensing Act, the Gun Trafficking Act, and the FOID Act.**

This Court has already decided that the administration of the FOID Act is a relevant program or activity within the meaning of the ADA. *Powell, supra,* at *37. The defendants claim

that plaintiffs "appear to have dropped" with respect to the FOID program. Plaintiffs have done no such thing. The same allegations as to the FOID program are in the complaint. In addition, the complaint now alleges two other programs or activities—the regulation of dealers under the Dealer Licensing Act and the failure to determine and make known patters of illegal straw purchasing under the Gun Trafficking Act. This latter failure—intentionally or not—has the effect of protecting dealers whom defendants might be forced to sanction.

Just as this Court found the administration of the FOID Act to be a program or activity within the meaning of the ADA, so the administration of the Dealer Licensing Act is as well.

## III.    PLAINTIFFS HAVE ALSO STATED A CLAIM OF A RACIALLY DISPARATE IMPACT UNDER THE ILLINOIS CIVIL RIGHTS ACT, 740 ILCS 23/5(a)(2).

This Court has already denied the defendants' motion to dismiss the claim under the Illinois Civil Rights Act of 2003, which prohibits a unit of state, country, or local government to "utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." 740 ILCS 23/5(a)(2); *Powell, supra*, at *42-46. With great care, this Court explained that the chancery level decision in *Coalition for Safe Chicago v. Village of Riverdale* was not persuasive. The Court properly relied on *Central Austin Neighborhood Association v. City of Chicago,* 2013 Ill. App. (1st) 123041, 1 N.E., 3d 976 (Ill. App. Ct. 1st Dist. 2013), the leading appellate case, to uphold plaintiffs' claim of a racially disparate impact.

There is no reference to this decision by defendants. They have brought essentially the same motion, or perhaps exactly the same, as if the Court had not considered these arguments

already. Defendants fail even to mention *Central Austin,* which is unquestionably the leading and controlling appellate authority. In *Central Austin,* the appellate court upheld a claim alleging an unlawful racially disparate impact just from the failure of the City of Chicago to increase staffing to respond to 911 calls in high crime black neighborhoods. It certainly encompasses the facts alleged here, which set out a far greater dereliction of duty. Defendants make the same argument as before that there is not an "affirmative act" but omission. The Court rejected that distinction. As this Court stated: "Federal cases support the proposition that ICRA liability does not turn on whether the challenged state action is in the negative or positive; liability can arise from the failure to take some step provided that the failure has a disparate impact [citations omitted]" *Id.* at *46. Defendants do not respond to what the Court said, but just serve up what was previously rejected.

Defendants claim they do not know what "criteria or methods of administration" plaintiffs are challenging. Count II (ICRA), in paragraph 117 and 118 incorporates by reference the "acts set forth above," including those described at paragraphs 54 through 79, which describe in detail the specific ways that the defendants have failed to stop straw purchasing under the Dealer Licensing Act and the Gun Trafficking Information Act—and specific ways that defendants have failed to enforce or carry out their duties under the FOID Act. This is no oversight. In paragraph 120, Count II alleges that the defendants have chosen not to do so in order to placate White political groups and citizens who do not face and whose children do not face repeated exposure to gun violence from illegal trafficking in guns. As defendants well know, they do not hold dealers accountable for straw purchases, or attempt to discipline them, if they fail to follow responsible business practices: they have such authority but fail to use it. In doing so, they have subjected plaintiffs to discrimination because of race. Defendants use their authority under Illinois guns laws for Austin or Englewood as if they had the same level of violence as Lake Forest or Wilmette—

16

there is a one size fits all. Plaintiffs have adequately alleged a claim of a racially disparate impact under the leading case of *Central Austin Neighborhood,* which goes unmentioned here.

## CONCLUSION

For all the above reasons, this Court should deny defendants' motion to dismiss.

Respectfully submitted,

Dated: January 7, 2022

By: /s/ *Thomas Geoghegan*
One of Plaintiffs' Attorneys

Thomas H. Geoghegan
Michael P. Persoon
Willem Bloom
**Despres, Schwartz & Geoghegan, Ltd.**
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511
admin@dsgchicago.com

Jonathan Lowy
Christa Nicols
Kelly Sampson
**Brady Center for Gun Violence**
840 First Street, Suite 400
Washington D.C. 20002
jlowy@bradyunited.org
cnicols@bradyunited.org
ksampson@bradyunited.org

Attorneys for the Plaintiffs

17