IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANIECE MATHEWS, as guardian *ad litem* and on behalf of her son D.W. et al., ) ) ) Plaintiff, ) ) ) v. ) ) The State of Illinois et al., ) ) Defendants. ) | Case No. 18-cv-6675 The Honorable Judge Joan B. Gottschall |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(2)**

**INTRODUCTION**

Plaintiff Shaniece Mathews is the guardian *ad litem* on behalf of her son D.W. and seeks to represent the proposed class in this action, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.). Pursuant to the Court's direction, Plaintiff files this renewed motion for class certification, specifying objective parameters for class membership as required under *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015) and this Court's June 10, 2022 order (Dkt. 145). The proposed class under Count I, which alleges a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.§ 794, comprises all individuals under age 18 who are disabled because of a mental impairment within the meaning of 42 U.S.C. § 12102(1) and (2) (as a result of exposure to the exceptionally high community levels of illegal gun violence where the class members live: in the 15 Chicago communities with the highest gun-related crime rates). All class members suffer discrimination by reason of their disability because Defendant Illinois State Police (ISP) and other defendant state actors could significantly reduce this public health crisis,

1

which impacts these children most severely, if Defendants meaningfully enforced the Firearm Dealer License Certification Act, 430 ILCS § 68/5-1, *et seq.* ("Dealer License Act"), the Firearm Owner Identification Card Act, 430 ILCS § 65/1, *et seq.* (as amended in 2021 by Illinois Public 102-0237) ("FOID Act"), and the Illinois Gun Trafficking Information Act, 5 ILCS § 830/10-1, *et seq.*

In addition to the specific regulatory authority in these laws, 20 ILCS § 2605-15 grants the ISP broad authority to "promulgate rules and regulations necessary for the administration and enforcement of its powers and duties, wherever granted and imposed, pursuant to the Illinois Administrative Procedure Act." All class members suffer from the failure of the defendant state actors to make meaningful use of their regulatory authority under these laws to significantly reduce the gun violence to which these children are exposed as a reasonable accommodation to them.

The proposed class includes children who have lived in one or more of the 15 community areas with the highest level of gun-related crime. It includes children who have lived in these fifteen community areas at any time in the two years prior to the filing of this action *and* who currently live in one or more of these areas. The proposed class seeks only prospective injunctive relief against the defendant state actors—relief that is common to the class as a single resolution of its members' right to enforcement of these laws.

Plaintiff also seeks certification of a similar race-limited class under Count II, the Illinois Civil Rights Act of 2003 (ICRA), 740 ILCS § 23/5(a)(2), but limited by race. The proposed class's members all suffer race discrimination within the meaning of Section 5(a)(2) of ICRA as a result of Defendants' use of criteria for administration that have a racially disparate impact. The claim under ICRA in Count II challenges the same cursory enforcement of these gun laws as described in Count I. Claims under Section 5(a)(2) of ICRA require only proof of racially disparate impact,

not proof of discriminatory intent, and so are consistent with the particular claim of discrimination in Section 504, namely, the denial of a reasonable accommodation.

The parameters of the classes defined for Counts I and II meet the requirements of *Mullins, supra,* at 659. These parameters limit class membership by age, by disability (or race in Count II), by location, and by time. The class members include all individuals currently under age 18 who live in the 15 community areas listed below with the highest recorded levels of gun crime in the period covered by the Third Amended Complaint. Because the class members are located in these areas, they suffer mental impairment within the meaning of federal that "substantially limits one or more major life activities." See 42 U.S.C. 12102(1)(A). The activities that are substantially limited include "sleeping . . . speaking, breathing, learning, reading, concentrating, thinking, [and] communicating." *Id.* The medical research literature cited in paragraphs 87 through 89 of the Third Amended Complaint (T.A.C.) sets out the well-accepted link between exposure to high level of gun violence in such communities and the mental impairment of the class members with respect to these major life activities. Such impairment includes distraction or inability to concentrate, lack of communication, deficit attention disorders, panic attacks, and inability to succeed in school. They use up enormous emotional resources dealing with fear that, as children, they find especially difficult to control or manage. The T.A.C. also describes specifically how the Defendant ISP and other defendants could bring down the level of gun related violence by full use of their regulatory authority under Illinois guns laws but have failed to do so. By failing to meaningfully enforce Illinois laws, as set out in T.A.C. paragraphs 51 to 78, and by refusing to modify those deficiencies, the ISP and other defendant state actors have denied a reasonable accommodation to the needs of the proposed class. They have failed to use their full authority under the Dealer License Act to stop straw purchases and have failed to fulfill their obligation under the FOID Act to collect guns from

tens of thousands of persons whose FOID cards have been. Defendants have also failed to carry out other basic statutory obligations, including the statutory duty to determine patterns of straw purchasing as required by the Illinois Gun Trafficking Information Act. Correcting these deficiencies is a reasonable accommodation to the needs of these children and would significantly reduce the high levels of gun-related violence in the communities in which these children live.

