IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANICE MATHEWS as guardian ad litem on behalf of her son, D.W. as well as on behalf of a class of similarly situated children,<br><br>    Plaintiff,<br><br>    v.<br><br>THE STATE OF ILLINOIS, et al.,<br><br>    Defendants. | No. 18-cv-6675<br><br>Hon. Joan B. Gottschall |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(2)**

As Defendants have acknowledged, Doc. 117 at 1, Plaintiff raises serious and legitimate concerns about gun violence in the City of Chicago. But just as her efforts to seek redress through legal claims fail as a matter of law, so too do her efforts to pursue those claims through a class action. To start, neither proposed class is ascertainable. The proposed class corresponding to Plaintiff's Rehabilitation Act claim is defined based on the existence of a highly individualized disability that has yet to be diagnosed or identified—instead of by a set of simple and objective criteria, as the Seventh Circuit requires. Because this shortcoming is inherent in the theory of Plaintiff's case, and thus cannot be cured by discovery or leave to refile, the Court should deny this portion of her motion with prejudice. But if the Court disagrees, then it should deny the motion without prejudice. Both proposed classes are improperly defined in terms of success on the merits. And Plaintiff relies solely on allegations to support her argument that she has satisfied the class certification requirements, which is insufficient under binding precedent. For these reasons, and those explained below, the motion for class certification should be denied.

1

## BACKGROUND

Plaintiff is a Chicago resident and mother of an 11 year old boy, D.W., who allegedly "suffers from a trauma-induced mental impairment" caused by exposure to gun violence "that substantially limits his abilities to sleep, learn, read, concentrate, think, communicate, and participate fully in school." Doc. 139 ¶¶ 19, 90–103. The operative complaint sets forth two causes of action against the State of Illinois, its Governor, the Illinois Department of State Police, and its Director. Count I alleges that Defendants have failed to exercise their authority to reduce gun violence, denying Plaintiff's son a reasonable accommodation of his disability in violation of the Rehabilitation Act, 29 U.S.C. § 794. *Id.* ¶¶ 104–06. Count II asserts that this alleged failure also subjects Plaintiff's son to discrimination on the basis of his race in violation of the Illinois Civil Rights Act, 740 ILCS 23/5(a)(2). *Id.* ¶¶ 107–11. Defendants have filed a motion to dismiss both of Plaintiff's claims. Doc. 116.

Plaintiff now seeks to certify two classes corresponding to her two causes of action. Doc. 151. These proposed classes differ materially from the one class defined in the operative complaint. *Compare* Doc. 139 ¶ 20; *see Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas) Ltd.*, 94 F.R.D. 147, 149 n.3 (N.D. Ill. 1982) (requiring plaintiff to move to amend the complaint under these circumstances). Plaintiff proposes first a "Rehabilitation Act class" defined to include children who:

    a.    are mentally disabled, within the meaning of the 42 U.S.C. § 12102, from exposure to gun-related community violence;

    b.    currently live in one or more of the 15 Chicago community areas that have been and are now the highest in gun-related crimes as determined by the City of Chicago during the period since the filing of this action, namely: Austin, North Lawndale, West Englewood, Auburn Gresham, Englewood, South Shore, Grand Crossing, Roseland, Humboldt Park, West Garfield Park, Chatham, Chicago Lawn, New City, West Pullman, and East Garfield Park; and

    c.    are currently being denied a reasonable accommodation to their needs as disabled individuals by Defendants by the failure of Defendants to use their full regulatory authority to enforce the Firearm Dealer License Certification Act, the Firearm Owner Identification Card Act, and the Illinois Gun Trafficking Information Act, to reduce the gun related violence in the communities where the class members live.

Doc. 154 at 1–2. In addition, Plaintiff proposes a "Civil Rights Act class" to include children who:

    a.    are Black;

    b.    currently live in one or more of the 15 Chicago community areas that have been and are now the highest in gun-related crime as defined by the City of Chicago, namely: Austin, North Lawndale, West Englewood, Auburn Gresham, Englewood, South Shore, Grand Crossing, Roseland, Humboldt Park, West Garfield Park, Chatham, Chicago Lawn, New City, West Pullman, and East Garfield Park; and

    c.    are currently being discriminated against because of their race by the failure of Defendants to use their full regulatory authority under the Firearm Dealer License Certificate Act, the Firearm Owner Identification Card Act, and Illinois Gun Trafficking Information Act, to reduce the gun related violence in the communities where the class members live.

