IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHANIECE MATHEWS, as guardian *ad*, *litem* and on behalf of her son D. W. et al., | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 18-cv-6675 |
| v. | ) ) | |
| | ) | The Honorable |
| The State of Illinois et al., | ) ) | Judge Joan B. Gottschall |
| Defendants. | ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTFICATION**

**Argument**

As set forth in Plaintiff's original memorandum of law, the proposed class has the objective parameters that allow membership in it to be ascertained. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As to evidentiary support, Plaintiff has filed concurrently the Defendants' press release of November 1, 2021, announcing the Executive Order declaring gun violence a public health issue and announcing funding to provide mental health services to children traumatized by gun violence. *See* Exhibit A to the Declaration of Thomas H. Geoghegan. Also, as set out in Exhibit A, the Defendant Governor states that increased enforcement by the Illinois State Police of existing gun laws could reduce violence levels in the State. This party admission plainly contradicts Defendants' claim in the pending motion to dismiss that the injury alleged here is not traceable or redressable by meaningful enforcement of the gun laws under the existing authority of the Illinois State Police ("ISP").

**I.    In a Rule 23(b)(2) class action seeking no individual relief, it is unnecessary to identify every class member.**

1

As stated in *Mullins,* the leading case in this Circuit on class certification., the proper emphasis is "on the adequacy of the class definition itself," not whether "it would be difficult to identify particular members of the class." *Mullins, supra*, 795 at 659. This case is quite different from *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012) and *Holmes v. Godinez*, 311 F.R.D. 177 (N.D. Ill. 2015). In those cases, the class relief required identifying specific class members who were entitled to particular individual benefits, such as special education services or specific hearing-related medical care. The relief sought here—to require the ISP to enforce gun laws in order to lower the level of violence in the neighborhoods where the children live—can be obtained without knowing the specific identity of a single child.

As Plaintiff has explained, the problems Defendants suggest from these cases arise only when the actions seek individually tailored injunctive relief. There is no individually tailored relief sought in this case.

## II. The Rule 23(b)(2) class has objective characteristics.

Defendants deny there are objective characteristics to determine who is or who is not disabled within the meaning of the Americans with Disabilities Act ("ADA"). But that argument goes against the very premise of the ADA, namely, that there can be objective findings of mental impairment that "substantially limits one or more major life activities." *See* 42 U.S.C. § 12102(1)(A). Defendants are wrong that these determinations are subjective. With or without formal medical diagnoses, doctors, nurses, teachers, and caregivers can make objective determinations that young children are suffering emotional or mental impairment *either* caused originally *or* now aggravated by the high levels of gun-related violence to which these children are exposed. It does not matter whether the trauma originally had more than one cause; it is enough that exposure to these very high levels of violence has aggravated that trauma. The medical literature cited by the Plaintiff in

support of this connection—indeed, the scientific consensus—is overwhelming, and, as set out below, the Defendants agree with it. They admit as much in Exhibit A. It may be hard work to determine every child in the ten high-crime neighborhoods who suffer such a disability that is caused or aggravated by such exposure. But, as discussed *supra*, identifying each individual class member is not necessary for the injunctive relief to ameliorate the harm. Moreover, the fact that it would be hard work does not mean that the parameters are not "objective." The very premise of the ADA is that the determination of such a disability can be made objectively.

    **III.    There is ample evidence that thousands of children are suffering mental and emotional handicaps from gun related violence.**

    The Defendants complain there is no evidence in the record that children in the proposed class are suffering any mental or emotional disability arising from or aggravated by the gun-related violence in their neighborhoods. However, less than a year ago, the Defendant Governor announced an Executive Order to provide funding for mental health services for youth traumatized by gun violence. Exhibit A is a press release describing the Executive Order, entitled "Gov. Pritzker Declares Gun Violence a Public Health Crisis, Pledges $250 Million Investment for Hardest Hit Communities." The Defendant Governor states in Exhibit A that his administration is "putting an unprecedented amount of dollars—$250 million—on the ground to see it through." Far from denying children's widespread trauma from gun related violence, the Defendant Governor singles it out as a major problem. The Executive Order, which implements the Reimagine Public Safety Act passed by the General Assembly a few months prior, includes the following initiative:

> "**Trauma recovery services for young people, funded by Medicaid,** designed and implemented by the Department of Healthcare and Family Services, to address trauma recovery from chronic exposure to firearm violence. A team-based model of care will include case management and school support services, group and individual therapy, and evidence-based family systems interventions" (emphasis in original). Exhibit A.

The Exhibit A press release follows with this statement from the Director of the Illinois Department of Healthcare and Family Services:

> "Firearm violence is devastating to communities and individuals long after acts of violence occur,' Illinois Department of Healthcare and Family Services Director Theresa Eagleson said. 'Offering trauma recovery services with individual case management and therapy to young people who have been continuously exposed to violence is an essential step in the healing process and is in line with the Department's efforts to address the social determinants of health'" (original emphasis removed).

In the Third Amended Complaint, Plaintiff set out the medical and scientific literature that connects exposure to high levels of gun-related violence and the emotional and mental impairment of young children. *See* Third Am. Compl. ¶¶ 85-89. Plaintiff incorporates here by reference these paragraphs. In opposing class certification, Defendants deny that these allegations constitute evidence, but the Defendant Governor and Director Theresa Eagleson, as quoted in Exhibit A, admit much the same thing. They are launching programs and giving out grants to identify children in need of individual mental health services because of the very trauma Plaintiff identifies. The initiatives announced and now carried out by Defendants presume that there are "objective" characteristics to determine which children receive trauma recovery services. The argument that there are no "objective" characteristics to determine which children are suffering from gun-related trauma is contradicted by the very programs that the Defendants have created by Executive Order. In this case, Plaintiff does not seek such individualized services and there is no need to identify specific class members, but objective parameters do exist for determining children who suffer from trauma.

