IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANICE MATTHEWS, as guardian ad litem and on behalf of her son D.W., <br><br>    Plaintiff, <br><br>v. <br><br>THE STATE OF ILLINOIS, et al., <br><br>    Defendants. | No. 18-cv-6675 <br><br> Hon. Joan B. Gottschall |

**DEFENDANTS' MEMORANDUM OF LAW REGARDING STANDING**

As directed by this Court's Order, Dkt. 170, Defendants submit this memorandum of law addressing how the United States Supreme Court's recent decisions in *United States et al. v. Texas et al.*, No. 22-58 (June 23, 2023) and *Department of Education et al. v. Brown et al.*, No. 22-535 (June 30, 2023), affect the standing questions raised in their pending motion to dismiss Plaintiff's third amended complaint. The decisions support Defendants' position and further confirm that Plaintiff lacks standing.

**Summary of Defendants' Position**

Plaintiff challenges the Illinois State Police's regulation of third parties and the manner in which ISP enforces Illinois' gun control laws, and she seeks relief that would require this Court to oversee the agency's regulatory and enforcement efforts. As set forth in Defendants' motion to dismiss, Plaintiff lacks Article III standing for several reasons, including that her asserted injuries are neither fairly traceable to the State's firearms regulatory regime nor redressable by the relief she now seeks. Dkt. 117 at 7–14.

To start, Plaintiff lacks standing because the causal chain between her alleged injuries and ISP's regulation of third parties and its enforcement activities is too attenuated. *Id.* at 8–11. Plaintiff's theory of standing is based on a series of speculative inferences about how gun dealers

might respond to ISP's regulatory and enforcement measures, how this might impact the number of firearms circulating in Chicago, and how this might, in turn, affect her child's exposure to gun violence. *Id.* But under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1984), "much more is needed," where, as here, the plaintiff claims an injury that allegedly arises from the State's regulation of third parties. Plaintiff has not met her burden.

In addition, Plaintiff cannot satisfy the redressibility requirement for standing because she is seeking sweeping relief—essentially, federal supervision of the State's regulation of firearms dealers—that extends far beyond the Court's institutional capacity to award. *Id.* at 11. Specifically, Plaintiff would have this Court intervene in the State's efforts to address gun violence by overseeing the manner in which the State Police regulates firearms dealers, enforces state law, and allocates its resources. But she offers no authority for this request, especially as it relates to revoking licenses of dealers or bringing enforcement actions against others, nor does she set for any "manageable standard" for such relief. *Id.* at 12–13.

Plaintiff's claim implicates the separation of powers principles that underlie the standing doctrine. As Defendants noted, it is beyond the power of federal courts to order relief that would require a "host of complex policy decisions" entrusted to the "wisdom and discretion of the executive and legislative branches." *Id.* at 12, quoting *Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020), and citing *Rucho v. Common Cause*, 139 S. Ct. 2484, 2508 (2019) (noting that federal courts "have no commission to allocate political power…in the absence of a constitutional directive or legal standards to guide [them] in the exercise of such authority"); *see also Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) (recognizing that an executive agency "is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities").

Plaintiff did not address this key point in response to Defendants' motion to dismiss. *See* Dkt. 125 at 6–7. And Plaintiff has since doubled down on her untenable position that this Court should second-guess the manner in which ISP enforces the State's laws. *See* Dkts. 132 at 1–2 (stating that Plaintiff would pursue discovery regarding the nature and efficacy of ISP's "enforcement actions"); 143-1 at 8 (confirming that Plaintiff "seeks a change in the Defendants' law enforcement policies"); 152 at 1 (asserting that Defendants have "failed to meaningfully enforce the laws that already exist"); 163 at 2, 6 (stating that Plaintiff seeks relief that would "require the ISP to enforce gun laws to lower the level of violence" and citing statistics regarding the number of revoked FOID cards collected in Cook County).

