IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANICE MATTHEWS, as guardian ad litem and on behalf of her son D.W.,<br><br>　　Plaintiff,<br><br>　v.<br><br>THE STATE OF ILLINOIS, et al.,<br><br>　　Defendants. | No. 18-cv-6675<br><br>Hon. Joan B. Gottschall |

## DEFENDANTS' REPLY REGARDING STANDING

Dated: July 26, 2023

KWAME RAOUL
Attorney General of Illinois

R. Douglas Rees
Sarah Hunger
Michael T. Dierkes
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, Illinois 60601

Plaintiff does not and cannot explain how her claims can proceed consistent with the United States Supreme Court's recent decisions on standing. Based on both *United States v. Texas* and *Department of Education v. Brown*, in addition to the ample authority cited in Defendants' memorandum in support of their motion to dismiss and reply brief (Dkt. Nos. 117, 125), Plaintiff's claims should be dismissed for lack of standing.

## United States v. Texas

Plaintiff cannot dispute that *United States v. Texas* is particularly relevant to this case because it expressly cautioned against allowing challenges to alleged Executive Branch underenforcement of the law—including "gun laws"—that would send the federal judiciary down an "uncharted path" that ignores the separation of powers principles underlying standing doctrine. *See* 2023 U.S. Lexis 2639, at *635 (Sup. Ct. Jun. 23, 2023). The Court reiterated that enforcement is the domain of the Executive Branch, and courts "generally lack meaningful standards" for assessing executive enforcement decisions, which involve a "complicated balancing process" that must account for "inevitable resources constraints" and "regularly changing public-safety and public welfare needs." *Id.* at *634.

Plaintiff's response all but ignores the Supreme Court's concerns. While Plaintiff asserts that this Court has the authority to "issue appropriate relief without undue judicial supervision," Dkt. No. 172 at 3, the two examples she provides show otherwise. Most tellingly, Plaintiff suggests that the Court could order a "work plan" for recovering guns from individuals whose FOID cards have been or "should have been" revoked. Dkt. No. 172 at 3. But as shown in Exhibit A, in the 2022 calendar year, ISP conducted 564 FOID-related details throughout Illinois, placing 2,647

revoked FOID card holders into compliance and seizing 1,087 firearms.[1] While Plaintiff would have the Court order ISP to do more, any "work plan" would require the Court to address, with specificity, enforcement priorities, safety considerations, resource allocation, and the respective roles of state and local law enforcement (see 430 ILCS 65/9.5(c)), among other things. As instructed in *United States v. Texas*, this "complicated balancing process" is not within the Court's institutional capacity and is more appropriately left to the Executive Branch. *See* 2023 U.S. Lexis 2639, at *633-35.

Plaintiff also suggests that the Court could bar ISP from renewing the license of any Cook County dealer that does not follow "responsible business practices," Dkt. No. 172 at 3, ignoring that ISP has already implemented statewide training materials on how to prevent straw purchasing, see Dkt. No. 125 at 2, 4, citing Dkt. No. 117 at 2. Plaintiff contends that ISP's training is "inadequate" and that that gun dealers should be compelled to follow the Brady checklist that she has attached to her response, Dkt. No. 172 at 2, 5-6. But by asking the Court to decide what level of training is "adequate," what gun dealer practices are "responsible," and to inject itself into ISP's licensing and enforcement decisions, Plaintiff ignores the Supreme Court's fundamental message in *United States v. Texas*—that separation of powers "contemplates a more restricted role for Article III courts." 2023 U.S. Dist. Lexis 2639 at *635. Plaintiff's suggested relief only confirms her lack of standing.

Plaintiff tries, unsuccessfully, to fit this case within two possible "exceptions" to the general principle in *United States v. Texas* that courts should not entertain claims challenging executive enforcement decisions:

---

[1] The court may take judicial notice of this government document, which is publicly available at ISP's website, https://isp.illinois.gov/Home/GunTraffickingInfoAct. *See* Fed. R. Evid. 201; *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003).

2

*First*, Plaintiff notes that Section 504 of the Rehabilitation Act and the Illinois Civil Rights Act provide her with an "express statutory cause of action" to challenge alleged discrimination. Dkt. No. 172 at 1-2. But this is not enough. In *United States v. Texas*, the plaintiffs challenged DHS's arrest policy based on two federal statutes that expressly regulated, with mandatory ("shall") language, the arrests of non-citizens, and yet they still had no standing. 2023 U.S. Lexis 2639, at *630, 635-36. Although the Court left open the chance that the standing analysis "might differ" for a statute that (1) "<u>specifically</u>" authorized suits against the Executive Branch by a "defined set of plaintiffs who have suffered concrete harms from executive under-enforcement," and (2) "<u>specifically</u>" authorized the judiciary to "enter appropriate orders requiring additional arrests or prosecutions by the Executive Branch," *id.* at 635 (emphasis added), the Court made clear that would require both "specific authorization" for particular kinds of plaintiffs to sue *and* for federal courts to order the relief sought. *Id.* at 636.

