IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANICE MATHEWS, as guardian ad litem and on behalf of her son D.W., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF ILLINOIS; ILLINOIS DEPARTMENT OF STATE POLICE; JB PRITZKER, in his official capacity as Governor of the state of Illinois; and BRENDAN F. KELLY, in his official capacity as Director of the Illinois Department of State Police, <br><br> Defendants. | No. 1:18-cv-06675 <br><br> Judge Joan B. Gottschall |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Date: April 5, 2024

KWAME RAOUL
Attorney General of Illinois

R. Douglas Rees
Sarah A. Hunger
Michael T. Dierkes
John R. Milligan
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603

## **INTRODUCTION**

As detailed in defendants' motion to dismiss, plaintiff's fourth amended complaint should be dismissed for multiple, independent reasons, including that it does not cure the deficiencies identified by this Court's order dismissing her third amended complaint. In response, plaintiff does not meaningfully address these deficiencies and instead confirms that she not only lacks standing, but also has failed to state a claim upon which relief can be granted.

To start, plaintiff offers no effective response to defendants' argument that she has failed to adequately allege that her requested relief would appreciably abate her son's injury. Instead, she asserts in response that requiring gun dealers to follow "responsible business practices" will reduce the level of gun violence in Chicago. But that is not the issue here, because Illinois *already* has such a requirement: As plaintiff admits, the Firearm Industry Responsibility Act ("FIRA") makes it unlawful "for dealers to not have responsible business practices to prevent straw sales." Dkt. 192 at 11. Similarly, plaintiff's request for a court order instructing ISP to enact a regulation imposing a "documentation" requirement as a condition to licensure is likewise insufficient. Among other flaws, plaintiff includes no factual allegations demonstrating that such a requirement would abate her son's alleged injury beyond the extensive measures that the State is currently undertaking.

Plaintiff also fails to establish injury-in-fact consistent with *United States v. Texas*, 143 S. Ct. 1964 (2023). On the contrary, plaintiff admits that she seeks a court order redressing ISP's purported "abuse of discretion" in enforcing its licensing regime. Dkt. 192 at 2. But as this Court has held, plaintiff has no standing under *Texas* to pursue injunctive relief forcing ISP to reorder its enforcement priorities or discipline dealers for "violations of existing law." Dkt. 27 at 27. Additionally, plaintiff offers no response to defendants' argument that ISP lacks the statutory authority to impose her requested relief, and thus has effectively conceded this point, too.

Finally, even if plaintiff could establish standing, which she cannot, her complaint still

1

must be dismissed because she has not stated viable claims under the Rehabilitation Act or the Illinois Civil Rights Act. Plaintiff has not identified a program or activity to which her child has been denied access, nor has she adequately alleged that defendants have discriminated against her child "solely by reason of" his disability. And Supreme Court and Seventh Circuit precedent forecloses any disparate impact claims under the Rehabilitation Act or Illinois Civil Rights Act.

## ARGUMENT

I. **Plaintiff Lacks Standing.**

   A. **Plaintiff's fourth amended complaint fails to cure the traceability and redressability deficiencies identified by the Court's recent dismissal order.**

As established in defendants' motion to dismiss, plaintiff lacks standing because she has not adequately alleged that her son's alleged injuries are traceable to defendants' conduct and likely to be redressed by her requested relief. Dkt. 185 at 8-12. In her response, plaintiff contends that she has identified a redressable and traceable injury, though she is not entirely clear regarding her requested relief. At certain points, she refers generally to seeking a court order "requiring responsible business practices," but in others she claims to impose a "documentation" requirement—specifically, she "seeks an order" that ISP "must require gun dealers to document that at the time of sale of firearms the dealers have followed responsible business practices." Dkt. 192 at 1; *see also id.* at 7, 9, 15. Either way, plaintiff has no standing.

