IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANIECE MATHEWS as guardian *ad litem* on behalf of her son, D.W. as well as on behalf of a class of similarly situated children, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF ILLINOIS; THE ILLINOIS DEPARTMENT OF STATE POLICE; J.B. PRITZKER, Governor of the State of Illinois; and BRENDAN KELLY, Director of the Illinois Department of State Police, <br><br> Defendants. | No. 18-cv-6675 <br><br> Judge Joan B. Gottschall |

**PLAINTIFF'S MEMORANDUM OF LAW
CONCERNING THE SUPREME COURT DECISION IN
<u>FEDERAL DRUG ADMINISTRATION v. ALLIANCE FOR HIPPOCRATIC MEDICINE</u>**

In *FDA v. Alliance for Hippocratic Medicine*, 219 L. Ed. 2d 121 (2024), the Supreme Court applied the same principles of standing the Court has used since *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992), and broke no new ground. In *FDA*, the Court found that doctors who claimed "conscience" and "economic" injury from the FDA's failure to regulate a drug used by women to end their pregnancies did not have a sufficient "personal stake" under Article III to challenge the FDA's action. The lack of such sufficient injury also led the Court to find the lack any "causation" link traceable back to the FDA's failure to regulate a third party, the manufacturer of Mifeprex. However, the Court did not question that, in principle, a different plaintiff in a different factual situation could suffer a concrete injury from the government's failure to regulate a third party. In affirming the standard factors in *Lujan,* the Court made clear that the analysis of standing in each case will be factually unique, especially claim of injury from the government's failure to regulate a third party that in turn harms a plaintiff.

> "Determining causation in cases involving suits by unregulated parties against the government is admittedly not a 'mechanical exercise.' That is because the causation inquiry can be heavily fact dependent and a 'question of degree,' as private petitioner's counsel aptly described it here. Tr. of Oral Arg. 50. Unfortunately, applying the law of standing cannot be made easy, and that is particularly true for causation. Just as causation in tort law can pose line-drawing difficulties, so too can causation in standing law when determining an unregulated party has standing."

219 L. Ed. 2d at 137. In a footnote, the Court added:

> "In cases of future injuries to unregulated parties from government regulation [or lack], the causation requirement and the imminence of the injury in fact requirement can overlap. Both target the same issue: *Is it likely that the government regulation or lack of regulation of someone else will cause a concrete and particularized injury in fact to the unregulated plaintiff?*"

291 L. Ed. 2d at 137 n.2 (emphasis supplied).

Here, in this case, the answer to the Court's question is yes. The State Defendants have clear authority to regulate gun dealers, and such regulation would have a determinative and

1

coercive effect on the ability of third parties, the State licensed gun dealers, to ignore responsible business practice that reduce straw sales. That use of authority to reduce straw sales is then likely to reduce the level of violence in the neighborhoods where the plaintiff, D.W., and other children live. This framework was established in *Bennett v. Spear*, 520 U.S. 154 (1997), cited in the *FDA* opinion.

In *Bennett,* the Court held that a government agency's mere *opinion* on an environmental issue would have a coercive effect on a third party not before the Court. *Id.* at 170-71. The Court stated: "While, as we have said, it does not suffice if the injury complained of is 'the result [of] the *independent* action of some third party not before the court,' *Defenders of Wildlife, supra,* at 560-561 (emphasis added) . . . that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett,* at 169. Standing exists when it "does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Department of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019) (citing *Bennett,* 520 U.S. at 169-70). Applying those principles, there is standing here. In this case, it starts with a concrete injury-in-fact, particular to D.W. One cannot even plausibly compare the injury to D.W. from repeated exposure to gun violence to the "conscience" or attenuated economic injury from a bystander physician opposed to abortion.

Justice Kavanaugh, writing for the Court in *FDA*, notes that, "As Justice Scalia memorably said, Article III requires a plaintiff to first answer the question, 'What's it to you?'" No credible person would dare ask D.W. and other children in Chicago, "What's it to you?" A little more than a week ago, a seven-year-old was gunned down on the West Side of Chicago three weeks after a five-year-old was shot a block away. 127 children have been victims of gun violence so far this year, and seventeen have died. Children are terrorized by gun violence and afraid to leave their

2

homes lest they be shot.[1] If children being gunned down in Chicago is not enough to answer Justice Scalia's question, the U.S. Surgeon General recently issued a report that states, "Firearm violence is an urgent public health crisis that has led to loss of life, unimaginable pain and profound grief for too many Americans."[2] Moreover, "Black youth accounted for about half of all firearm deaths among all youth, despite making up only 14% of the U.S. youth population." *Id*.

Under *Bennett*, to find causation, federal courts ask whether a government agency has clear regulatory authority over a third party and whether the regulation sought would have "determinative or coercive effect" on the third party's actions. *See, e.g.*, *WildEarth Guardian v. United States Forest Service,* 70 F.4th 1212, 1217 (9th Cir 2023). The Illinois State Police (ISP) has that clear authority. The Firearm Industry Responsibility Act requires dealers to use responsible business practices. 430 ILCS 68/5-85 of the Firearm Dealer License Certification Act authorizes the ISP to withhold license renewal for "violations of . . . any law applicable to the sale or transfer of firearms." Nothing could be more "determinative" in stopping a problem dealer who allows straw sales.

The Raoul Amicus Brief, Dkt. 192, pp. 4-5, states that requiring dealers to follow responsible business practices at the time of sale, *the very thing sought here*, will appreciably reduce gun violence. Plaintiff has cited the expert testimony of Professor Daniel Webster to that effect, which also was cited in the Raoul Amicus Brief. Prof. Webster will testify to the same effect here. Defendants cannot dispute what they present elsewhere as causation in fact.

Dated: July 1, 2024                    Respectfully submitted,

---

[1] *See* https://chicago.suntimes.com/crime/2024/06/18/7-year-old-shot-killed-near-west-side-crime-guns-gunshots-assault-rifles-city-hall-violence-probe; https://abcnews.go.com/US/7-year-boy-shot-dead-front-door-chicago/story?id=111272187; https://www.nbcchicago.com/news/local/loved-ones-remember-life-of-7-year-old-shot-to-death-on-near-west-side/3468112/

[2] *See* https://www.hhs.gov/about/news/2024/06/25/us-surgeon-general-issues-advisory-public-health-crisis-firearm-violence-united-states.html

By: /s/ *Thomas H. Geoghegan*
One of Plaintiff's Attorneys

Shira Lauren Feldman
**Brady Center to Prevent Gun Violence**
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100
sfeldman@bradyunited.org

Thomas H. Geoghegan
**Despres, Schwartz & Geoghegan, Ltd.**
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511
tgeoghegan@dsgchicago.com

Patrick V. Dahlstrom
**Pomerantz LLP**
10 S. LaSalle St., Suite 3505
Chicago, IL 60603
(312) 377-1181
pdahlstrom@pomlaw.com

Attorneys for the Plaintiff

4