IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANICE MATTHEWS, as guardian ad litem and on behalf of her son D.W., | |
|     Plaintiff, | No. 18-cv-6675 |
|     v. | Hon. Joan B. Gottschall |
| THE STATE OF ILLINOIS, et al., | |
|     Defendants. | |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW PURSUANT TO THE COURT'S MARCH 14, 2025 ORDER**

**INTRODUCTION**

No Illinois law requires gun dealers to fill out the Brady checklist (Exhibit A), or any other checklist listing signs of straw purchasing, every time someone attempts to buy a gun. Nor does any law mandate that the Illinois State Police ("ISP") must "deny the relicensing" or otherwise sanction any dealer that does not complete and produce such checklists. Yet this is the relief that plaintiff requests here.

Plaintiff asks this Court to compel ISP to issue a new, substantive rule that would expand the licensure requirements for Illinois gun dealers beyond those imposed by the General Assembly, and add an additional ground for discipline, up to and including license revocation, beyond those the General Assembly enumerated in the Firearm Dealer License Certification Act.

As an administrative agency with limited powers, ISP lacks the authority to enact such a rule. If a gun dealer is facilitating straw purchasing, ISP has ample authority to investigate and impose discipline based on the particular circumstances of each case. *See* 430 ILCS 68/5-35 (ISP may inspect gun dealers' premises); 430 ILCS 68/5-45 (ISP may issue subpoenas); 430 ILCS 68/5-85 (ISP may sanction gun dealers for certain violations). But ISP cannot exceed the bounds of its

1

legislatively granted authority by imposing a new, blanket rule that adds a condition of licensure and subjects dealers (including those that are complying with all existing laws) to discipline for failing to complete a checklist not required by any statute.

As discussed below, plaintiff's supplemental brief only confirms that her fourth amended complaint should be dismissed for lack of standing.[1] Neither the Firearm Dealer License Certification Act nor any other statute gives ISP authority to issue the administrative rule that plaintiff wants here. The Firearm Dealer License Certification Act carefully circumscribes ISP's authority, identifying four discrete topics on which it may enact rules. Plaintiff's "checklist" does not fit within any of them. Likewise, ISP has no authority to expand the grounds for disciplining a dealer beyond the eleven set forth in the Firearm Dealer License Certification Act. ISP cannot prescribe requirements for licensure and grounds for discipline that exceed, and are indeed inconsistent with, the Firearm Dealer License Certification Act.

Moreover, even if ISP could pass such a rule, plaintiff's proposed order would not be suitable for entry by the Court for multiple reasons. To start, plaintiff's request for a federal court order telling ISP *how* to regulate poses not only separation of powers problems, but also federalism and comity problems. In addition, the request ignores that in Illinois, agencies cannot unilaterally promulgate rules. And, finally, the request cannot support standing because plaintiff has not shown that relative to Illinois' existing regulatory landscape, her requested relief is likely to appreciably abate gun violence. To the contrary, plaintiff's allegations support the laws that Illinois already has in place to combat straw purchasing. Plaintiff's fourth amended complaint should be dismissed for lack of standing.

---

[1] Defendants limit their briefing to addressing plaintiff's only remaining proposed remedy: imposition of the Brady checklist. To the extent plaintiff sought broader relief in her fourth amended complaint, that should be construed as abandoned pursuant to the Court's March 14, 2025 order (Dkt. 208).

**ARGUMENT**

I.   **ISP has no statutory authority to require gun dealers to use the Brady checklist and penalize them if they do not.**

ISP has limited powers. As an administrative agency, ISP is a "creature of statute and has no general or common law powers." *Schalz v. McHenry Cty. Sheriff's Dep't Merit Comm'n*, 113 Ill. 2d 198, 202 (1986). Rather, it is "limited to the powers granted to it by the legislature, and any actions it takes must be authorized by statute." *Levin v. Ret. Bd. of the Cty. Employees' & Officers Annuity & Ben. Fund of Cook Cty.*, 2019 Ill. App. (1st) 181167, ¶ 24; *see also id.* ("As a creature of statute, an administrative agency's power finds its source in the provisions of the statute that created it.").

