# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

<table>
<tr><td>Shanice Mathews,* as guardian ad litem<br>and on behalf of her son, D.W.,<br><br>Plaintiff,<br><br>v.<br><br>The State of Illinois, et al.,<br><br>Defendants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><br><br><br><br>Case No. 18-CV-6675<br><br>Honorable Joan B. Gottschall</td></tr>
</table>

## MEMORANDUM OPINION AND ORDER

In her fourth amended complaint, Shanice Mathews seeks injunctive relief against the State of Illinois, its governor, the Illinois Department of State Police ("ISP"), and ISP's director on behalf of her teenaged son, D.W., and a proposed class of persons who live in Chicago's communities of concentrated gun violence. Her claims arise under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Illinois Civil Rights Act of 2003, 740 Ill. Comp. Stat. 23/5(a)(2) (West 2008). Prior opinions recite the factual and procedural background in detail.[1] The third and fourth amended complaints do not vary materially, differing chiefly in the scope and form of injunctive relief Mathews seeks.

After extensive briefing and oral argument, Mathews has clarified that she seeks an injunction ordering that:

---

*In briefing filed earlier in this case, plaintiff's name was sometimes spelled with two t's. *See Mathews v. Illinois*, No. 18-CV-6675, Order at 2 n.1 (N.D. Ill. June 10, 2022) (ECF No. 148). The plaintiff consistently spells her name with one t in her fourth amended complaint and the instant round of briefing. *E.g.*, ECF No. 178 at 1; ECF No. 192 at 1.

1. For background, see *Powell ex rel. D.P. v. Illinois*, 2019 WL 4750265, at *1-5 (N.D. Ill. Sept. 30, 2019), *motion to certify appeal denied*, 2019 WL 10349404 (N.D. Ill. Nov. 5, 2019), *reconsideration denied*, 2019 WL 10349403 (N.D. Ill. Dec. 18, 2019), *appeal dismissed*, No. 19-3144, 2021 WL 4955489 (7th Cir. Aug. 6, 2021); *Mathews ex rel. D.W. v. Illinois*, 690 F. Supp. 3d 808, 810-19 (N.D. Ill. 2023). The original complaint named three plaintiffs, including Mathews. The caption of the opinion dismissing the original complaint in part bore the name of the first-named plaintiff, Demetria Powell. Powell and a co-plaintiff later moved out of Chicago and were dismissed for lack of standing, leaving Mathews as the sole plaintiff. *See Powell*, 2019 WL 4750265, at *7-8.

> Defendant ISP exercise its authority under subparagraphs (1) and (2) of the Dealer License Certification Act 430 ILCS 68/5-85 ("Disciplinary sanctions") and 430 ILCS 68/5-30 ("Training of Certified licensees") and the general rulemaking and enforcement authority of ISP under 20 ILCS 2605-15, to require that licensed gun dealers in counties adjacent to or near Chicago keep and produce electronic records showing that the dealers use the Brady checklist or a similar checklist authorized by the ISP consistent with the "Don't Lie for the Other Guy" video that such dealers are required to view as part of their training under 430 ILCS 68/5-30. Such counties shall include Cook, Will, DuPage, Lake, and Kane Counties. The ISP shall notify dealers in writing that failure to provide such records at the time of relicensing for inspection by ISP will subject the dealers to the disciplinary sanctions set out under 430 ILCS 68-5/85, including the denial of the relicensing of such dealer.

> Defendant ISP, within 30 days of the entry of such order, will submit to the Court a timeline for administrative actions to implement such relief.

Pl. Suppl. Mem. 3-4 (Mar. 19, 2025), ECF No. 209. The proposed regulations will, according to Mathews, decrease straw purchasing[2] from certain firearm dealers near Chicago, and that will in turn reduce the flow of "crime guns" into Chicago and, by extension, the proposed class's exposure to, and continued traumatization by, shootings in Chicago's communities of concentrated gun violence. *E.g.*, *id.* at 4.

Defendants have filed a motion to dismiss the fourth amended complaint for lack of standing to sue under Article III of the Constitution and for failure to state a claim on the merits. The parties dispute, *inter alia*, whether the Illinois legislature has given defendants the authority to promulgate the regulations Mathews proposes. Their arguments focus on a statute enacted after this case was filed, the Illinois Firearm Dealer License Certification Act, 430 Ill. Comp. Stat. 68/5-1 to 5-120 (Westlaw through Pub. Act No. 103-1082) [hereinafter "the Act" or "Dealer Certification Act"]; *see* 2018 Ill. Legis. Serv. P.A. 100-1178 (West Jan. 18, 2019).