To define the geographic parameters of the class, Plaintiff starts with 77 community areas defined by the Chicago Metropolitan Agency for Planning for long-term data analysis purposes. Chicago Metropolitan Agency for Planning, *Community Data Snapshots*, August 2021, https://www.cmap.illinois.gov/data/community-snapshots#Chicago_neighborhood_data_2017. These 77 community areas correlate approximately to traditional Chicago neighborhoods. Unlike ward maps, the boundaries of these neighborhoods remain the same over longer periods, thereby providing a template for defining areas of systematic community gun violence. The 15 highest crime community areas in terms of gun crime are:

> Austin, North Lawndale, West Englewood, Auburn Gresham, Englewood, South Roseland, Humboldt Park, West Garfield Park, Chatham, Chicago Lawn, New City, West Pullman, and East Garfield Park. City of Chicago Data Portal, *Gun Crimes Heat Map*, https://data.cityofchicago.org/Public-Safety/Gun-Crimes-Heat-Map/iinq-m3rg.

These are the communities that experience the most gun-related crime and thus provide the geographical boundaries of the class. While Plaintiff proposes this ranking to define the class boundary, it should be noted that some community areas would have a higher rate of per capita gun-related crime based on their populations. For example, Plaintiff Mathews lives close to the boundary of East Garfield Park and West Garfield Park. Both of these neighborhoods are among the six community areas, out of 77, with the highest rates of gun crimes relative to their populations. Though this per capita measure is distinct from the total amount of gun crime, Plaintiff

4

submits that the total rates and per capita rates are similar enough in these 15 communities to use them to determine the geographic boundary of the class.

For the purpose of the class definition, Plaintiff measures gun crimes over the last eight years to provide an accurate picture of the persistence of violence in these neighborhoods over time.

These neighborhoods are areas of "concentrated community violence," as described in paragraph 29 of the T.A.C. They thus constitute an objective parameter of determining which children are most harmed by Defendants' failure to meaningfully enforce the laws, as described above, and who are entitled to prospective relief.

## ARGUMENT

**I.    Class membership is sufficiently ascertainable for the purpose of injunctive relief that is common and indivisible.**

The proposed class is sufficiently objective and ascertainable, especially for injunctive relief under Rule 23(b)(2). Whether a class member is disabled as described in the T.A.C. is an objective fact; indeed, that is why class actions with objective parameters can be brought under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. For a class of disabled persons to be sufficiently ascertainable under this Circuit's decision in *Mullins, supra*, every class member need not be specifically identified and determined to be disabled. Rather, as stated in *Mullins*, the proper emphasis is "on the adequacy of the class definition itself," not whether "it would be difficult to identify particular members of the class." *Mullins*, 795 F.3d at 659. District courts have certified class actions of disabled persons under the ADA and Section 504 even when the division between who is disabled and who falls short is not definitive and thus might include or benefit those not truly disabled under the ADA. *See Lacy v. Cook Cnty.*, 897 F.3d

847, 864 (7th Cir. 2018). Courts in recent years have frequently certified classes of such disabled persons. *See Am. Council of the Blind of Metro. Chi. v. City of Chi.*, 2022 WL 657074 (N.D. Ill. Mar. 4, 2022); *Berardi v. City of Pekin,* 2021 U.S. Dist. LEXIS 74731 (C.D. Ill. Apr. 19, 2021); *Bennett v. Dart*, 2020 WL 1812376 (N.D. Ill. Apr. 9, 2020); *Lacy v. Dart*, 2015 U.S. Dist. LEXIS 56625 (N.D. Ill. Apr. 30, 2015); *see also N.B. v. Hamos*, 26 F. Supp. 3d 756 (N.D. Ill. 2014). Problems arise only when such actions seek individually tailored injunctive relief. *See, e.g.*, *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 495 (7th Cir. 2012). In *Jamie S.*, the relief sought would have offered specific services to certain unidentified disabled children who should have previously received such services. The Court opined that such relief would have necessitated identifying every qualifying student. *Id.* That is not the case here.