*Id.* at 2.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 23 requires a plaintiff seeking class certification to satisfy all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the general categories of Rule 23(b)." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020). Here, Plaintiff seeks to certify an "injunction class" under Rule 23(b)(2). That requires Plaintiff to show Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." In addition, "Rule 23 requires that a class be defined, and experience has led courts to require that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

"The requirements for class certification are not merely pleading requirements. Parties seeking class certification must prove that they can actually satisfy them. If the parties dispute factual issues that are material under Rule 23, a court must receive evidence and resolve the disputes before deciding whether to certify the class." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020) (cleaned up). "The party seeking class certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Gorss Motels, Inc. v. Brigadoo$^n$ Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022). "A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 373 (7th Cir. 2015) (cleaned up).

## ARGUMENT

The Court should deny the motion for class certification for multiple reasons. First, neither proposed class is ascertainable. The Rehabilitation Act class is not defined based on objective criteria, as required, but rather is defined based on the existence of a highly individualized disability that has not previously been diagnosed or identified. And both proposed classes are improperly defined to include only those who succeed on the merits. Second, Plaintiff asks the Court to certify the proposed classes based on allegations alone; she presents no evidence to show they satisfy Rule 23's requirements. That flies in the face of controlling precedent, which requires Plaintiff to *prove* that the classes should be certified, and forbids the Court to just take her word for it.

**A.    The Proposed Classes Are Not Ascertainable.**

Plaintiff's motion to certify both classes should be denied because the proposed classes are not ascertainable. The Seventh Circuit has identified "three common problems that have caused plaintiffs to flunk this requirement." *Mullins*, 795 F.3d at 659. "First, classes that are defined too

4

vaguely fail to satisfy the 'clear definition' component." *Id.* A plaintiff can avoid this pitfall by "identify[ing] a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. "Second, classes that are defined by subjective criteria, such as by a person's state of mind, fail the objectivity requirement." *Id.* A plaintiff must therefore "defin[e] the class in terms of conduct (an objective fact) rather than a state of mind." *Id.* "Third, classes that are defined in terms of success on the merits—so-called 'fail-safe classes'—also are not properly defined." *Id.* "The key to avoiding this problem is to define the class so that membership does not depend on the liability of the defendant." *Id.*

Here, Plaintiff's proposed classes run aground on the second and third "common problems" identified by the Seventh Circuit. The proposed Rehabilitation Act class is not defined based on objective criteria but rather on the existence of a disability that has not been diagnosed stemming from a cause that has not been determined. *See* Doc. 145 at 1–2 ("the court cannot determine what objective criteria plaintiff proposes to use to identify class members"). Further, both classes are defined to include only those who succeed on the merits. For either reason, the Court should deny Plaintiff's motion to certify the proposed classes.[1]

### 1. The Proposed Rehabilitation Act Class Is Not Objectively Defined.

Rule 23 requires Plaintiff to identify a set of simple and objective criteria that can be used to identify members of the proposed Rehabilitation Act class. *E.g., Mullins*, 795 F.3d at 659; *Jamie*

---

[1] Defendants do not argue that Plaintiff's proposed classes must satisfy a "heightened ascertainability requirement" that would require "plaintiffs prove at the certification stage that there is a 'reliable and administratively feasible' way to identify all who fall within the class definition." *Mullins*, 795 F.3d at 657. This heightened requirement takes as a given that the class is defined by objective criteria but then goes one step further to mandate that those objective criteria must be easy to apply as a practical matter. *Id.* at 661–62. Although the Seventh Circuit rejected that heightened requirement, it was clear that "courts should continue to insist that the class definition satisfy the established meaning of ascertainability by defining classes clearly and with objective criteria." *Id.* at 672. This is the standard Defendants ask the Court to apply to Plaintiff's proposed classes.

5

*S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495–97 (7th Cir. 2012); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The criteria Plaintiff identifies, however, comprise certain Chicago children "[1] who are mentally disabled, within the meaning of the 42 U.S.C. § 12102, [2] from exposure to gun-related community violence." Doc. 154 at 1. These are not objective criteria, and therefore Plaintiff has not carried her burden to prove the proposed class should be certified.