IV. **Plaintiff seeks to regulate conduct of Defendants that is identical with respect to every class member.**

Plaintiff seeks no individual services for class members, such as in *Jamie S.*, 668 F.3d at 495-97 or *Holmes*, 311 F.R.D. at 177, 214-216. Rather, like other cases where the courts have certified class actions under the ADA, and where no individualized services are sought, Plaintiff

seeks relief only as to "conduct common to members of the class." *See, e.g., Berardi v. City of Pekin*, 2021 U.S. Dist. LEXIS 74731 at *20 (C.D. Ill. April 9, 2021). Nor is there a problem if there is a benefit to non-class members. The fact that the ten communities in the proposed class definition might include children who are not disabled by objective standards is no bar to class certification. *See Lacy v. Cook Cty.*, 897 F.3d 847, 864 (7th Cir. 2018). That is especially true when there is no individualized relief sought in the first place and no extra cost in defining the class such that it includes any children in these neighborhoods who may not be traumatized (if there even are any).

Finally, it should be noted that the Executive Order and the press release describing it directly contradict the Defendants' motion to dismiss, which claims that the Plaintiff's injury is not redressable or traceable to law enforcement activities. The press release states: "Further advancing the Pritzker administration's work to reduce violence across the state, last month the Illinois State Police (ISP) announced a significant increase in its gun license revocation efforts as part of its larger work to rebuild the Firearms Services Bureau with a focus on public safety." Exhibit A. This passage bears out what led to the filing of this action in 2018—that the ISP is not enforcing the Firearm Owner Identification Card Act ("FOID Act"), nor is it making efforts well within its authority to reduce violence in the neighborhoods where the Plaintiff class lives. On the one hand, in the pending motion to dismiss, the Defendants say that the level of violence is not traceable to them, and meaningful enforcement of the gun laws would not redress the injury. On the other hand, in Exhibit A, the Defendants admit that they "could reduce violence across the state" if they increase "gun revocation efforts" and the "larger work" of rebuilding the Firearms Services Bureau. This is a direct contradiction of what Defendants say in the motion to dismiss.

Unfortunately, no such increased effort has been made. Since the issuance of the Executive Order, there has been no significant revocation of gun permits, and it is dubious whether the "larger work" of rebuilding the Firearms Services Bureau has been undertaken. Plaintiff has previously filed articles that describe testimony before the Illinois House Public Safety and Violence Prevention Task Force. Dkt. 160-1. As set out in that testimony, at least 19,000 revoked FOID cards in Cook County alone are still not collected, and none of the guns of these 19,000 persons have been confiscated. Defendants say that correcting this past administrative failure would "reduce violence across the state." Of course, this would especially be true in Cook County. Defendants have implicitly admitted what Plaintiff has alleged: Defendants can use their existing authority to reduce the level of violence in Chicago.

**V.      Plaintiff meets the four prerequisites for class certification under Rule 23(a).**

There is no serious question of numerosity, the first prerequisite for certification under Rule 23(a). The plaintiff class suffer a common injury and seek a common remedy to that injury, and there are common questions of fact and law that meet the second prerequisite. Plaintiff's child is suffering such gun related trauma, the same as other class members—thus the third prerequisite of typicality is met. It is enough that the children are disabled within the meaning of federal law, even if the degree of disability may vary. Nor should it matter—when no individual relief is sought—that some children in these neighborhoods may not be disabled. *See Lacy v. Cook Cty.*, 897 F.3d at 864.

Regarding the fourth prerequisite, Plaintiff's counsel has filed affidavits concurrently with this brief detailing their qualifications to represent the class, previously provided in Plaintiff's opening brief. *See* Aff. of Thomas H. Geoghegan; Aff. of Shira Lauren Feldman.

**VI.     Other arguments against class certification are without merit.**

6

Defendants' other arguments against class certification are, at best, vague and underdeveloped. It is unclear how this could be a "fail safe" class action, as no individual relief is sought. That type of case is typically a Rule 23(c) action for damages in commercial cases involving a breach of warranty or other business conduct.

Nor is it clear why—as to certification of a class action in Count II under the Illinois Civil Rights Act—the race of the class members cannot be objectively determined.

## VII. Plaintiff is prepared to take class discovery.

Because no individual relief is sought, and there is no need to identify class members individually, Plaintiff seeks certification of the proposed class. Defendants cannot in good faith dispute that there exists a class of children who suffer a disability from gun related violence when they are announcing a costly mental health program to treat these very children.

Discovery at this stage has been stayed by request of Defendants. If Defendants insist on production of additional evidence regarding the existing programs to treat these children conducted by Children's Lurie Hospital, the University of Chicago Hospital, the City of Chicago, and the State of Illinois, Plaintiff asks leave to proceed with the discovery necessitated by Defendants' position. In that case, Plaintiff also requests to depose Defendants as to their own efforts to identify and treat these children.

## Conclusion

For the above reasons, Plaintiff seeks to certify the proposed class as identified in the submission in Dkt. 154.

Respectfully submitted,

Dated: August 18, 2022

By: /s/ *Thomas H. Geoghegan*
One of Plaintiff's Attorneys

Thomas H. Geoghegan
Michael P. Persoon
Willem Bloom
**Despres, Schwartz & Geoghegan, Ltd.**
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511
admin@dsgchicago.com

Kelly Nicole Sampson (*pro hac vice* forthcoming)
Shira Lauren Feldman
**Brady Center to Prevent Gun Violence**
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100
ksampson@bradyunited.org
sfeldman@bradyunited.org

Attorneys for the Plaintiff