## United States v. Texas

Now we have additional controlling authority showing that Plaintiff's novel lawsuit challenging how the State Police enforces Illinois' guns laws must be dismissed on standing grounds. In *United States v. Texas* (Exhibit A), the Supreme Court held that Texas and Louisiana had no standing to contest the enforcement policies of the Department of Homeland Security. Exhibit A at 9. DHS had promulgated guidelines prioritizing the arrest and removal of noncitizens who are suspected terrorists or dangerous criminals. *Id.* at 1–2. Texas and Louisiana filed suit, alleging that the guidelines violated two federal statutes that, according to them, required DHS to arrest more criminal noncitizens pending their removal. *Id.*

In an opinion that is highly relevant to the present case, the Supreme Court held that the plaintiffs had no standing to challenge how the Department exercises its enforcement authority. *Id.* at 14. The Court explained that enforcement decisions are constrained by resources, depend on changing public safety and welfare needs, and require a complicated balancing process that "leaves courts without meaningful standards" for assessing those policies. *Id.* at 8–9 (citing

*Heckler*). It declined to send the federal judiciary down an "uncharted path" that would require courts to second-guess executive enforcement decisions. *Id.* at 9.

*United States v. Texas* reaffirms the principle that an assessment of standing must consider separation of powers principles and the traditional limitations on the role of the judiciary by requiring an injury that is both caused by the defendant and redressable by court order. *Id.* at 4. The Court made clear that not any asserted injury will suffice: to support standing, the asserted injury must be "legally and judicially cognizable," which requires among other things that "the dispute is traditionally thought to be capable of resolution through the judicial process." *Id.* at 4. That is, the asserted injury must be "*traditionally redressable* in federal court." *Id.* (emphasis added). The standing doctrine thus "helps safeguard the Judiciary's proper—and properly limited—role in our constitutional system" and "prevent[s] the judicial process from being used to usurp the powers of the political branches." *Id.*

The Court's decision demonstrates that Plaintiff's claim here must be dismissed for lack of standing. Just as federal courts have not "traditionally entertained" suits challenging the arrest policies of federal agencies, *id.* at 9, they have not traditionally entertained suits like this one, challenging (under any statute, much less the Rehabilitation Act) the enforcement policies of state agencies combatting gun violence. The Court confirmed that it is inappropriate for courts to encroach on the executive agency's authority to enforce the law, particularly when there are no "meaningful standards" for courts to assess the propriety of the challenged executive enforcement decisions. *Id.* at 6-8, 13. The Court expressly cautioned that allowing the plaintiffs' "novel" lawsuit challenging DHS's arrest policies could start the federal judiciary down an "uncharted path" that could lead to other lawsuits challenging "alleged Executive Branch under-enforcement," including the alleged under-enforcement of "gun laws." *Id.* at 9. Plaintiff's claim here is precisely

the kind of claim that the Court in *United States v. Texas* cautioned should *not* go forward.

While the Court in *United States v. Texas* listed several exceptions under which courts might entertain a case involving the Executive Branch's enforcement policies (cases alleging selective prosecution under the Equal Protection Clause, for example), *id.* at 9–12, none of those exceptions apply here. To the contrary, the Court's discussion makes clear that this is the kind of case where the Court would determine that the plaintiff lacks standing. The Court noted that the standing analysis "might differ when Congress elevates *de facto* injuries to the status of legally cognizable injuries redressable by a federal court," but added that given the "deep-rooted nature of law enforcement discretion," it would require a "stronger indication" from Congress that judicial review is appropriate, such as "specific authorization for particular plaintiffs to sue and for federal courts to order more arrests or prosecutions by the Executive." *Id.* at 10. Here, Plaintiff relies on the Rehabilitation Act, which provides no indication whatsoever that Congress intended it to allow federal judicial review of state gun control efforts, and certainly does not specifically authorize federal courts to manage how states enforce their gun control laws.