Here, no such "specific authorization" exists in the Rehabilitation Act, the Illinois Civil Rights Act, or any other state or federal statute. As Defendants pointed out in their opening brief, the Rehabilitation Act provides no indication whatsoever that Congress intended that statute to allow for judicial review of state gun control efforts. Dkt. No. 171 at 5. And the same is true for the Illinois Civil Rights Act. That a plaintiff can use that state statute to sue for discrimination does not support standing to inject a federal court into state gun control efforts. Thus, while Plaintiff notes that she "has filed a civil rights case," Dkt. No. 172 at 4, that is not enough to establish standing. The Court's analysis in *United States v. Texas* focused not on how the plaintiffs labeled their claim, but rather on whether there was a "precedent, history, or tradition" of ordering the relief that the plaintiffs were seeking, which in that case was an order requiring an executive agency to change its arrest policies. 2023 U.S. Lexis 2639, at *632. Here, no precedent, history,

3

or tradition exists supporting Plaintiff's requested relief, which, as noted, would require this Court to use general anti-discrimination laws as a hook to interfere with a state executive agency's gun control enforcement efforts. That is not permitted under *United States v. Texas*.

*Second*, Plaintiff suggests, quite disingenuously, that this case fits within a potential exception where an executive agency has "wholly abandoned its statutory responsibilities to make arrests or bring prosecutions." 2023 U.S. Lexis 2639, at *636; Dkt. No. 172 at 3. The Court elaborated that this would require a scenario where the agency has "entirely ceased enforcing the relevant statutes" and has "consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." *Id.* That is not the case here, where the record shows that ISP trains dealers regarding straw purchasing, and last year revoked thousands of FOID cards and seized more than a thousand guns. *See* Ex. A; *see also* Dkt. No. 117 at 1-5, Dkt. No. 125 at 2-5. By seeking relief to require ISP to increase its training and enforcement efforts, *see* Dkt. No. 172 at 2-3, Plaintiff implicitly concedes that ISP is conducting training and enforcement. Plaintiff does not come close to plausibly alleging or showing that ISP has "entirely ceased enforcing the relevant statutes" or abdicated its responsibilities under the state's gun laws. She cannot invoke this exception.

### **Department of Education v. Brown**

Defendants have shown that *Department of Education v. Brown* also supports their position that Plaintiff lacks standing because here, as in *Brown*, Plaintiff relies on a causal chain that that is "attenuated at best" and too dependent upon "conjecture" to support standing. Dkt. No. 171 at 6-7. Plaintiff tries to distinguish *Brown* by noting that the Department of Education had "total discretion to act as it pleased." Dkt. No. 172 at 4. That is not a meaningful distinction—Plaintiff's theory of causation in this case is even weaker than that in *Brown*, because it depends not only on

4

how ISP exercises its enforcement discretion, but also on the intervening conduct by gun dealers and the criminal perpetrators of gun violence who are not before the Court. Plaintiff's claim that she suffered an injury "directly" traceable to ISP, Dkt. No. 172 at 4, is patently incorrect. Plaintiff's claimed injury stems from the alleged mental harm to her minor son resulting from neighborhood gun violence. Dkt. No. 139 at ¶¶ 4, 19, 90-103. Because that injury is indirect, "much more is needed" to establish standing. Dkt. No. 171 at 2.

Plaintiff's response again demonstrates why she cannot meet her burden of establishing standing. To articulate her theory of standing, she piles speculation on top of speculation, contending that ISP's undefined "good faith" enforcement of Illinois' gun laws should decrease the number of guns available, which in turn should at least "temporarily" disarm those individuals likely to engage in gun violence, which in turn should reduce the level of violence in the particular neighborhoods where the putative class members live, which in turn should reduce the daily events that are likely to traumatize them, which in turn should improve their mental health. Dkt. No. 172 at 5-7. This chain of inferences fails at the outset because Plaintiff's starting point is vague to the point of being meaningless: she does not and cannot articulate what, specifically, the Court could order to redress the various causes of her alleged injury. But even if Plaintiff had been more specific, for example by outlining the proposals in her complaint, she still could not establish standing because her causal chain is far too attenuated and speculative. *See Dep't of Educ. v. Brown*, 2023 U.S. Lexis 2792, at *15, 23 (Sup. Ct. Jun. 30, 2023); *see also* Dkt. Nos. 117 at 8-14, 125 at 3-7.

5

Dated: July 26, 2023                                    Respectfully submitted,

                                                      KWAME RAOUL
                                                     Illinois Attorney General

                                     By: */s/ Michael T. Dierkes*
                                                 Michael T. Dierkes

R. Douglas Rees                             Office of the Illinois Attorney General
Sarah Hunger                                   100 W. Randolph Street, 12th Floor
Office of the Illinois Attorney General      Chicago, Illinois 60601
100 W. Randolph Street                    (312)814-3672
Chicago, Illinois 60601                   *michael.dierkes@ilag.gov*