To start, gun dealers in Illinois are *already* required by law to follow "responsible business practices." Dkt. 192 at 2, 9, 11, 15. Illinois recently enacted FIRA, which creates civil liability for gun dealers who fail to establish and utilize "reasonable procedures, safeguards, and business practices" designed to prevent straw purchasing. Dkt. 185 at 2-4. Plaintiff agrees that "by its plain language," FIRA "says that failure to follow responsible business practices" is an "unlawful practice" that subjects gun dealers to liability. Dkt. 192 at 2; *see also id.* at 9 (noting that under

2

FIRA "the refusal to require responsible business practices is not in accordance with the law"); 11 (noting that FIRA makes it unlawful "for dealers to not have responsible business practices to prevent straw sales"), 15 (noting that dealers should follow the "procedures, safeguards, and practices" that are "affirmative obligations of Illinois law").

Thus, there is no dispute that FIRA requires gun dealers to adhere to responsible business practices. Still, plaintiff persists, asserting that "what is required to avoid liability under FIRA" must be required "as a condition of licensure." Dkt. 192 at 7. Plaintiff says it is "illogical to claim" that even if dealers engage in practices that FIRA prohibits, ISP is "obligated to give those dealers a license." *Id.* at 11. But ISP has never made such a "claim," and that is not its position. To the contrary, as ISP explained in its opening brief (and plaintiff agrees, see Dkt. 192 at 11), it has authority under the Illinois Firearm Dealer License Certification Act, 430 ILCS 68/5, to take action against gun dealers that violate "any law applicable to the sale of firearms," and FIRA applies to the sale of firearms. Dkt. 185 at 10. Potential penalties under the Firearm Dealer License Certification Act for violations include "suspending, revoking, or refusing to renew a license." *Id.*

Given the current regulatory landscape, plaintiff faces two, independent obstacles to standing. First, as explained below, *infra* Section I.B., and as this Court has recognized, recent Supreme Court precedent confirms that plaintiff cannot pursue injunctive relief forcing ISP to discipline dealers for "violations of existing law." Dkt. 27 at 27. Second, as relevant to traceability and redressability, plaintiff must show that her proposed regulatory regime would "appreciably abate" her son's injury in a way that the current regulatory regime does not. Dkt. 175 at 30. And she has not made that showing. Indeed, to the extent there is any difference between the requirements of existing state law and the "responsible business practices" regulation that plaintiff seeks here, it is not enough to establish standing.

3

As this court has explained, standing cannot be assessed in the abstract, in a vacuum. Rather, standing must be evaluated in terms of Illinois' current regulatory framework, which provides the baseline for any redressability analysis. At this juncture, plaintiff must allege sufficient facts to make a plausible showing that, *relative to the current regulatory landscape*, the specific regulation that she requests would likely redress her son's injuries. She has not done so. She does not, and cannot, point to any factual allegations showing that her preferred "responsible business practices" regulation would appreciably abate any gun violence experienced by her child beyond the measures already enacted by Illinois.

Plaintiff asserts at the highest level of generality that "[r]equiring gun dealers to follow responsible business practices will reduce the level of gun violence in the City of Chicago." Dkt. 192 at 4. But, again, this does not suffice because Illinois law already requires responsible business practices, and plaintiff has no standing to challenge ISP's enforcement of existing law. Dkt. 27 at 27. Plaintiff also lacks standing because her complaint includes no factual allegations regarding the marginal impact (if any) of her preferred regulation—requiring gun dealers to document compliance with responsible business practices as a condition to licensure—relative to Illinois' existing regulatory framework, which mandates that gun dealers complete annual training on straw purchasing; makes dealers subject to civil liability under FIRA for "failing to establish or utilize reasonable controls" to prevent straw purchasing; and allows ISP to sanction dealers—including by suspending, revoking, or refusing to renew their license—for violating "any law" applicable to the sale or transfer or firearms, including FIRA, or for otherwise engaging in a "pattern or practice or other behavior which demonstrates incapacity or incompetency to practice" under the Firearm Dealer License Certification Act. Dkt. 185 at 2-4.

4

If anything, plaintiff's arguments support the laws that Illinois already has in place. Plaintiff makes much of Attorney General Raoul's amicus brief in Case No. 22-1374, *National Shooting Sports Foundation, Inc. v. James* (2d Cir.), which cites studies in support of a New York statute that—like Illinois' new FIRA law—allows public officials or private citizens to sue gun industry members for unlawful conduct. Dkt. 192 at 4-6, citing Raoul Amicus Brief at Dkt. 178-2. Both the New York statute and FIRA require gun dealers to establish and utilize "reasonable controls." Dkt. 192 at 1-2, 7. The Attorney General's support for a law with language similar to part of FIRA does not establish that whatever different, additional regulation plaintiff seeks here—such as a documentation requirement—would meaningfully reduce gun violence in Chicago.