Contrary to plaintiff's position, ISP does not have the statutory authority to mandate that gun dealers use her checklist (and face disciplinary consequences if they don't). While the Illinois State Police Act states that ISP may "promulgate rules and regulations necessary for the administration and enforcement of its powers and duties, wherever granted and imposed, pursuant to the Illinois Administrative Procedure Act," 20 ILCS 2605/2605-15, that general provision does not provide ISP with carte blanche authority to issue rules for every section of every statute that it implements. Rather, the scope of ISP's regulatory authority is determined by the statute that it seeks to implement, here the Firearm Dealer License Certification Act. *See People v. Henry*, 398 Ill. App. 3d 1019, 1128-29 (3d Dist. 2009).

*Henry*, which plaintiff cites in her brief, confirms this point and supports ISP's position. In *Henry*, the court considered whether ISP, which implements the Illinois Vehicle Code, could issue a certain regulation regarding the collection of urine samples from drivers involved in serious accidents. *Id.* at 1021. The court held that Section 11-501.6(a) of the Vehicle Code, requiring drivers involved in serious accidents to submit a blood, breath, or urine test, to be administered at

3

the arresting officer's direction, did *not* supply the requisite statutory authority for ISP to issue the regulation. That is because Section 11-501.6(a) did "not authorize the Department to create regulations regarding the collection and analysis of blood, breath, or urine," and therefore did "not apply" to the case. *Id.* at 1022. In contrast, the court found that Section 11-501.2(a) of the Vehicle Code supplied the requisite authority because it "specifically authorize[d]" ISP to regulate on the issue at hand, stating "[t]he Department of State Police shall prescribe regulations as necessary to implement this Section." *Id*.

Here, the Firearm Dealer License Certification Act does not allow ISP to enact the "checklist" rule that plaintiff seeks here. Rather than providing ISP with general rulemaking authority, the Act sets out <u>four discrete topics</u> (in four specific provisions) on which ISP may issue rules: (1) ISP "may by rule create a process for checking the validity" of a dealers' federal firearms license in lieu of an affidavit, 430 ILCS 68/5-10; (2) ISP may "adopt rules regarding *continuing education* for certified licensees related to legal requirements and responsible business practices regarding the sale or transfer of firearms," 430 ILCS 68/5-30; (3) ISP shall "adopt rules regarding the adequacy of a safe storage plan," 430 ILCS 68/5-55; and (4) ISP shall "develop and implement by rule statewide *training standards* for assisting certified licensees in recognizing indicators that would lead a reasonable dealer to refuse sale of a firearm, including, but not limited to, indicators of straw purchase," 430 ILCS 68/5-60.

None of these four provisions authorize the "checklist" rule that plaintiff wants. While plaintiff points to 430 ILCS 68/5-30, that section merely authorizes rules regarding "continuing education." And 430 ILCS 68/5-60, which plaintiff also cites, allows ISP to issue "training standards." As ISP explained in its memorandum in support of its motion to dismiss, plaintiff conflates the power to develop educational materials, which is contemplated by the Firearm Dealer

4

License Certification Act, with the power to require compliance with lessons from that training as a condition for licensure, which is not. Dkt. 185 at 14-15. Plaintiff had no response to this basic point (Dkt. 195 at 7) and still does not.[2]

Plaintiff's reliance on Section 68/5-85 of the Firearm Dealer License Certification Act, which addresses "Disciplinary sanctions," is similarly misplaced. This provision does not grant ISP any rulemaking authority. The legislature specifically authorized ISP to create rules implementing four sections of the Firearm Dealer License Certification Act, and Section 68/5-85 is not one of them. *See* 430 ILCS 68/5-85 (omits any reference to rulemaking); *see also Henry*, 398 Ill. App. 3d at 1022 (provision that did not "authorize the Department to create regulations" did not provide the requisite rulemaking authority). Section 68/5-85 does not allow ISP to establish additional conditions on licensure or grounds for discipline. Moreover, to the extent that plaintiff seeks a rule that would require ISP to discipline dealers for failure to produce the checklist, that would be inconsistent with Section 68/5-85, which affords ISP discretion ("may") in its disciplinary decisions. 430 ILCS 68/5-85.