The Illinois legislature included in § 5-85 of the Act a list of eleven criteria for which the ISP "may" discipline a firearm dealer, including by declining to renew the dealer's license. The full list follows:

---

2. A straw sale or straw purchase refers to a transaction in which a person buys a gun for someone else and falsely claims to be buying it for himself. *Abramski v. United States*, 573 U.S. 169, 171-72 (2014) (construing 18 U.S.C. § 922(a)(6)).

[T]he Illinois State Police may refuse to renew or restore, or may reprimand, place on probation, suspend, revoke, or take other disciplinary or non-disciplinary action against any licensee, and may impose a fine commensurate with the severity of the violation . . . for any of the following . . . :

(1) Violations of this Act, or any law applicable to the sale or transfer of firearms.

(2) A pattern of [sic] practice or other behavior which demonstrates incapacity or incompetency to practice under this Act.

(3) Aiding or assisting another person in violating any provision of this Act or rules adopted under this Act.

(4) Failing, within 60 days, to provide information in response to a written request made by the Illinois State Police.

(5) Conviction of, plea of guilty to, or plea of nolo contendere to any crime that disqualifies the person from obtaining a valid Firearm Owner's Identification Card.

(6) Continued practice, although the person has become unfit to practice due to any of the following:

    (A) Any circumstance that disqualifies the person from obtaining a valid Firearm Owner's Identification Card or concealed carry license.

    (B) Habitual or excessive use or abuse of drugs defined in law as controlled substances, alcohol, or any other substance that results in the inability to practice with reasonable judgment, skill, or safety.

(7) Receiving, directly or indirectly, compensation for any firearms sold or transferred illegally.

(8) Discipline by another United States jurisdiction, foreign nation, or governmental agency, if at least one of the grounds for the discipline is the same or substantially equivalent to those set forth in this Act.

(9) Violation of any disciplinary order imposed on a licensee by the Illinois State Police.

(10) A finding by the Illinois State Police that the licensee, after having his or her certified license placed on probationary status, has violated the terms of probation.

(11) A fraudulent or material misstatement in the completion of an affirmative obligation or inquiry by law enforcement.

430 Ill. Comp. Stat. 68/5-85(a).

In effect, Mathews asks the court to order defendants to promulgate regulations adding a twelfth criterion to the above list—making non-renewal of a license mandatory ("must") instead of discretionary ("may") when the new criterion applies. This request runs squarely into a familiar maxim of statutory construction: *expressio unius est exclusio alterius*, meaning roughly that an enumeration of criteria in a statute is interpreted to exclude items not on the list. *See, e.g.*, *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 17. This maxim "expresses the learning of common experience that when people say one thing they do not mean something else." *Id.* (quoting *People ex rel. Sherman v. Cryns*, 786 N.E.2d 139, 155 (Ill. 2003)).

Applying the *expressio unius* maxim to § 5-85 of the Dealer Certification Act, the list of eleven disciplinary criteria is exclusive, and a twelfth criterion may not be added by a court or an administrative agency like the ISP. *See People v. Legoo*, 2020 IL 124965, ¶¶ 26-27; *People v. Clark*, 2019 IL 122891, ¶¶ 23-24. "Administrative regulations can neither expand nor limit the statute they enforce." *Kean v. Wal-Mart Stores, Inc.*, 919 N.E.2d 926, 938 (Ill. 2009) (citing *Outcom, Inc. v. Ill. Dep't of Transp.*, 909 N.E.2d 806 (Ill. 2009)); *accord. Du-Mont Ventilating Co. v. Dep't of Revenue*, 383 N.E.2d 197, 199-200 (Ill. 1978) (citing *Standard Oil Co. v. Dep't of Fin.*, 48 N.E.2d 514 (Ill. 1943)). "Illinois law has long provided that an administrative agency is a 'creature of statute' with 'no general or common-law powers.'" *People v. Muhammad*, 2023 IL App (1st) 220372, ¶ 46, *appeal allowed,* 238 N.E.3d 307 (Ill. 2024) (citing *Goral v. Dart*, 2020 IL 125085, ¶ 33; other citation omitted). An agency like the ISP "is limited to those powers granted to it by the legislature in its enabling statute." *Id.* (quoting *Prate Roofing & Installations, LLC v. Liberty Mut. Ins. Corp.*, 2022 IL 127140, ¶ 22). Thus, the ISP's general rulemaking authority in its organic statute that is, the statute that creates the state police, *see* 20 Ill. Comp. Stat. 2605/2605-15, may not be used, as Mathews suggests, to engraft a license non-renewal rule onto the Dealer Certification Act.