Plaintiff Mathews, by contrast, seeks an order requiring conduct common to the class, which does not require identifying individual class members. And, as discussed *supra*, the possibility that some class members might be truly disabled under federal law while others have an impairment that does not rise to that same level has not been an obstacle to class certification in prior cases. *See generally Lacy v. Cook Cnty.*, 897 F.3d at 847; *see also Lacy v. Dart*, 2015 U.S. Dist. LEXIS 56625, at *2-6 (certifying class action under Rule 23(b)(2) of inmates in wheelchairs despite a possibility that some class members would not fit definition of disability because "plaintiffs' claims do not require an individual evaluation of plaintiffs' disabilities," but, rather, whether the defendants are complying with the ADA or Section 504). This is especially true when certification is sought here under Rule 23(b)(2), which is designed specifically for discrimination cases seeking such collective relief and does not require individual notice or allow opt out of the class. *See Am. Council*, 2022 WL 657074, at *1.

## II. The proposed class meets the four requirements for class certification under Rule 23(a), Fed. R. Civ. P.

The proposed classes under Counts I and II satisfy all four of Fed. R. Civ. P. 23(a)'s criteria.

*Numerosity.* The class is sufficiently numerous as required by Fed. R. Civ. P. 23(a)(1). Based on census data, it can easily be determined that tens of thousands of children live in the 15 high crime Chicago community areas described above. Likewise, many children are disabled within the meaning of federal law from being continually exposed to the illegal gun violence Defendant ISP could reduce by meaningfully enforcing state laws.

A 2019 study by the Erikson Institute determined that, in 2018, 12,248 children under the age of five lived in a community that experienced *over* 30 homicides. Press Release, Erikson Institute, "New homicide data analysis reveals most of Chicago's young children live in communities with high violence" (Jul. 8, 2019), https://www.erikson.edu/wp-content/uploads/2019/07/7.22.19-Homicide-press-release.pdf. That estimate does not take into account the non-fatal injuries and general near-daily firing of guns in the communities Plaintiff has identified.

*Commonality.* Under both Counts, this case presents common issues of fact and law within the meaning of Fed. R. Civ. P. 23(a)(2). Indeed, each presents a single common issue of fact and law that will resolve this litigation. In Count I, that issue is whether the class members have suffered discrimination by reason of their disability because Defendant ISP and other defendant state actors have refused a reasonable accommodation to their needs—namely, meaningful enforcement of the Firearm Dealer License Act, the FOID Act, and the Illinois Gun Trafficking Information Act. In Count II, the single common issue of fact and law is whether the same Defendant ISP and other defendant state actors have adopted criteria of administration that have an adverse racial impact and no legitimate purpose. *See Cent. Austin Neighborhood Ass'n v. City of Chi.*, 2013 IL

App (1st) 123041 (Ill. App. Ct. 2013). A "common nucleus of operative fact is usually enough" to satisfy commonality. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Here, however, there is even more: the prospective injunctive relief sought is identical and common to the class. *See Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001); *see also* 7A Wright & Miller, § 1763 at 201 (1986) ("Injunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)"). Indeed, class actions certified under the ADA or Section 504 share this characteristic. *See, e.g.*, *Berardi*, 2021 U.S. Dist. LEXIS 74731, at *20. The single issue identified in each Count necessarily has a common answer. "What matters to class certification . . . is not the raising of common questions. . . but rather, the capacity of a class-wide proceeding to general common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The critical point is the need for conduct common to members of the class." *Berardi*, 2021 U.S. Dist. LEXIS 74731, at *20 (internal quotations and emphasis omitted). Plaintiff here seeks the same reasonable accommodation to remedy the same discrimination that results from the disability of the class members, thus easily meeting the commonality requirement.

    *Typicality.* The "typicality" requirement under Fed. R. Civ. P. 23(a)(3) is closely related to commonality, and the two requirements often merge in Rule 23(b)(2) class actions. *See Keele*, 149 F.3d at 594. Plaintiff has set out the ongoing harm to D.W. by continued exposure to gun violence. D.W. lives in East Garfield Park just adjacent to West Garfield Park. She is well within the relevant geographic boundaries and well-suited to representing children exposed to gun violence.

    "Typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *DG v. Devaughn*, 594 F.3d 1188, 1201 (10th. Cir 2010); *see also Connor B. v. Patrick*, 272 F.R.D. 288, 295 (D. Mass. 2011).

8

*Adequacy of representation.* Plaintiff satisfies the adequacy requirement of Rule 23. Plaintiff Mathews, on behalf of her son D.W., has already demonstrated her commitment and courage in acting as the lead plaintiff in this case. She is pursuing this case for the sake of both her child and many similarly situated children.