"One immediately obvious defect in this [proposed] class is its indefiniteness." *Jamie S.*, 668 F.3d at 495. It consists entirely of disabled children who are "*not identified* and *remain unidentified*." *Id.* To identify these class members, which Plaintiff has not done, one would have to start with every child living in fifteen Chicago community areas and then hone in on those who are mentally disabled within the meaning of 42 U.S.C. § 12102. This would be challenging, to put it mildly, because whether a person has such a disability "is an individualized inquiry, best suited to a case-by-case determination." *Byrne v. Bd. of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992). But even if it could be done, the task of identifying class members would remain unaccomplished; one would still have to determine what *caused* the child to become mentally disabled within the meaning of 42 U.S.C. § 12102. If it is exposure to gun-related community violence, then the child is a member of the class; if it is anything else, then the child falls outside the class definition.[2]

---

[2] On top of the infirmities discussed above, the term "gun-related community violence" is extraordinarily vague. *See Mullins*, 795 F.3d at 660 (plaintiff must clearly identify the "particular way" in which class members were allegedly harmed). Plaintiff appears to be referring to "community gun violence," *see* Doc. 151-1 at 4, which is defined as "intentional acts of interpersonal gun violence committed in public places by individuals who are not intimately related to each other." BulletPoints, "Community Gun Violence," https://bit.ly/3NTijDa. Thus, to identify class members, one would need to determine (at the very least) whether the gun violence that caused the potential class member's disability occurred in a public place, whether it was committed by people who are intimately related to each other, and whether it was intentional. Further, Plaintiff expands membership to those disabled by gun-*related* violence, a vague and undefined category of activities that only accentuates the impossibility of determining who is actually a member of Plaintiff's proposed Rehabilitation Act class.

6

Needless to say, each of these inquiries—first, whether the child is mentally disabled within the meaning of 42 U.S.C. § 12102, and then, whether that disability was caused by exposure to gun-related community violence—would be "a complex, highly individualized task, and cannot be reduced to the application of a set of simple, objective criteria." *Jamie S.*, 668 F.3d at 496; *see Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980) ("How does one identify class members consisting of persons not identified? This might be conceivably possible if identification were a simple process. However, the record abundantly demonstrates that identifying learning disabled children is a gargantuan task."). Lacking a set of objective criteria that can be used to identify its members, Plaintiff's proposed class runs afoul of Rule 23's ascertainability requirement.

A series of recent cases illustrates the sort of objective criteria Rule 23 requires to determine membership in a class based on disability. In *Lacy v. Cook County*, 897 F.3d 847, 864 & n.36 (7th Cir. 2018), the Seventh Circuit rejected a challenge to a class comprising detainees assigned to wheelchairs because the defendant maintained "records of all wheelchair-assigned detainees," which "provide an extremely clear and objective criterion for ascertaining the class." Likewise, in *N.B. v. Hamos*, 26 F. Supp. 3d 756, 763–69 (N.D. Ill. 2014), the district court found ascertainable a proposed class comprising certain children "(1) who have been diagnosed with a mental health or behavioral disorder; and (2) for whom a licensed practitioner of the healing arts has recommended intensive home- and community-based services to correct or ameliorate their disorders." And in *Bennett v. Dart*, No. 18-cv-04268, 2020 WL 1812376, at *3 (N.D. Ill. Apr. 9, 2020), the district court found ascertainable a proposed class comprising all inmates "whom [a jail medical provider] prescribed a cane, crutch, or walker." The common thread in *Lacy*, *N.B.*, and *Bennett* is that a person's disability status—and therefore membership in the proposed class—can be determined solely by reference to a preexisting diagnosis discernable from a medical record.

*See Corey H. v. Bd. of Educ.*, No. 92 C 3409, 2012 WL 2953217, at *6 (N.D. Ill. July 19, 2012) ("Any child who is not classified as having a disability by [defendant] is simply not a member of the class."); *Flynn v. Doyle*, No. 06-C-537, 2007 WL 805788, at *3 (E.D. Wisc. Mar. 14, 2007) ("defendants' own records will identify which inmates have a disability").