*United States v. Texas* supports several other points made in Defendants' motion to dismiss. *First*, the decision confirms that "more is needed" to establish standing where, as here, the Plaintiff's alleged injury derives from the regulation (or lack thereof) of third parties not before the court. Ex. A at 6, citing *Lujan*, 504 U.S. at 561–62. *Second*, it confirms that *Massachusetts v. EPA* does not apply here because it involved procedural rights that are not at issue in this case. *Id.* at 13 n. 6 (distinguishing *Massachusetts v. EPA* and noting that it "does not control this case"). *Third*, in their concurrence, Justices Barrett and Gorsuch confirmed they would have resolved the case based on the rule that it must be "likely," as opposed to merely speculative, that any injury would be redressed by a favorable decision, *id.* at 5-6, and as Defendants established in their

5

motion to dismiss, Plaintiff lacks standing for this reason as well.

### Department of Education v. Brown

The Supreme Court's decision in *Department of Education v. Brown* (Exhibit B) also supports Defendants' position that Plaintiff lacks standing. In *Brown*, the plaintiffs were borrowers who asserted a "procedural claim" challenging the Secretary of Education's student loan forgiveness program. Exhibit B at 1–2. They argued that the Department failed to follow mandatory rulemaking and notice and comment procedures, and that if the Department had done so, they might have convinced the Department to adopt a different loan forgiveness program, under a different statute, that would be more generous to them. *Id.* at 2, 9.

The Supreme Court held that the plaintiffs lacked standing. The plaintiffs in *Brown* could not establish standing even though they (unlike Plaintiff here) asserted a procedural claim subject to more lenient standing rules. *Id.* At 7, 9–10. At the outset, the court noted that the plaintiffs' claim was "unusual": they claimed to be injured because "the Government has not adopted a lawful benefits program under which they would qualify for assistance," but "the same could be said of anyone who might benefit from a benefits program that the Government has not chosen to adopt." *Id.* at 10. The Court found it difficult to see how such an injury could be particular and concrete, as required, noting that it had "never accepted that an injury is redressable when the prospect of redress turns on the Government's wholly discretionary decision to create a new regulatory or benefits program." *Id.* The primary basis for the Court's decision, however, was that the line of causation between the Department's promulgation of the loan forgiveness plan under one statute, and its decision not to provide broader benefits pursuant to a different statute, was "attenuated at best" and too dependent upon "conjecture" to support standing. *Id.* at 13, citing *Simon v. E. Ky. Welfare Rights Org,*, 426 U.S. 26 (1976) (standing is "substantially more difficult"

to establish when the injury is indirect" and "speculative inferences" about the connection between the injury and the defendant's conduct is not enough).

*Brown* supports Defendants' position here. Like the plaintiffs in *Brown*, who wanted the Department of Education to create an expanded loan forgiveness program, Plaintiff here requests that ISP implement additional regulations. As in *Brown*, Plaintiff's claim is "unusual" in that her alleged injury is not based on any harm caused directly by the State, but rather on her contention that the State's gun control efforts have not gone far enough. This is not a particular and concrete injury, nor is it redressable. *Id.* at 10. Moreover, as in *Brown*, it is "purely speculative" whether Plaintiff's child's exposure to gun violence in West Garfield Park "fairly can be traced to" ISP's alleged failure to adequately regulate gun dealers and adequately enforce the State's gun laws. *Id.* at 13. In *Brown*, the plaintiffs relied on speculation about how the Department of Education's decision to provide loan forgiveness under one statute might affect its decision to forgive loans under a different statute. *Id.* at 13–14. Here, the causal chain is even more tenuous, because Plaintiff must speculate about the impact of ISP's actions on third party gun dealers and the criminal perpetrators of gun violence.

Dated:  July 12, 2023

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

By:  */s/ Michael T. Dierkes*
Michael T. Dierkes

R. Douglas Rees
Sarah Hunger
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, Illinois 60601

Office of the Illinois Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601
(312)814-3672
michael.dierkes@ilag.gov

7