Nor do the two New York district court decisions cited in plaintiff's response. In *NAACP v. Acusport, Inc.*, 271 F. Supp. 2d 435 (E.D.N.Y. 2003), the court found that "the flow of guns into criminal hands in New York would substantially decrease" if retailers trained and supervised employees to prevent straw sales, but as plaintiff acknowledges, Illinois already has a training requirement. Dkt. 192 at 12-13. Likewise, the finding in City of *New York v. A-1 Jewelry & Pawn, Inc.*, 501 F. Supp. 2d 369, 390 (E.D.N.Y. 2007), that one specific gun seller ("Patriot," not sellers generally, as plaintiff implies), was "willing to tolerate straw purchases" does not remotely show that plaintiff's requested relief here would appreciably abate her son's alleged injury.

Similarly, the statement in the Dinnerstein article, which is not cited in plaintiff's complaint, that a significant percentage of illegal gun purchases were "straw purchases from federally licensed dealers," Dkt. 192 at 6, does not establish that plaintiff's requested relief should appreciably abate gun violence, especially in light of the extensive measures that Illinois already has taken to combat straw purchasing.

5

In short, plaintiff's response confirms that she has not established standing for either form of requested relief because Illinois already requires dealers to engage in responsible business practices and because plaintiff's response does not point to any factual allegation showing that, given Illinois' existing regulatory framework, simply adding a documentation requirement would appreciably abate any gun violence experienced by her son.

### B. Plaintiff fails to allege an injury-in-fact under *United States v. Texas*.

Plaintiff also lacks standing for another reason: she has not alleged a cognizable injury under *United States v. Texas*, 143 S. Ct. 1964 (2023), because, as her response confirms, her requested relief is, in substance, an extra-statutory request to reorder the State's enforcement priorities. Dkt. 185 at 13-15. As an initial matter, plaintiff makes clear that she seeks an order from this Court that would supplant ISP's enforcement discretion with its own. Plaintiff emphasizes that FIRA already requires "reasonable business practices," and she asserts that it is an "abuse of discretion" for ISP to license dealers that violate FIRA. Dkt. 192 at 2; *id.* at 13 (seeks to "stop the egregious abuse of [discretion]"). In other words, by her own admission, plaintiff's claim is really about how ISP exercises its enforcement discretion (indeed, plaintiff seeks to eliminate ISP's discretion, see Dkt. 185 at 14). And as this Court has already explained, plaintiff lacks standing for such requests under *Texas*. Relying on *Texas*, this Court distinguished between relief requiring ISP to regulate, which the Court held could be cognizable under Article III, and relief requiring ISP to discipline gun dealers for "violations of extant law," which cannot support standing. Dkt. 175 at 27-28. Now that FIRA is in effect, and in light of plaintiff's candid description of its request as one sounding in enforcement discretion, plaintiff's claim has clearly crossed into the latter category. Finally, while plaintiff tries to distinguish *Texas* by noting that she seeks relief to protect a "legally cognizable interest under Section 504," this Court has already rejected that argument. Dkt. 175 at 25-26; *see also* Dkt. 173 at 3-4.

6

In any event, plaintiff lacks standing for the additional reason that ISP cannot provide the relief she seeks. In their motion, defendants explained in detail why, as a matter of statutory interpretation, ISP has no authority to impose via rulemaking the additional condition on licensure that plaintiff seeks here. Dkt. 185 at 14-15. Plaintiff offers no response to those arguments, and instead asserts only that her requested relief is "perfectly consistent" with the "fundamental nature" of ISP's "licensing program." Dkt. 192 at 14. In making this assertion, she does not analyze the statute defining the scope of ISP's authority and provides no textual basis for her position. Plaintiff offers no meaningful response, thus effectively conceding that defendants are correct.