Plaintiff's proposed rule would impermissibly *expand* the requirements of the Firearm Dealer License Certification Act. Under the Act, if a gun dealer submits a valid federal firearms license, ISP "shall" issue a certificate of license. 430 ILCS 68/5-10. This language is mandatory, except that ISP may discipline gun dealers (including by revoking their license) on eleven grounds that are specifically enumerated in the statute. *See* 430 ILCS 68/5-85. ISP, as an agency with limited powers, has no statutory authority to impose *additional* licensure requirements and grounds

---

[2] Plaintiff also cites 430 ILCS 68/5-65, which addresses "Electronic-based recordkeeping." This section details precisely what records gun dealers must maintain, and the list does not include anything like the Brady checklist regarding indicators of straw purchasing. Nor does this provision provide ISP with rulemaking authority. Section 68/5-65 does not supply ISP with the authority to issue a rule of the sort that plaintiff is requesting here.

5

for discipline beyond those that the Illinois legislature set forth by statute. In *Levin*, the Illinois Appellate Court emphasized that under Illinois law, "administrative agencies have limited powers," and held that a retirement board had no statutory authority to impose by rule an additional condition on an annuitant's right to purchase health insurance, because the statute did "not expressly give the Board any authority to impose additional eligibility requirements." 2019 Ill. App. (1st) 181167, at ¶¶ 26. So too here: ISP cannot enact the rule that plaintiff wants because the Firearm Dealer License Certification Act does not give ISP the authority to impose on gun dealers additional conditions for licensure.

To be sure, existing law allows ISP to investigate and discipline rogue gun dealers that engage in straw purchasing. Under Section 68/5-85, ISP can discipline dealers who engage in a "pattern or practice or other behavior which demonstrates incapacity or incompetency to practice under this Act." 430 ILCS 68/5(a)(2). In addition, Section 68/5-85 provides that ISP may discipline dealers who violate "any law applicable to the sale or transfer of firearms." 430 ILCS 68/5(a)(1). This includes the Firearm Industry Responsibility Act (FIRA), which makes it unlawful for dealers to "[k]nowingly create, maintain, or contribute to a condition in Illinois that endangers the safety or health of the public by conduct either unlawful in itself or unreasonable under all circumstances, including failing to establish reasonable controls." 815 ILCS 505/2DDDD(b). "Reasonable controls" under FIRA include "reasonable procedures, safeguards, and business practices" designed to, among other things, "prevent the sale or distribution of a firearm-related product to a straw purchaser." *Id.*[3]

Plaintiff seems to assume that gun dealers' obligation to follow "responsible business practices" necessarily means that ISP has the authority to mandate that they fill out and produce

---

[3] ISP does not have rulemaking authority under FIRA, which is part of the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id.*

the Brady checklist (or something similar) as a condition for licensure. But this leap of logic is unwarranted and incorrect. Imagine a gun dealer that follows all of ISP's training on straw purchases, asks all the right questions to potential buyers, and never sells to anyone whom they have reason to believe could be a straw purchaser. Under plaintiff's rule, that dealer's license could be revoked merely because it did not fill out and produce a checklist to ISP. Plaintiff is not seeking a rule allowing ISP to implement existing law, but rather a rule that would expand the conditions for licensure and grounds for discipline beyond those established by the Illinois legislature. That is not within ISP's rulemaking authority.

Finally, plaintiff's assertion that requiring dealers to fill out the Brady checklist at the time of sale is "the only feasible or cost-effective way" to detect "incapacity or incompetency to practice under the Act" (Dkt. 209 at 6) has no merit. Purchasing a gun "as a gift" or making "a call or text while in the business premises" are identified (correctly) on the Brady checklist as potential signs of straw purchasing (see Ex. A), but plaintiff cannot seriously contend that ISP must revoke the license of a dealer simply because they checked one of these boxes on the Brady checklist. Unless a dealer answers "YES" to the question on the Brady checklist asking, "Do you have doubts as to whether the purchaser is buying the gun for him or herself, or whether he or she may be a gun trafficker?" (which of course is exceedingly unlikely, especially for "bad apple" dealers), determining whether a dealer is engaging in straw purchasing and should be disciplined is a more complicated, fact-intensive process. Thus, as part of its investigatory authority, ISP can issue subpoenas for documents or testimony to gun dealers and inspect their places of business. 430 ILCS 68/5-35, 68/5-45.[4]

---

[4] In 2023, ISP engaged in 769 firearm dealer license certification inspections. *See* 2023 Gun Trafficking Legislative Report at https://isp.illinois.gov/Home/GunTraffickingInfoAct.