Mathews' reading of the statute suffers from an additional textual flaw. The ordinary meaning of the word "may," which is used thrice in § 5-85(a), denotes non-mandatory discretion.

*E.g.*, *People v. Henry*, 924 N.E.2d 1126, 1131 (Ill. App. Ct. 3d Dist. 2010) (citations omitted). The ISP reads § 5-85's grant of disciplinary authority as discretionary, for it has promulgated a non-exhaustive list of factors to be weighed on a case-by-case basis when deciding what, if any, sanction to impose. *See* Ill. Admin. Code. Tit. 20, § 1232.50(c) (2025). Mathews suggests no way in which a regulation could interpret the word "may" to mean "must not renew" in § 5-85(a), so if it were promulgated, the regulation Mathews proposes would have to be struck down as conflicting with the Act's plain language.

Lacking a textual footing for her argument in § 5-85, Mathews relies on the grant of rulemaking authority on another subject in a different section of the Act, § 5-30: "The Illinois State Police may adopt rules regarding continuing education for certified licensees related to legal requirements and responsible business practices regarding the sale or transfer of firearms." She asserts that this grant of rulemaking power may be used to promulgate a regulation requiring, as a condition of license renewal, firearm dealers to prove that they have complied with their training on detecting straw purchasers.

The Illinois legislature chose to include an express grant of rulemaking authority as to "continuing education" only. *See* § 5-30. Construing the Dealer Certification Act as Mathews proposes would permit the "continuing education" rulemaking power to become a backdoor way of expanding the ISP's regulatory authority over recordkeeping and the statutory criteria for disciplining firearm dealers. As the Illinois Supreme Court has explained, "It is well settled that when the legislature uses certain language in one instance of a statute and different language in another part, we assume different meanings were intended." *People v. Clark*, 2019 IL 122891, ¶ 23 (quoting *People v. Goossens*, 2015 IL 118347, ¶ 12). Properly construed then, § 5-30 of the Dealer Certification Act is a plain grant of rulemaking authority and demonstrates that the Illinois legislature knew how to grant the ISP rulemaking power when it chose to do so. A similar grant of rulemaking authority is conspicuously absent from § 5-85. Under the familiar statutory construction principles discussed in this paragraph, the absence of a grant of

5

rulemaking authority from § 5-85 indicates that the legislature withheld rulemaking power in § 5-85. Section 5-30 should not be interpreted to override the legislature's decision.

Finally, Mathews cites the Illinois Firearm Dealer Responsibility Act of 2023 (FIRA), P.A. 103-559, § 5, eff. Aug. 14, 2023, which amended the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*.[3] *See* Resp. to Mot. to Dismiss 1-2, 12-13. FIRA declares it to be an "unlawful practice within the meaning of this Act [the Consumer Fraud and Deceptive Business Practices Act] for any firearm industry member" to "knowingly create, maintain, or contribute to a condition in Illinois that endangers the safety or health of the public . . . including failing to establish or utilize reasonable controls." FIRA defines "reasonable controls" as "business practices that are designed to: prevent the sale or distribution of a firearm-related product to a straw purchaser." 815 Ill. Comp. Stat. 505/2DDDD(b)(1)(A). As Mathews acknowledges, however, FIRA added to the list of unlawful practices that may give rise to civil liability to a private plaintiff who experiences "actual damages," but FIRA does not modify the criteria the ISP should apply when deciding whether to renew a dealer's license.[4] 815 Ill. Comp. Stat. 505/10A(a); *see* Resp. to Mot. to Dismiss 7.

In sum, the regulation Mathews proposes, via an injunction, would effectively amend the Dealer Certification Act by adding a rule forbidding license renewal in a specified situation.

_____

3. The title "Illinois Firearm Dealer Responsibility Act" appears to be informal. The enacted bill does not specify a short title. Furthermore, as originally enacted, the Act amended § 2BBBB of the Consumer Fraud and Deceptive Business Practices Act. *See* P.A. 103-559, § 5, eff. Aug. 14, 2023. This amendment was subsequently recodified effective July 1, 2024, with immaterial changes, as 815 Ill. Comp. Stat. 505/2DDDD. *See* P.A. 103-605, § 630, eff. July 1, 2024.