In service of this commitment, she has retained counsel that can adequately represent the class and is experienced with class litigation broadly and gun violence prevention litigation specifically. The firm of Despres, Schwartz, and Geoghegan, Ltd. ("DSG") is experienced in class litigation. Another court in this district stated, in addressing the adequacy of the firm to serve as class counsel, that "[the court] has no doubt that plaintiffs' attorneys will be able to litigate the case fairly and adequately on behalf of the proposed class." *Healy v. IBEW, Local Union No. 134*, 296 F.R.D. 587, 593 (N.D. Ill. 2013). In addition to *Healy*, in which the firm negotiated a settlement including reinstatement and $1.8 million in back pay, the firm has served as class counsel in numerous other class actions. The firm recovered $19 million in total for plaintiffs and other employees in the related cases *Lumpkin v. International Harvester Co.*, No. 81 C 6674 (N.D. Ill.) and *Lumpkin v. Envirodyne Industries, Ltd.*, 933 F.2d 449 (7th Cir. 1991), which were concerned in part with a breach of fiduciary duty by an employer under the Employee Retirement Income Security Act of 1974. In *Baker v. Kingsley*, 387 F.3d 649 (7th Cir. 2004), the firm achieved a settlement of $5 million to the class. The firm has also obtained large settlements for employee class members in several WARN Act cases, including *Phason v. Meridian Rail Corp.*, 479 F.3d 527 (7th Cir. 2007), *Hughes v. Merit Lincoln Park LLC*, No. 08-cv-6191 (N.D. Ill.), and *Local 1239, International Brotherhood of Boilermakers v. Allsteel, Inc.*, 955 F. Supp. 78 (N.D. Ill. 1996).

They are ably assisted by co-counsel. For over 30 years, the legal team at the Brady Center to Prevent Gun Violence ("Brady Legal") has sought justice for the victims of gun violence

9

through litigation. Brady Legal has litigated gun cases in over 40 states, routinely litigates gun industry claims, advises and educates other attorneys and groups pursuing civil claims against the firearms industry and other actors obstructing the remediation of gun violence, files amicus briefs defending life-saving gun violence prevention policies, and advances thought leadership on issues of gun violence prevention. Brady Legal has secured over $60 million dollars in settlements and verdicts on behalf of victims and drives gun manufacturers and sellers to make significant business practice reforms. Brady incorporates and accounts for racial, ethnic, and socioeconomic disparities in gun violence in all aspects of its gun violence prevention work, partnering with organizations from Black and Brown communities most impacted by daily gun violence.

### III. The proposed class for prospective injunctive relief is appropriate for certification under Rule 23(b)(2).

The proposed class which is seeking prospective injunctive relief with respect to conduct common to the class is especially well-suited to certification under Rule 23(b)(2). No individual relief is sought, nor is relief sought that requires in any way the individual participation of a class member. Every class member in Count I is being equally denied a reasonable accommodation. Every class member in Count II has been victimized by criteria or methods of administration that have no legitimate purpose and have a severe racially disparate impact. The text of the Rule itself states: "A class action may be maintained if Rule 23(a) is satisfied and if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Defendants' refusal to act applies generally to the class, which includes those who have already been harmed and those who are at risk of being harmed. "All the class members need not

be aggrieved by or desire to challenge the defendant[s'] conduct in order for one or more of them to seek relief under rule 23(b)(2)"—they must show just that the defendants' conduct applied to the entire class. *Edmondson v. Simon*, 86 F.R.D. 375, 383 (N.D. Ill. 1980); *see also* 5 Moore's Federal Practice, Civil § 23.43(2)(a). Even where members of the proposed class have not yet been harmed by the treatment common to the class, that common treatment by the defendants is sufficient for certification. "[A] class will often include persons who have not been injured by the defendant's conduct . . . [s]uch a possibility or indeed inevitability does not preclude class certification." *Kohen v. Pac. Investment Mgmt. Co. & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009); *see also DG v. Devaughn*, 594 F.3d at 1201 ("That a class possibly or even likely includes persons unharmed by a defendant's conduct should not preclude certification."). This is precisely the kind of case for which Rule 23(b)(2) was written: "to assist litigants seeking institutional change in the form of injunctive relief." *Nicholson*, 205 F.R.D. at 99.

## CONCLUSION

For these reasons, Plaintiff Mathews respectfully requests that this Court certify this action as a class action under Counts I and II under the objective parameters described above.

Respectfully submitted,

Dated: June 24, 2022 By: /s/ *Thomas H. Geoghegan*
One of Plaintiff's Attorneys

Thomas H. Geoghegan
Michael P. Persoon
Willem Bloom
**Despres, Schwartz & Geoghegan, Ltd.**
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511
admin@dsgchicago.com

Kelly Nicole Sampson (*pro hac vice* forthcoming)

Shira Lauren Feldman
**Brady Center to Prevent Gun Violence**
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100
ksampson@bradyunited.org
sfeldman@bradyunited.org

Attorneys for the Plaintiff