In *Jamie S.*, 668 F.3d at 496, by contrast, the Seventh Circuit held a class comprising unidentified students who were disabled within the meaning of the Individuals with Disabilities Education Act was "inherently too indefinite to be certified." This was so, the court explained, because "identifying disabled students who might be eligible for special-education services is a complex, highly individualized task, and cannot be reduced to the application of a set of simple, objective criteria." *Id.* The same outcome obtained in *Holmes v. Godinez*, 311 F.R.D. 177, 214 (N.D. Ill. 2015), where the district court refused to certify a proposed class comprising "hearing impaired inmates who remain unidentified by" the Illinois Department of Corrections.[3] The proposed class was not ascertainable, the court reasoned, because it did not "presuppose a pre-existing diagnosis" but rather "would require an individualized inquiry that involved some level of medical or scientific judgment" to occur during the litigation "to ascertain the yet-to-be-identified deaf or hard of hearing inmates." *Id.* at 214–15; *see Moore v. Secretary*, No. 3:16-cv-227, 2017 WL 993077, at *9 (N.D. Ind. Mar. 15, 2017) (denying class certification where plaintiff failed to explain whether disabled members had "already been identified" and, if not, then how).

The crucial feature distinguishing *Lacy*, *N.B.*, and *Bennett*, on the one hand, from *Jaime S.* and *Holmes*, on the other, is whether the disability entitling a person to class membership has previously been identified by a medical professional or defendants themselves. In *Lacy*, *N.B.*, and

---

[3] Consistent with *Lacy*, *N.B.*, and *Bennett*, the *Holmes* court did certify a class "limited to [hearing-impaired inmates] that [the Illinois Department of Corrections] identified and documented or otherwise received written notice of." 311 F.R.D. at 215.

8

*Bennett*, the disability had previously been identified and therefore those courts found the proposed class was ascertainable. In *Jaime S.* and *Holmes*, the disability had not previously been identified and therefore those courts found the proposed class was not ascertainable. The rule apparent from these cases is easy to apply here. Plaintiff proposes a class defined by a disability that has not previously been identified. That means the proposed class is not ascertainable.

Plaintiff insists courts "have frequently certified classes of [ ] disabled persons" like the one she proposes, Doc. 151-1 at 6, but the cases she cites do not establish that her proposed class is ascertainable. *Lacy*, 897 F.3d at 864 & n.36; *N.B.*, 26 F. Supp. 3d at 763–69; and *Bennett*, 2020 WL 1812376, at *3, are distinguishable for the reasons explained above. As for *American Council of the Blind of Metropolitan Chicago v. City of Chicago*, No. 19 C 6322, 2022 WL 657074, at *1 (N.D. Ill. Mar. 4, 2022), the defendant there did "not challenge the ascertainability of plaintiffs' proposed class." Likewise, defendants did not challenge the ascertainability of the proposed criteria "has a mobility disability" in *Berardi v. City of Pekin*, No. 1:18-cv-01438, 2021 WL 1535409, at *6 (C.D. Ill. Apr. 19, 2021) (challenging class definition on "fail safe" grounds). Understandably, neither court analyzed or addressed ascertainability issues that were not raised.

To be sure, some children living in the relevant Chicago community areas may already have been diagnosed with a mental illness. A preexisting diagnosis by a medical professional is precisely the sort of objective criteria Rule 23 requires under these circumstances. But the possibility such diagnoses may exist cannot salvage Plaintiff's proposed class. It is Plaintiff's burden to show "that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513. And so far as the evidence before the Court reveals, no one has determined whether any eligible child who has been diagnosed with a mental illness is also disabled within the meaning of 42 U.S.C. § 12102 (a separate question), much less whether any such disability was caused by exposure to gun-related

9

community violence. A preexisting mental illness diagnosis may be objective, but it is doubly insufficient to determine membership in Plaintiff's proposed class.

Further, Plaintiff could not rehabilitate this ascertainability problem even if she had the opportunity to conduct discovery. The problem is that the members of the proposed Rehabilitation Act class have not previously been identified—by Defendants or by anyone else. It is not possible for Plaintiff to discover something that does not exist.

Plaintiff has not carried her burden to identify a set of simple and objective criteria that can be used to identify members of the proposed Rehabilitation Act class. As a result, the proposed class is not ascertainable as required by Rule 23. For this reason, the Court should deny Plaintiff's motion for certification of the Rehabilitation Act class with prejudice.

### 2. The Proposed Classes Are Improperly Defined in Terms of Merits Success.

The Court should also deny Plaintiff's motion for certification because the proposed classes are "fail-safe" classes improperly defined in terms of success on the merits. A fail-safe class is "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). This "is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* That "raises an obvious fairness problem for the defendant: the defendant is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation." *Mullins*, 795 F.3d at 660.