## II.   Plaintiff Fails To Plead A Plausible Section 504 Claim.

Plaintiff has agreed to voluntarily dismiss her Rehabilitation Act claims against Governor Pritzker and ISP Director Kelly. Dkt. 192 at 142. And her claims against the remaining defendants, the State of Illinois and ISP, also should be dismissed for failure to state a claim.

### A.   Plaintiff fails to plead the existence of a "program or activity" to which her child has been denied access.

As established in defendants' opening brief, plaintiff's Rehabilitation Act claim fails at the outset because she has not identified a "program or activity" to which her child has been denied access. Dkt. 185 at 17. In her response, plaintiff asserts that regulating and licensing gun dealers are programs for purposes of the Rehabilitation Act. Dkt. 192 at 8. But the question is not whether regulating and licensing dealers are "programs" in the abstract. The issue, instead, is whether regulating and licensing are programs to which plaintiff's child has been denied access (because of his disability). Section 504 provides that "[n]o otherwise qualified individual with a disability" shall "solely by reason of her or his disability, be excluded from participation in or denied the benefits of, or be subjected to discrimination under" any "program or activity" receiving federal financial assistance. 29 U.S.C. § 794.

7

Here, plaintiff cannot allege that her child has been "excluded from participation in" or "denied the benefits of" the State's regulation and licensing of gun dealers.[1] Members of the public do not participate in regulating dealers or licensing dealers, and thus plaintiff cannot claim that her child is "excluded from participating" in regulating or licensing. While plaintiff suggests that her child is "denied the benefits" of regulating or licensing, Dkt. 192 at 8, this is incorrect, because the State's current regulation and licensing of gun dealers benefits all persons, including plaintiff, regardless of disability. Rather than alleging that her son is being denied the benefits of a program or activity, as required under the text of the Rehabilitation Act, plaintiff's claim is that her son and others *would* benefit from *changes to the way* the State regulates and licenses gun dealers.

That is not enough. Section 504 is about ensuring that disabled persons have access to existing programs or activities for which the State is receiving financial assistance. It does not require the State to promulgate new regulations for third-party gun dealers, on the theory that doing so might benefit disabled persons. *See* 29 U.S.C. § 794; *see also Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012) (rejecting argument that New York agency violated the ADA "because it could require more taxis to be accessible, but does not," and concluding that the agency's "failure to use its regulatory authority does not amount to discrimination within the meaning of the ADA or its regulations"); *Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1442 (D. Kan. 1994) (ADA "simply does not go so far as to require public entities to impose on private establishments, as a condition of licensure, a requirement that they make their facilities physically accessible to persons with disabilities"). Thus, plaintiff has not adequately alleged that her child is being denied the benefits of any existing program or activity.

---

[1] Nor can plaintiff allege discrimination on the basis of her child's disability, as discussed in defendants' opening brief and in Section II-B below.

8

**B.     Plaintiff fails to plead that defendants have discriminated against her child "solely by reason of" his disability.**

In addition, plaintiff's Rehabilitation Act claim fails because she has not adequately alleged discrimination against her child "solely by reason of" his disability. Dkt. 185 at 18-21. This sole-causation standard appears in the text of the Rehabilitation Act. *See* 29 U.S.C. 794(a) ("[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…"). And the Seventh Circuit has for decades applied a sole–causation standard to Rehabilitation Act claims. *See, e.g.*, *Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997) ("The word *solely* provides the key: the discrimination must result from the handicap and the handicap alone."); *Grzan v. Charter Hosp.*, 104 F.3d 116, 119-21 (7th Cir. 1997) (plaintiff must allege discrimination "solely by reason of" handicap to avoid dismissal). Yet plaintiff denies that the Rehabilitation Act has a stricter causation standard than the ADA, which does not include similar "solely by reason of" language. Dkt. 192 at 10.