**II.     Plaintiff's proposed order is not suitable for entry by the court.**

Even if ISP did have the statutory authority to mandate the Brady checklist as a condition of licensure, plaintiff's proposed order is not suitable for entry by the court for several additional reasons. To start, the nature of plaintiff's request for an order compelling ISP to regulate in a particular manner is problematic. Even in the federal context, where the Administrative Procedure Act allows courts to compel federal agency action that is "legally required," courts may not prescribe "how" federal agencies must regulate. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (emphasis in original); *see also id.* at 66-67 ("If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-by-day agency management."). And here, the requested relief implicates not only separation of powers, but also federalism and comity, because plaintiff asks this Court to interfere with the operations of a *state* agency. *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). Plaintiff's request for a court order compelling ISP, a state agency, to regulate in a particular manner finds no support in "precedent, history, or tradition" and cannot support standing. *Texas*, 599 U.S. at 677.

Furthermore, to the extent that plaintiff seeks to require ISP to promulgate a specific regulation without further process, such an action could be deemed contrary to Illinois law. In Illinois, agencies cannot unilaterally promulgate rules. On the contrary, proposed rules must be submitted to the Joint Committee on Administrative Rules, which "exercises oversight of the rulemaking process on behalf of the entire General Assembly." Illinois General Assembly, How Rules Are Made in Illinois, https://bit.ly/48axUZg. This Committee is comprised of "12 legislators

that equally represent both houses of the General Assembly and both parties within those houses." *Id.* at 4. The Committee may object to the proposed rule—for example, because the rule exceeds the scope of statutory authority—which triggers additional process, including requiring the agency to respond to its objection. *Id.* at 5.

Finally, plaintiff's proposed order is not suitable for entry by the Court because she lacks standing.[5] Plaintiff continues to assert at the highest level of generality that requiring gun dealers to follow responsible business practices should reduce straw purchasing. But as discussed above (and extensively in ISP's briefs, see Dkts. 185, 195), Illinois *already* requires dealers to employ responsible business practices to prevent straw purchasing. *See* 815 ILCS 505/2DDDD (FIRA). Dealers that violate FIRA are subject to lawsuits, civil penalties, and, when appropriate under the specific circumstances of each case, disciplinary action by ISP. 815 ILCS 505/7, 430 ILCS 68/5(a)(1). ISP can also discipline dealers that demonstrate an "incapacity or incompetency" to practice, which would include dealers who facilitate straw purchasing. 430 ILCS 68/5(a)(2).

As plaintiff has admitted, Illinois has "excellent" gun laws. Dkt. 120 at 1. To establish standing, plaintiff must allege facts clearly showing that relative to this existing regulatory landscape, adding her "checklist" rule would appreciably abate gun violence. Dkt. 175 at 29-30. She has not come close to meeting this standard. She again references the amicus briefs filed by Kwame Raoul and Daniel Webster in the *National Shooting Sports Foundation* appeal in the Second Circuit (Dkt. 209 at 4), but those briefs support a New York law similar to FIRA. They do not speak to the efficacy of any "checklist" requirement. They do not even mention a "checklist"

---

[5] This Court's order requesting supplemental briefing did not direct the parties to address standing (Dkt. 208), but plaintiff nevertheless includes argument about standing. ISP thus submits this section in response.

requirement, much less set forth facts showing how effective it would be, given all of the laws that Illinois already has in place to combat straw purchasing. If anything, Webster's brief cuts *against* plaintiff's argument. Webster emphasizes that the "vast majority" of gun dealers comply with their legal obligations. Dkt. 178-4 at 3. To address the small number of problem dealers that exhibit "noncompliance with existing laws," he does not advocate for a "checklist," but rather for accountability through civil lawsuits, undercover stings, and criminal indictments and prosecutions. Dkt. 178-4 at 8-11. In other words, Webster endorses the statutory scheme that Illinois already has in place. In short, plaintiff has not alleged facts that could support standing, and her complaint should be dismissed.

## CONCLUSION

For the reasons above and those in defendants' memorandum in support of their motion to dismiss (Dkt. 185) and reply in support of their motion to dismiss (Dkt. 195), the Court should dismiss plaintiff's fourth amended complaint.

Dated: March 24, 2024

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

By: */s/ Michael T. Dierkes*

R. Douglas Rees
Sarah A. Hunger
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603

Michael T. Dierkes
Office of the Illinois Attorney General
General Law Bureau/Government
Representation Division
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-3672
michael.dierkes@ilag.gov