4. Mathews contends that "[i]t would be an abuse of discretion for the State Police to license dealers that engage in an 'unlawful practice,' or to fail to inquire at the time of the license renewal as to whether the dealers are engaging in such an 'unlawful practice.'" Resp. to Mot. to Dismiss 2. This argument boils down to the contention that this court should tell defendants how to exercise their prosecutorial discretion when deciding whether to renew a firearm dealer's license. As explained in the opinion dismissing the third amended complaint, *United States v. Texas*, 599 U.S. 670 (2023), forecloses this relief, for that case's holding deprives Mathews of standing to seek an injunction requiring "defendants to fine, suspend, and discipline gun dealers for violations of extant state law." *Mathews ex rel. D.W. v. Illinois*, 690 F. Supp. 3d 808, 828 (N.D. Ill. 2023).

Such a rule would exceed the scope of the administrative rulemaking authority granted by the Dealer Certification Act. *See Kean*, 919 N.E.2d at 937. Defendants therefore lack the authority under Illinois law to promulgate the regulation Mathews requests.

From this construction of the Dealer Certification Act it follows that Mathews lacks Article III standing to pursue the injunctive relief she seeks. The analysis begins with bedrock standing principles:

> Article III of the Constitution limits the jurisdiction of the federal courts to "cases" or "controversies." U.S. Const. Art. III, § 2, cl. 1. The doctrine of standing enforces this case or controversy requirement. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 55962 (1992). Article III standing doctrine developed to "ensure that federal courts do not exceed their authority as it has been traditionally understood" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Spokeo*, 578 U.S. at 338 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S 398, 408 (2013); other citations omitted) . . . Mathews must establish three elements that together comprise "the irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560. These elements are: (i) that the plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (ii) "that the injury was likely caused by the defendant;" and (iii) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61).

*Mathews ex rel. D.W. v. Illinois*, 690 F. Supp. 3d 808, 820 (N.D. Ill. 2023) (paragraph break and some internal citations omitted).

"[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights . . . ." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983)). As she did in her prior complaints, Mathews alleges that "past and continued exposure [to gun violence] has impaired [D.W.]'s basic life activities and threatens to make his condition more severe." Fourth Am. Compl. ¶ 67; *see also id.* ¶¶ 57–61. The fourth amended complaint's allegations mirror those this court held sufficient to allege a concrete and particularized injury in fact in the third amended complaint. *Mathews,* 690 F. Supp. 3d at 828. This court's reasoning applies with equal force to the fourth amended complaint. *See id.*

7

"To satisfy the causation element, the plaintiff's injury must be 'fairly traceable' to the challenged action of the defendant, and not the result of the independent action of some third party before the court." *Id.* (quoting *Lujan*, 504 U.S. at 560). By contrast, the redressability component of Article III standing requires the plaintiff to show that it "is likely, not merely speculative, that [her] injury will be redressed by a favorable decision." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Standing is absent where an injunction against the defendants named in the complaint would not be likely to redress the plaintiff's concrete and particularized injury. *See, e.g.*, *Lujan*, 504 U.S. at 568-70. Mathews has not made the required showing. She pleads that children like her son who live in Chicago's communities of concentrated gun violence are re-traumatized on a weekly, and sometimes daily, basis. It is this ongoing exposure to gun violence that the injunction must appreciably abate. The fourth amended complaint traces this injury to defendants as follows: (1) crime guns flow into Chicago and are sometimes used in D.W.'s and class members' neighborhoods; (2) some crime guns are obtained in straw purchases; (3) a disproportionate number of the straw purchases occur at seven firearm dealers[5] in Chicago's suburbs; and (4) defendants fail to regulate those seven dealers in a manner that would decrease the rate of straw purchases. *See* Fourth Am. Compl. ¶¶ 68-97. Because, as explained above, defendants have no authority to promulgate the regulations Mathews proposes, D.W.'s injuries and those of the putative class cannot be redressed by the injunction Mathews seeks. Only the Illinois legislature can give defendants the authority to promulgate Mathews' proposed regulations.

For all of the foregoing reasons, defendants' motion to dismiss the fourth amended complaint for want of Article III standing is granted. Mathews has repeatedly failed to cure

---

5. At oral argument, defendants' attorney told the court that that, according to press reports, one of the seven allegedly problematic gun dealers listed in the fourth amended complaint, Chuck's Gun Shop in Riverdale, recently closed. *See* Tr. of Oral Arg. 19-20, ECF No. 211.

standing defects in her complaints.  Accordingly, judgment will be entered dismissing this case without prejudice for want of subject matter jurisdiction.

Date: June 13, 2025            /s/ Joan B. Gottschall
                                              United States District Judge