Here, membership in the proposed Rehabilitation Act class is limited to those children "currently being denied a reasonable accommodation to their needs as disabled individuals by Defendants." Doc. 154 at 1–2. But that is precisely what class members would need to prove to win their Rehabilitation Act claims—that Defendants denied them a reasonable accommodation

10

of their disabilities. *E.g., Alexander v. Choate*, 469 U.S. 287, 299–301 (1985); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). This means that only those children with a valid Rehabilitation Act claim are members of the proposed class—which makes it an improper fail-safe class. *E.g., Mullins*, 795 F.3d at 660; *Messner*, 669 F.3d at 825.

Plaintiff's proposed Civil Rights Act class is also improperly defined in terms of success on the merits. It includes only those children who "are currently being discriminated against because of their race," Doc. 154 at 2, which is what the statute requires to establish liability, 740 ILCS 23/5(a)(2). For this reason too, the Court should deny Plaintiff's motion.

**B.    Plaintiff's Motion to Certify Both Classes Is Unsupported by Evidence and Instead Improperly Requires the Court to Accept the Complaint's Factual Allegations.**

Plaintiff's motion relies entirely on the complaint's factual allegations—and, if granted, would require the Court to accept those allegations as true. But Seventh Circuit precedent rejects Plaintiff's attempt to have the Court certify a class based on allegations alone. "The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). "Certifying classes on the basis of incontestable allegations in the complaint moves the court's discretion to the plaintiff's attorneys—who may use it in ways injurious to other class members, as well as ways injurious to defendants. Both the absent class members and defendants are entitled to the protection of independent judicial review of the plaintiff's allegations." *Id.* at 677. "Thus, in evaluating the Rule 23 factors, a court does not take the plaintiffs' allegations at face value. Instead, the court 'must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification.'" *Howard v. Cook Cty. Sheriff's Office*, 989 F.3d 587, 597 (7th Cir. 2021) (quoting *Beaton v. SpeedyPC*

11

*Software*, 907 F.3d 1018, 1025 (7th Cir. 2018)); *accord Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard.").[4]

Here, Plaintiff's motion for class certification is stunningly devoid of any evidence. Even the assertions about proposed class counsel's credentials and accomplishments are just that—mere assertions unaccompanied by any supporting declaration or exhibits. Doc. 151-1 at 9–10. This is insufficient to show Rule 23's requirements have been satisfied. *See* FED. R. CIV. P. 23I(1)(B) (order certifying class "must appoint class counsel"); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916–19 (7th Cir. 2011) (requiring "rigorous" and evidence-based analysis of proposed class counsel's adequacy); *Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18 C 1526, 2020 WL 4345418, at *8–*9 (N.D. Ill. July 29, 2020) (chastising proposed class counsel who "did not provide an affidavit or declaration, i.e., testimonial evidence, attesting to his experience, qualifications, and competence in connection with [ ] class certification briefing").

Plaintiff consistently relies on unproven allegations or assertions to support the essential Rule 23 requirements she must satisfy to certify a class. Worse, many of these allegations could be proven (if at all) only by expert testimony that first must pass muster under Federal Rule of Evidence 702. *E.g., Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 816 (7th Cir. 2010) (when plaintiff relies on expert testimony to satisfy Rule 23, "the district court must perform a full *Daubert* analysis before certifying the class"). In support of numerosity, for example, Plaintiff says "many children are disabled within the meaning of federal law from being continually exposed to the illegal gun violence." Doc. 151-1 at 7. But she cites only a press release describing a study

---

[4] Because Plaintiff has moved for class certification while Defendants' motion to dismiss is pending, Doc. 116, Defendants have not yet answered the operative complaint. If they are required to answer, Defendants anticipate they will dispute many of Plaintiff's allegations, including those relied on in support of the motion for class certification.

performed by the Erikson Institute. *Id.*; *see also id.* at 2 (relying on allegations about "medical research" that shows a "link between exposure to high level of gun violence in such communities and the mental impairment of the class members"); Doc. 139 ¶ 21(a) (alleging "[t]wo-thirds of all minors who have been shot suffer from post-traumatic stress disorder, and thousands of Black children in Chicago who have experienced gun violence but not been shot also have PTSD or trauma-related disabilities").

Plaintiff fares no better when it comes to typicality. Here, she relies on "the ongoing harm to D.W. [caused] by continued exposure to gun violence" to argue her son is similarly situated to other class members. Doc. 151-1 at 8. Again, this assertion is supported not by evidence but rather by unproven allegations about medical research. *E.g.*, Doc. 139 ¶ 84 ("It is well-established among physicians, trauma specialists and educators, as well as in the scientific, peer-reviewed literature, that when a child, particularly a young child, is exposed to gun violence, there is a dramatic and lasting impairment of the child's basic life activities.").