Plaintiff's position contradicts Seventh Circuit precedent. It is true, as plaintiff notes, that the Rehabilitation Act and the ADA both require "but for" causation, *see Wis. Cmty. Servs. v. City of Milwaukee*, 465 F. 3d 737, 755 (7th Cir. 2006), but the application of this standard is more demanding for Rehabilitation Act claims. In *Conners v. Wilkie*, the Seventh Circuit expressly stated that the Rehabilitation Act and ADA have the same liability standards with one "notable exception," which is that "[t]he Rehabilitation Act has a stricter causation standard." 984 F.3d 1255, 1260 (7th Cir. 2021). Plaintiff dismisses this clear pronouncement, noting that *Conners* was an employment case (similar to a claim under Title I of the ADA), not a public services case (similar to a claim under Tile II of the ADA). Dkt. 192 at 10. *Id.* But in concluding that the

9

Rehabilitation Act's standard is stricter than the ADA's causation standard, the court in *Connor*s compared the language in the Rehabilitation Act to 42 U.S.C. 12132, which appears in Title II of the ADA. *Connors*, 984 F.3d at 1260. This undermines plaintiff's position.

Moreover, in *Swain v. Wortmuth*, the Seventh Circuit subsequently confirmed that the Rehabilitation Act's sole-causation standard is stricter than the ADA's regardless of whether the claim is analogous to one under Title I or Title II: "Neither Title I nor Title II employs the phrase 'solely by reason of,' though, so the general observation that 'the Rehabilitation Act has a stricter causation standard' remains true." 41 F.4th 892, 899 n.4 (7th Cir. 2022), citing *Connors*, 984 F.3d at 1260; *see also Washington v. Indiana High Sch. Ath. Ass'n*, 181 F.3d 840, 845 n.6 (7th Cir. 1999) (noting in connection with Title II claim that the ADA and Rehabilitation Act have different causation standards).

Plaintiff has not adequately alleged causation. She effectively concedes that she is not pursuing any claim for intentional discrimination. Dkt. 192 at 9-11. While she notes that disparate impact and failure to provide a reasonable accommodation are independent "bases of liability" that do not require proof of discriminatory intent (*id.* at 9), this misses the point: the Rehabilitation Act's "solely by reason of" language is a *causation* requirement that applies across the board to all types of claims. As the Seventh Circuit explained in discussing a reasonable accommodation claim, "the Rehabilitation Act helps disabled individuals obtain access to benefits only when they would have difficulty obtaining those benefits 'by reason of' their disabilities, and not because of some quality that they share generally with the public." *Wis. Cmty. Servs.*, 465 F.3d at 748, citing *Washington*, 181 F.3d at 848 ("[t]here must be a causal connection between the disability and [the plaintiff's] ineligibility").

10

Here, plaintiff has not stated a disparate impact claim.[2] While plaintiff references such a claim in her response brief, Dkt. 192 at 9, the complaint includes only a "reasonable accommodation" basis for her Rehabilitation Act claim, Dkt. 178 ¶¶ 8, 97, and includes no allegation that defendants' conduct has caused a disparate or disproportionate impact on disabled persons because of their disabilities. The complaint uses the word "disparate" only twice, alleging that gun violence has a disparate impact on certain Black neighborhoods. *Id.* ¶¶ 22, 99. And the complaint uses the word "disproportionate" only when referring to the impact of gun violence on Black persons. *Id.* ¶¶ 10, 99. The complaint includes no factual allegations regarding a disparate impact on the basis of disability, as opposed to race. To the extent that plaintiff purports to bring a disparate impact claim, it should be dismissed.

The Supreme Court's decision in *Alexander v. Choate*, 469 U.S. 287 (1985), confirms that plaintiff cannot state a disparate impact claim. In *Choate*, the plaintiffs were disabled Medicaid recipients who challenged a reduction in the number in-patient hospital days per year, from 20 to 14, that Tennessee Medicaid would pay for. *Id.* at 289. It was undisputed that the reduction would affect disabled persons more than non-disabled persons. *Id.* But even so, the Court held that the plaintiffs could not state a Rehabilitation Act claim because the 14-day limit was neutral on its face and did not invoke criteria that had a "particular exclusionary affect" on persons with disabilities. *Id.* at 302. Because Tennessee's 14-day rule did not deny disabled persons access to the "particular package of Medicaid services that Tennessee has chosen to provide," plaintiffs had no disparate impact claim. *Id.* at 306-09.