As for commonality, Plaintiff simply summarizes her claims. Doc. 151-1 at 7–8; *contra Wal-Mart*, 564 U.S. at 349 ("any competently crafted class complaint literally raises common questions" but "reciting these questions is not sufficient to obtain class certification") (cleaned up). Plaintiff says the common issue for the proposed Rehabilitation Act class, for example, "is whether the class members have suffered discrimination by reason of their disability because [Defendants] refused a reasonable accommodation." *Id.* at 7. But "it's not enough for [Plaintiff] to show that class members have all suffered a violation of the same provision of law. Instead [Plaintiff] must show that the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members. The critical point is the need for *conduct* common to members of the class." *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017) (cleaned up).

Plaintiff's motion for class certification is unaccompanied by any *evidence* that Defendants engaged in any conduct at all, much less one policy or practice that operated uniformly to cause the same injury to all class members. "Though this question overlaps with the merits, it is also vital to any sensible decision about class certification, and the district court [must] decide it before certifying a class." *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019) (cleaned up); *see Wacker Dr. Exec. Suites, LLC v. Jones Lang LaSalle Ams. (Ill.), LP*, No. 18 C 5492, 2022 WL 1045701, at *4 (N.D. Ill. Apr. 7, 2022) ("Since the Supreme Court underscored the need for plaintiffs to provide 'significant proof' of a common question in *Wal-Mart*, the Seventh Circuit has had several occasions to evaluate evidence in determining whether the commonality prong of Rule 23(a) has been satisfied, without making a merits determination.").[5]

In any event, as explained in the pending motion to dismiss, Plaintiff could not establish that Defendants caused injury to the proposed class members even if she had the opportunity to conduct discovery. For starters, the alleged injuries are not fairly traceable to Defendants' alleged conduct; the causal chain between the gun regulations Plaintiff wants Defendants to adopt and proposed class members' mental health is far too attenuated and turns on far too many speculative inferences. Doc. 117 at 8–11. Further, these injuries would not be redressed by the relief Plaintiff seeks. Setting aside the impropriety of asking a federal court to supervise the State's regulation of

---

[5] For the same reason, Plaintiff has not satisfied Rule 23(b)(2)'s requirement that Defendants have "acted or refused to act on grounds that apply generally to the class." *See Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013) (Rule 23(b) also requires "court to probe behind the pleadings").

firearms dealers, *id.* at 11–13, Plaintiff cannot plausibly show that the adoption of her preferred gun regulations would affect proposed class members personally, *id.* at 13–14.[6]

The overarching problem for Plaintiff is that "[a] party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350; *see Messner*, 669 F.3d at 811 ("On issues affecting class certification, however, a court may not simply assume the truth of the matters as asserted by the plaintiff."). Plaintiff has not carried this burden; indeed, she has not even tried. The motion for class certification should therefore be denied.

## CONCLUSION

For all the reasons explained above, the proposed Rehabilitation Act class is not ascertainable because it is not defined based on objective criteria. This shortcoming cannot be cured by discovery or leave to refile, and therefore the Court should deny Plaintiff's motion to certify this class with prejudice. In addition, or in the alternative, the Court should deny Plaintiff's motion to certify because both proposed classes are improperly defined in terms of success on the merits and because Plaintiff failed to present any evidence to show either proposed class satisfies the essential requirements of Rule 23.

---

[6] In addition, the First Circuit persuasively holds "when a Rule 23 requirement relies on a novel or complex theory as to injury," as is the case here, "the district court must engage in a searching inquiry into the viability of that theory and the existence of the facts necessary for the theory to succeed" before certifying a class. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 26 (1st Cir. 2008).

Dated: July 28, 2022	Respectfully submitted,

                                                    KWAME RAOUL
                                                    Illinois Attorney General

                                By:  */s/ Michael T. Dierkes*
                                                      Michael T. Dierkes

R. Douglas Rees                           Office of the Illinois Attorney General
Sarah Hunger                               100 W. Randolph Street, 12th Floor
Office of the Illinois Attorney General     Chicago, Illinois 60601
100 W. Randolph Street                 (312) 814-3672
Chicago, Illinois 60601                michael.dierkes@ilag.gov