---

[2] In *Choate*, the Supreme Court "assume[d] without deciding" that the Rehabilitation Act "reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped." *Id.* at 299. A circuit split exists on this point. While some circuits, including the Seventh Circuit, have recognized such claims, *see McWright v. Alexander*, 892 F.2d 222 (7th Cir. 1992), the Sixth Circuit has held that Section 504 "does not prohibit disparate–impact discrimination." *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 241 (6th Cir. 2019).

11

Similarly, plaintiff here cannot state a disparate impact claim under the Rehabilitation Act. Just as the plaintiffs in *Choate* could not establish a viable disparate impact claim based on the fact that Tennessee's rule would affect disabled persons more than non-disabled persons, plaintiff's assertion here that the "fragile condition" of children with disabilities "multiplies the harmful effect" of gun violence does not suffice. Dkt. 192 at 9. While plaintiff says the State could do more to address gun violence, she does not allege that her son is excluded from the benefits of any existing state program because of his disability, and therefore, any disparate impact claim fails. *See Alexander*, 469 U.S, at 306-09; *see also Wis. Cmty. Servs.*, 465 F.3d at 754 (rejecting argument that a measure is "necessary to avoid discrimination on the basis of disability" simply because it "*helps* the disabled").

Plaintiff also has not stated a reasonable accommodation claim. As established in defendants' opening brief, plaintiff has not plausibly alleged that defendants have failed to accommodate her son by removing some barrier to program access that affects him "solely by reason of" his disabilities. Dkt. 185 at 18-19. Other than arguing, incorrectly, that the causation standard under the Rehabilitation Act is not stricter than the standard under the ADA, Dkt. 192 at 9-10 (Section II-B), plaintiff entirely ignores the causation issue for her reasonable accommodation claim. She does not, and cannot, point to a single allegation showing that her son cannot access any existing benefit because of his disability. Nor does plaintiff address defendants' argument that she cannot state a disability discrimination claim based on her allegations that defendants' actions (or failure to act) have caused her child to *become* disabled. Dkt. 185 at 19. Plaintiff's failure to respond to amounts to waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

Because plaintiff has not adequately alleged causation, her claim fails regardless of whether her requested accommodation is reasonable. *See Wis. Cmty. Servs.*, 465 F.3d at 755

12

(reasonableness "cannot be reached" until causation is established). But as defendants showed in their opening brief, plaintiff's requested relief cannot be considered an accommodation at all, much less a reasonable one. Dkt. 185 at 20-21. On top of that, ISP does not even have the authority to impose via rulemaking the condition on licensure that plaintiff seeks. *Id.* at 14-15. Plaintiff does not meaningfully address these points; she only says that the determination of a reasonable accommodation is a fact-specific inquiry that should not be decided on a Rule 12(b)(6) motion. Dkt. 192 at 14. But no factual development is necessary to see that intruding on Illinois' "longstanding discretion" to make policy decisions, *Choate*, 469 U.S. at 307, by compelling the State to alter the basic terms and conditions of its gun licensure regime for all residents across the State, is not a reasonable accommodation under the Rehabilitation Act.

*Choate* confirms that the relief that plaintiff requests here goes far beyond a reasonable accommodation. In addition to challenging Tennessee's reduction in the number of in-patient hospital days allowed by Medicaid (as discussed above), the plaintiffs in *Choate* requested that Tennessee modify its Medicaid plan by eliminating the durational limitation on inpatient coverage. *See* 469 U.S. at 306. The Supreme Court held that Tennessee had no obligation under the Rehabilitation Act to change its existing Medicaid program, "even if in doing so the State could achieve its immediate fiscal objectives in a way less harmful to the handicapped." *Id.* at 309. The Rehabilitation Act did not override the States' "longstanding discretion to choose the proper mix of amount, scope, and duration limitations on services covered by state Medicaid." *Id.* at 307. Similarly here, plaintiffs' requested accommodation far exceeds the sort of modest, "individualized" exceptions to policies necessary to ensure access for disabled people. Dkt. 117 at 18-19. Plaintiff's Section 504 claim should be dismissed.

**III.     Plaintiff Fails To Plead A Plausible Illinois Civil Rights Act Claim.**

Finally, plaintiff's response confirms that she has not stated a valid Illinois Civil Rights

13

Act ("ICRA") claim. As an initial matter, plaintiff does not dispute that if the Court dismisses her Rehabilitation Act claim, then it should decline to exercise supplemental jurisdiction over the ICRA claim. Dkt. 185 at 19-21.

On the merits, plaintiff relies on a single inapposite case, *Central Austin Neighborhood Ass'n v. City of Chicago*, 1 N.E.2d 976 (Ill. App. Ct. 2013), in arguing that she has stated a viable ICRA claim, while entirely ignoring the Seventh Circuit precedent confirming that she has not. In *Central Austin*, the court held that the political question doctrine did not bar an ICRA claim. *Id.* at 985. But that is not the issue here. Defendants have not invoked the political question doctrine. Instead, defendants' position is that plaintiff's ICRA claim fails because she has not identified specific "criteria or methods of administration." Dkt. 117 at 20-23. This was not the issue on appeal in *Central Austin*, where the plaintiffs more obviously challenged a "method of administration," specifically, the City's policy authorizing the dispatch of beat officers only from the police district where the call originated. 1 N.E 2d. at 979. In this case, unlike *Central Austin*, plaintiff has not identified specific "criteria or methods of administration."

Rather than identifying any specific existing policy or practice that disparately impacts minorities, plaintiff argues that her preferred adjustments to the State's regulatory system—that is, the measures that she believes the State *should* adopt—are sufficient to state a claim because, if adopted, they "would" reduce gun violence. Dkt. 192 at 15 (claiming that "requiring dealers to follow responsible business practices" is a "policy" or "practice" that "would reduce the level of gun violence"). But this is incorrect. Plaintiff must isolate and identify a "specific practice" responsible for a disparity. Dkt. 117 at 20. And the State's "non-adoption" of plaintiff's preferred measures is not a specific practice, at least for purposes of ICRA. Defendants cited multiple cases, including binding Seventh Circuit precedent, see *EEOC v. Chicago Miniature Lamp Works*, 947

14

F.2d 292 (7th Cir. 1991), holding that disparate impact claims require some affirmative act on the part of the defendant. Plaintiff does not address, much less distinguish, any of these cases.

Of all the cases cited in defendants' brief, plaintiff discusses only *Smith v. Jackson*, 544 U.S. 228 (2005), which defendants cited for the incontestable proposition that under federal law (which helps define the scope of ICRA), a plaintiff asserting a disparate impact claim must isolate and identify the "specific practice" responsible to the alleged disparity. Dkt. 185 at 22. Plaintiff mischaracterizes *Smith*, claiming that the plaintiffs there challenged an "age disparity in the work force, without saying what had caused the disparity except the overall rules of employment." Dkt. 192 at 15. In fact, the plaintiffs in *Smith* challenged a pay plan under which employees "who had less than five years of tenure received proportionately greater raises when compared to their former pay than those with more seniority." 544 U.S. at 230-31. And the Supreme Court found this insufficient because the plaintiffs had not identified a "*specific* test, requirement, or practice within the pay plan" that disparately impacted older workers. *Id.* at 241 (emphasis added).

Plaintiff's claim here is even weaker. Not only does plaintiff fail to identify any specific "criteria or method of administration" that could support her ICRA claim, but she relies on an alleged omission instead of challenging an existing policy or practice. Further, even if not adopting plaintiff's preferred regulations were a "criteria or method of administration" for purposes of ICRA, plaintiff's claim would still fail, because she has not adequately alleged causation. Dkt. 185 at 24. Plaintiff's ICRA claim should be dismissed.

## **CONCLUSION**

For the reasons above and in defendants' memorandum in support of their motion to dismiss, plaintiff lacks standing and has failed to adequately allege a Rehabilitation Act claim. Her claims should be dismissed.

Dated: April 5, 2024                                    Respectfully submitted,

R. Douglas Rees                                         STATE OF ILLINOIS, et al.,
Sarah A. Hunger
Office of the Illinois Attorney General                 KWAME RAOUL
115 South LaSalle Street                                Illinois Attorney General
Chicago, Illinois 60603
(312) 814-3672                         By:    */s/ Michael T. Dierkes*
                                              Michael T. Dierkes
                                              *michael.dierkes@ilag.gov*

16